\*\* E-filed September 14, 2010 \*\*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VASUDEVAN SOFTWARE, INC, <br><br>Plaintiff, <br><br>v. <br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION; and ORACLE CORPORATION, <br><br>Defendants. | No. C09-05897 RS (HRL) <br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER** <br><br>[Re: Docket No. 152] |

This is a patent infringement case brought by plaintiff Vasudevan Software, Inc. ("VSi") against defendants Oracle Corp. ("Oracle") and International Business Machines Corp. ("IBM") (collectively, "Defendants"). After meeting-and-conferring, and coming to agreement as to most of the language for a protective order to govern the production of confidential information, the parties filed this joint motion asking the Court to resolve disputes over four remaining sections. (Docket No. 152 ("Motion").)

**DISCUSSION**

A. <u>First Disputed Section: § 7.3(b) (Disclosure of Highly Confidential - Attorneys' Eyes Only Information or Items)</u>

VSi proposes adding a subsection (currently, subsection (b)) to § 7.3 of the stipulated protective order. Specifically, VSi proposes that information or items designated "HIGHLY

CONFIDENTIAL - ATTORNEYS' EYES ONLY" (hereinafter, "Highly Confidential Information") may be disclosed:

> (b) [t]o the extent disclosure is limited to financial information, including both sales and licensing information, [to] one House Counsel for the Receiving Party (1) to whom disclosure is reasonably necessary for this litigation, and (2) who has signed the "Agreement to Be Bound by Protective Order" (Exhibit A);

(Docket No. 153, Ex. A ("Stipulated Protective Order" or "SPO"), ¶ 7.3(b).) VSi argues that at least one in-house counsel should be allowed access to financial information, including both sales and licensing information, because without it, VSi cannot have open discussions regarding damages valuation and potential settlement offers. (Motion at 5-6.)

Defendants oppose including this subsection at all. Citing *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984), and *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992), Defendants point out that in deciding whether to allow an in-house counsel to access confidential information, courts look at the facts surrounding that counsel's relationship with a party and the risks of, and safeguards to prevent, inadvertent disclosure. (Motion at 7.) To that end, Defendants explain that there is only one in-house counsel at VSI, Helen Vasudevan, and she is a principal of VSi and wife of Mark Vasudevan, the named inventor of the patents-in-suit and the President and CEO of VSi. (*Id.*) Defendants thus contend that her marital relationship and financial stake in VSi creates a conflict of interest and so the risk of inadvertent disclosure is simply too great. (*Id.* at 7-8 (citing *Thomas & Betts Corp. v. Panduit Corp.*, 1997 WL 603880, a t *12 (N.D. Ill. 1997) ("A party's concern about permitting its opponent's in-house counsel to access its confidential information would be heightened where the in-house counsel was also a family member of certain corporate officers."); *A. Hirsh, Inc. v. United States*, 657 F.Supp. 1297, 1303-04 (C.I.T. 1987) (finding an "unacceptable opportunity for inadvertent disclosure" where in-house counsel was the son of the company's owner)).)

Yet while courts do indeed look to the facts of each individual case, the "crucial factor" is whether the in-house counsel engages in "competitive decisionmaking," *Brown Bag Software v. Symantec Corp.*, 960 F.2d at 1470 (citing *U.S. Steel Corp. v. United States*, 730 F.2d at 1468 n.3), which refers to "a counsel's activities, association, and relationship with a client that are such as to

involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor," *U.S. Steel Corp. v. United States*, 730 F.2d at 1468 n.3.  This is the crucial factor because the courts in *U.S. Steel* and the cases relying upon it were largely concerned with the difficulty "for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1378 (Fed. Cir. 2010); *see also Brown Bag Software v. Symantec Corp.*, 960 F.2d at 1470-72; *Mercexchange, LLC v. eBay, Inc.*, 467 F.Supp.2d 608, 622-23 (E.D. Va. 2006) ("[I]t is oftentimes impossible for an individual, even with the noblest intentions, to delineate between ideas that they may advance as a result of their own creation, and those influenced by past exposure to confidential information."); *In re Worlds of Wonder Sec. Lit.*, 147 F.R.D. 214, 216-17 (N.D. Cal. 1992) (noting that it would be "naïve" to think that expert witnesses who would "most likely" be competitors of the party opposing disclosure would be able to "erase" from their minds the at-issue documents that revealed confidential, internal details of how that party conducts its business).  Here, while Defendants offered little evidence in their papers that Helen Vasudevan engaged in competitive decisionmaking, they did convince the Court at the motion hearing that she plays an integral role in the conduct of VSi's business.  And as the only in-house counsel for VSi, she provides legal advice in a number of business contexts.

Both sides have legitimate concerns.  On one hand, the Court is sensitive to the fact that in-house counsel to a party, in most circumstances, needs to have <u>some</u> access to the opposing party's confidential financial information to understand the potential damages at issue and thus make an informed decision with respect to any possible settlement of the lawsuit.  But on the other hand, the Court also understands that in-house counsel who is exposed to a competitor's confidential information often cannot simply forget what he or she has learned.

As discussed at oral argument, the Court believes that the creation of a subset of Defendants' financial information to which Helen Vasudevan may have access is the best solution in this particular instance.  Indeed, at the hearing on the parties' motion, counsel for VSi acknowledged that it is Defendants' annual revenue and annual unit sales data by product line that is most

important for settlement purposes, and Defendants' attorneys conceded that there would be little harm in allowing Helen Vasudevan access to such high-level numbers.[1] As such, the parties shall include a subsection similar to VSi's proposed Section 7.3(b) but shall re-draft the language to allow Helen Vasudevan access to Defendants' (1) annual revenue by product; and (2) annual unit sales by product.

B. Second Disputed Section: § 10 (Prosecution Bar)

The parties also disagree as to language in the protective order's prosecution bar, which provides that recipients of Highly Confidential Information "shall not be involved in the prosecution of patents or patent applications relating to patents-in-suit or relating to the subject matter of" any of the parties' produced discovery. (SPO, § 10.) "Prosecution" is defined to include "directly or indirectly drafting, amending, advising, or otherwise affecting the scope of maintenance of patent claims." (*Id.*, § 10.)

But the parties wish to also include language to make clear what does not fall within the definition of "prosecution." Defendants propose the following: "To avoid any doubt, 'prosecution' as used in this paragraph does not include representing a party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, ex parte reexamination or inter partes reexamination)." (Motion at 10.) Plaintiff agrees with all of this language, but it wants to add "or defending" such that "prosecution" does not include representing a party "challenging or defending" a patent under these circumstances. (*Id.*)

Because Defendants seek further restrictions on access to confidential information, they have the burden to establish good cause to justify doing so. *See Document Generation Corp. v. Allscripts, LLC*, No. 6:08-CV-479, 2009 WL 1766096, at *2 (E.D. Tex. Jun. 23, 2009). Defendants contend that VSi's proposed language "would allow VSi-affiliated individuals with access to Defendants' highly confidential technical documents the ability to amend and draft new claims directly reading on Defendants' Accused Products during a reexamination process." (Motion at 11.) "This," they argue, "would be contrary to the fundamental purpose of a prosecution bar," which "'is

---

[1] Defendants did convince the Court that Helen Vasudevan should not be allowed access to Defendants' licensing information, such as specific agreements, royalty payments, and/or licensing terms. Such information is more appropriately analyzed by VSi's retained expert(s).

4

to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (e.g., drafting claims during patent prosecution).'" (*Id*. at 11-12 (quoting *Visto Corp. v. Seven Networks, Inc*., No. 2:03-CV-333-TJW, 2006 WL 3741891, at *7 (E.D. Tex. Dec. 19, 2006)).)

VSi rightfully counters that Defendants' concerns are misplaced because the agreed-upon language prohibits them from prosecuting new patents related to the patents-in-suit or those based on any discovery produced by Defendants and because patents cannot be broadened upon reexamination. (*Id*. at 10-11.) Indeed, as one court has explained:

> Patent reexaminations, as the name suggests, are invoked to challenge a PTO patent grant. . . . [T]hey are exclusively a "post-grant" procedure, distinguishable from prosecution efforts on an initial patent application. Although patent claims may be amended, redrafted or substituted for new albeit narrower claims, unlike prosecution of an initial patent application, the Patent Act, 35 U.S.C. §§ 305, 314, expressly curtails the scope of reexamination, prohibiting any claim amendment that would enlarge the scope of the initial patent. This restriction both underscores the distinction between initial patent prosecution and reexamination, and effectively mitigates the potential to misuse PTO procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary.

*Pall Corporation v. Entegris, Inc*., 655 F.Supp.2d 169, 173 (E.D.N.Y. 2008) (internal citation omitted). For this reason, Defendants' Highly Confidential Information "is 'basically irrelevant to the reexamination.'"[2] *Kenexa Brassring Inc. v. Taleo Corp*., Civ. No. 07-521-SLR, 2009 WL 393782 (D. Del. Feb. 18, 2009) (quoting *Hochstein v. Microsoft Corp*., No. 04-CV-73071, 2008 WL 4387594, at 3 (E.D. Mich. Sep. 24, 2008)). Accordingly, Defendants fail to meet their burden and the Plaintiff's proposed language shall be used for the prosecution bar.

C. <u>Third Disputed Section: § 11 (Competitive Decisionmaking Bar)</u>

---

[2] In analyzing a similar issue, the court in *Pall* even considered, and then distinguished, three of the cases cited by Defendants in support of their claim that courts have "recognized the need to exclude participations in reexamination proceedings as part of patent prosecution bars." (Motion at 12-13 (citing *Visto Corp. v. Seven Networks, Inc*., 2006 WL 3741891, at *7; *MicroUnity Sys. Eng'g., Inc. v. Dell Inc*., No. 2:04-CV-120-TJW, 2005 WL 2299455 (E.D. Tex. Aug. 1, 2005); *Grayzel v. St. Jude Med., Inc*., 162 Fed.Appx. 954 (Fed. Cir. 2005)).) This outcome is in line with "'[t]he bulk of recent cases, [analyzing the issue of the use of a party's confidential information upon reexamination], [which] have determined that the confidentiality concerns cited by Defendant[s] are mitigated by the nature of the reexamination process.'" *Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096, at *2 (quoting *Crystal Image Tech., Inc. v. Mitsubishi Elec. Corp*., No 08-307, 2009 WL 1035017, at *2 (W.D. Pa. Apr. 17, 2009)).

The parties disagree as to whether a competitive decisionmaking bar is needed at all; Defendants think that it is, but VSi thinks that it is not. Specifically, Defendants propose adding as § 11 the following:

> Notwithstanding any other provision of this Order, absent the written consent of the Producing Party, any individual[,] including all Experts[,] that accesses "HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL - SOURCE CODE" shall not be involved in competitive decision-making, as defined by *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984).

(Motion at 13.)

Again citing *U.S. Steel Corp.* and *Brown Bag Software*, Defendants point out that individuals who engage in competitive decisionmaking are routinely barred from viewing confidential information of other parties during litigation. (*Id*. at 15.) Defendants appear to be particularly concerned with Mark and Helen Vasudevan viewing their Highly Confidential Information. (*Id* at 16.)

VSi first responds that a competitive decisionmaking bar is unnecessary because the Stipulated Protective Order "already prohibits anyone from using Protected Material for any purpose outside of this litigation, as well as from disclosing any Protected Information except in the limited circumstances contemplated by this Protective Order." (*Id*. at 14-15.) This argument, however, fails to take into account the problem acknowledged by *U.S. Steel* and the cases following it which were discussed above; specifically, the difficulty "for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so." *In re Deutsche Bank Trust Co. Americas*, 605 F.3d at 1378. For this reason, a competitive decisionmaking bar — subject to the subset of certain of Defendants' financial information that will be available to Helen Vasudevan — is appropriate.

VSi, however, also responds that Defendants' proposed competitive decisionmaking bar in particular is overbroad. (Motion at 14.) It worries that "it is possible under [D]efendants' proposal that Mark Vasudevan could be barred from competitive decision making for VSi if he is shown [Attorneys' Eyes Only] materials during a deposition or at trial." (*Id*.) VSi surely misreads Defendants' intent. Defendants instead appear to intend their proposed language to mean that any person who engages in competitive decisionmaking cannot have access to Highly Confidential

Information. (*Id*. at 15 ("[I]t is appropriate that VSi and all individuals associated with VSi who engage in competitive decisionmaking are barred from obtaining Defendants' [Highly Confidential Information].").) The Court does not believe that Defendants intend their proposed language to mean that any person who is shown Highly Confidential Information by Defendants cannot later engage in any competitive decisionmaking. Such a reading would invite absurd results. For example, Defendants could, in effect, prevent Mark Vasudevan from doing his job simply by showing him some of their Highly Confidential Information during a deposition. (*Id*.)

That said, Defendants' proposed language is, admittedly, somewhat ambiguous. Accordingly, the parties are directed to re-draft the language of the competitive decisionmaking bar to make clear that it is a not a prohibition that seeks to enjoin an individual from competitive decisionmaking once he or she happens to gaze upon the other side's secrets when directed to do so by the other side; rather, it should be make clear that it acts to prevent competitive decisionmakers from having access to Highly Confidential Information in the first place.

D. <u>Fourth Disputed Section: § 15 (Privileged/Work Product and Inadvertent Production of Protected Materials)</u>

VSi and defendant IBM (defendant Cisco takes no position on this particular dispute) disagree as to the extent of the privileged communications and attorney work product which will be included on the parties' privilege log.

The first disagreement involves communications protected by the attorney-client privilege: VSi proposes that no privileged communications between the parties and their respective counsel-of-record with respect to this litigation need be logged, while IBM argues that any privileged communication made prior to the filing of the complaint in this action should be logged. (*Id*. at 17.)

The second disagreement involves attorney work product: VSi proposes that no attorney work product relating to this litigation need be logged, while IBM argues that any attorney work product created before the filing of the complaint in this action should be logged. (*Id*.)

VSi argues that it is unfair to require the logging of pre-complaint privileged communications and attorney work product but to not require the logging of those made post-complaint because "there will generally be much more work product and many more privileged

communications" for a plaintiff than a defendant prior to a complaint being filed. (*Id*. at 18.) This is certainly true, and IBM's justification for its distinction — that "[n]ot requiring [such] a privilege log would create an opportunity to improperly withhold responsive documents made before the litigation began" — is not particularly compelling, given that, as VSi points out, this reasoning is true of any limitation on the logging of privileged documents; ultimately, each side will have to make a good faith determination of what must be logged and what may be omitted.[3] (*Id*. at 18-19). Thus, the Court finds VSi's reasoning to be pursuasive.

However, IBM notes that VSi's language limiting the communications and attorney work product to "counsel-of-record" cuts out support staff, and therefore creates an undue burden on all parties who will have to make this distinction. The Court agrees that there is no real reason for this distinction, and so the language of the privilege log provision should include communications between any attorneys, including support staff and vendors, and party clients that are related to this litigation.

**CONCLUSION**

Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART the parties' joint motion for entry of a protective order. The parties are directed to submit a stipulated protective order that contains the following:

1. a re-drafted in-house counsel provision whereby Helen Vasudevan is allowed access to Defendants' annual revenue by product and annual unit sales by product (*see* § 7.3(b));
2. a prosecution bar using VSi's proposed language (*see* § 10);
3. a re-drafted competitive decisionmaking bar that is subject to the subset of certain of Defendants' financial information that will be available to Helen Vasudevan (*see* § 11); and
4. a re-drafted privilege log provision that makes clear that privileged communications between any attorneys (including all support staff and vendors) and party clients that are related to this litigation or attorney work product, regardless of the date made or created need not be included on the parties' privilege logs (*see* § 15).

---

[3] Moreover, Judge Seeborg apparently stated at the April 2010 case management conference that emails between counsel and clients with respect to this litigation should not be logged and he did not distinguish between communications taking place before and after the complaint was filed. (*See* Motion at 18.)

8

**IT IS SO ORDERED.**

Dated: September 14, 2010



_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C09-05897 RS (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Andrew G Heinz | andrew.heinz@kirkland.com, aheinz@kirkand.com, jason.emden@kirkland.com |
| Brad Evan Rosen | bradrosen@quinnemanuel.com |
| Brooke Taylor | btaylor@susmangodfrey.com, bnealious@susmangodfrey.com |
| Brooke Ashley-May Taylor | btaylor@susmangodfrey.com |
| Daniel J Walker | dwalker@susmangodfrey.com, canderson@susmangodfrey.com |
| David A Nelson | davenelson@quinnemanuel.com |
| Ellen M Padilla | ellenpadilla@quinnemanuel.com |
| Eric James Enger | eenger@hpcllp.com, nbaudoin@hpcllp.com |
| Harper Siems Batts | harper.batts@kirkland.com, julie.bueno@kirkland.com, lesley.ahlberg@kirkland.com |
| Jennifer A Bauer | jenniferbauer@quinnemanuel.com |
| Jennifer Anne Bauer | jenniferbauer@quinnemanuel.com, lisagarner@quinnemanuel.com |
| John M. Desmarais | jdesmarais@kirkland.com |
| Jon T Hohenthaner | jon.hohenthaner@kirkland.com |
| Joseph Allen Loy | joseph.loy@kirkland.com |
| Leslie V Payne | lpayne@hpcllp.com |
| Martin A Galese | martin.galese@kirkland.com |
| Matthew M Sarboraria | matthew.sarboraria@oracle.com |
| Meghan Elizabeth Bordonaro | meghanbordonaro@quinnemanuel.com |
| Michael F. Heim | mheim@hpcllp.com, abranum@hpcllp.com, awilson@hpcllp.com, canderson@hpcllp.com |
| Robert Alan Appleby | rappleby@kirkland.com, jemden@kirkland.com |
| Sean S Pak | seanpak@quinnemanuel.com |
| Sean Sang-Chul Pak | seanpak@quinnemanuel.com, susanneglobig@quinnemanuel.com |
| Stephen Edward Morrissey | smorrissey@susmangodfrey.com, hdanielson@susmangodfrey.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

10