1   Brooke A. M. Taylor, WSBA 33190 (Admitted PHV)
    btaylor@susmangodfrey.com
2   Daniel J. Walker, WSBA 38876 (Admitted PHV)
    dwalker@susmangodfrey.com
3   SUSMAN GODFREY L.L.P.
    1201 Third Avenue, Suite 3800
4   Seattle, Washington 98101-3000
    Telephone:  (206) 516-3880
5   Facsimile:  (206) 516-3883

6
    Stephen E. Morrissey, CA Bar 187865
7   smorrissey@susmangodfrey.com
    SUSMAN GODFREY L.L.P.
8   1901 Avenue of the Stars, Suite 950
    Los Angeles, California  90067-6029
9   Telephone:  (310) 789-3100
    Facsimile:  (310) 789-3150
10
    Attorneys for Plaintiff
11

12                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
13                       SAN JOSE DIVISION

14  VASUDEVAN SOFTWARE, INC.,              Case No. 5:09-CV-05897 (RS-HRL)

15              Plaintiff,
                                           **VSI'S NOTICE OF MOTION AND**
16  vs.                                    **MOTION FOR LEAVE TO  AMEND ITS**
                                           **INFRINGEMENT CONTENTIONS;**
17  INTERNATIONAL BUSINESS MACHINES        **MEMORANDUM OF POINTS AND**
    CORPORATION and ORACLE                 **AUTHORITIES IN SUPPORT OF**
18  CORPORATION                            **MOTION**

19              Defendants.
                                           Date: January 13, 2011
20                                         Time: 1:30 pm
                                           Place: San Francisco, Courtroom #3, 17th Fl.
21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on January 13, 2011, at 1:30 pm, or as soon thereafter as counsel may be heard by this Court in Courtroom 3 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiff Vasudevan Software, Inc. ("VSi") respectfully moves the Court as follows:

VSi moves for leave to amend its Patent Rule 3-1 Infringement Contentions.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Pursuant to Patent Rule 3-6 and applicable law, VSi moves for leave to amend its Patent Rule 3-1 Infringement Contentions to conform to the evidence produced in discovery by IBM. Out of the fifty-four claims asserted by VSi in this case, these Amended Infringement Contentions modify VSi's infringement theories for just three claim elements present in only four claims. And as to those three claim elements, the modification is only slight. VSi's Amended Infringement Contentions do not assert any new claims, do not accuse any additional IBM products, and do not relate to Oracle's Accused Products.[1] In short, VSi's proposed modifications are minor changes to VSi's already highly-detailed and accurate infringement contentions. Discovery is ongoing, the Court has not yet issued its *Markman* Order, and the modification will not result in any prejudice to IBM.

### II.   LEGAL STANDARDS

The Northern District of California's Local Patent Rules state, in pertinent part:

Amendment of the Infringement Contentions or the Invalidity Contentions may be

---

[1] VSi's Amended Infringement Contentions (and all referenced exhibits) are attached as Exhibit A to the Declaration of Eric Enger in Support of VSi's Motion for Leave to Amend Its Infringement Contentions. A redline comparison of VSi's Amended Infringement Contentions against VSi's initial Infringement Contentions is attached as Exhibit B. The red-line version underscores that the amendments are minor.

1
2
3
4

made only by order of the Court upon a timely showing of good cause. Nonexhaustive examples of circumstances that may, absent undue prejudice to the nonmoving party, support a finding of good cause include: … (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

5
6
7
8
9
10
11
12
13
14

Patent L.R. 3-6.  The "good cause" standard requires a showing of diligence, with the burden on the movant to establish its diligence.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).  Other factors that the Court may consider when determining good cause are (1) the prejudice to the non-moving party should the motion to amend be granted, (2) the importance of the newly-discovered information, (3) whether the request to amend is motivated by gamesmanship and (4) the difficulty of locating the newly-discovered information. *See Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 2008 WL 2168379 at *1 (N.D. Cal. May 22, 2008); *see also Int'l Dev., LLC v. Simon Nicolas Richmond and Adventive Ideas, LLC.*, 2010 WL 3946714 at *2-*4 (D. N.J. October 04, 2010).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

While the Local Patent Rules are designed to require the parties to crystallize their theories of the case early in the litigation, they are "not a straitjacket into which litigants are locked from the moment their contentions are served."  *Comcast Cable Comms. Corp., LLC. v. Finisar Corp.*, 2007 WL 716131 at *2 (N.D. Cal. Mar. 2, 2007); *see Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 WL 1288199 at *2 (N.D. Cal. Apr. 30, 2007) (considering the timing and impact of amendment on other case deadlines).  The Northern District of California routinely grants patentees leave to amend their infringement contentions when, through diligent pursuit of non-public information, they discover additional bases of infringement.  *E.g.*, *Network Appliance Inc. v. Sun Microsystems, Inc.*, 2009 WL 2761924 at *3 (N.D. Cal. Aug. 31, 2009) (granting leave to amend infringement contentions based on information not available to patentee when filing initial infringement contentions); *Seiko Epson Corp. v. Coretronic Corp.*, 2008 WL 2563383 at *2-3 (N.D. Cal. June 23, 2008) (granting leave to amend infringement contentions based on

1    recently-discovered non-public information).

2    III.   **ARGUMENT**

3        Good cause exists to grant VSi leave to amend.  Since filing this lawsuit, VSi has

4    diligently pursued discovery of IBM's infringing products.  VSi has taken four depositions,

5    reviewed thousands of lines of source code, run tests on the Accused Products, and reviewed

6    millions of pages from documents produced by IBM.  Indeed, IBM's Patent L.R. 3-4 production

7    on the accused products alone consisted of nearly 4 million pages of documents (IBM's total

8    production now totals nearly 11 million pages).  Through all of this effort, VSi discovered

9    information about IBM's accused InfoSphere Warehouse product that was not known to VSi prior

10   to serving its Infringement Contentions and that provides clear evidence of IBM's infringement of

11   the patents-in-suit.  Despite VSi's best efforts, this information was not discovered – nor could it

12   have been discovered – prior to VSi's serving its highly-detailed preliminary infringement

13   contentions.

14       IBM will not suffer any prejudice if the amendments are allowed.  This Court has not yet

15   issued its *Markman* Order, and discovery is ongoing.  In fact, during a recent discovery meet and

16   confer, IBM's counsel stated that IBM is still searching for relevant documents and that IBM

17   likely could not even *estimate* when it would finish producing documents.  Enger Decl., ¶19.

18   Moreover, these proposed amendments affect only three elements of four claims, and do not add

19   any new accused products, patents or claims.  Thus, IBM would be hard pressed to point to any

20   legitimate prejudice in allowing VSi to make these minor amendments.  And even if IBM were to

21   successfully articulate prejudice that it would suffer, any such prejudice would pale in

22   comparison to the prejudice VSi suffers from IBM's continued infringement.

1

**A. VSi Could Not Have Known Precisely How IBM's Accused InfoSphere**
**Warehouse Product Operated Without Discovery.**

2

3    IBM's accused InfoSphere Warehouse product[2] is an extremely complex suite of software

4    products comprising as many as five different "editions," with each edition containing many

5    different components. *E.g.*, Ex. C, Excerpts from InfoSphere Warehouse v9.7.1 Installation

6    Guide, p. 2. For example, the Enterprise Edition of InfoSphere Warehouse contains the following

7    components: (1) DB2 Enterprise Server Edition; (2) DB2 Database Partitioning; (3) Design

8    Studio; (4) SQL Warehousing Tool; (5) Warehouse Administration Console; (6) Cubing Services;

9    (7) Infosphere Federation Server Relational Wrappers; (8) Cognos 8 BI Starter Edition; (9)

10   Intelligent Miner Modeling, Scoring and Mining Blox; (9) Text Analytics; (10) DB2 Alphablox;

11   (11) DB2 Alphablox Connectors; (12) DB2 Workload Management; (13) DB2 Query Patroller;

12   and (14) DB2 Performance Expert. *Id.* Further complicating matters, each component contains

13   voluminous documentation. For example, the dense, publicly available technical documentation

14   for the DB2 Cubing Services component alone is more than 1,600 pages, and the AlphaBlox and

15   Federation Server components have similarly voluminous documentation. Exs. D-G, IBM

16   Product Documentation. VSi spent hundreds of man-hours reviewing this documentation, as well

17   as other publicly-available information, in preparing VSi's Infringement Contentions.

18

19

20   VSi served its P.R. 3-1 Infringement Contentions on April 22, 2010, as required under the

21   Court's Case Management Scheduling Order. [Dkt. No. 133] Those Infringement Contentions

22   included a highly-detailed explanation of VSi's then-current infringement theories regarding

23   IBM's accused InfoSphere Warehouse product. Ex. H, InfoSphere Warehouse Claim Chart.

24   VSi's meticulous Infringement Contentions contain numerous citations to IBM's publicly

25

26

27   [2] IBM's InfoSphere Warehouse product was formerly known as DB2 Warehouse, DB2 Data Warehouse
     Edition and DB2 Universal Database Data Warehouse Edition. For brevity, VSi refers to each of those
28   Accused Products as simply "InfoSphere Warehouse" in this Motion.

available information on InfoSphere Warehouse. *Id.* It is apparent that they are not the result of a haphazard review of IBM's publicly available information.

Elements (e)-(g) of claim 2 of the U.S. Patent No. 6,877,006 ("the '006 Patent"), for example, describe software that updates an OLAP cube and a source database with data provided by a user, and may be referred to hereinafter as the claimed "write-back elements." *See also* '006 claim 1(e)-(g); U.S. Patent No. 7,720,861 ("the '861 Patent") claims 1(d)-(f) and 3(d)-(f).  For those write-back elements, VSi's Infringement Contentions cite the publicly available InfoSphere Warehouse manuals that describe how "you can input, or write back, data to data sources using Alphablox." Ex. H, pp. 29-30.  Specifically, those manuals teach the following:

> Writing back to multidimensional data sources
> You can use Alphablox Java methods to modify a result set and update its underlying data source. To give users the ability to update values in data cells and then write those values back to the underlying data source, you need to utilize a set of properties and associated methods to achieve the following effects and results:
> · Enable the grid to be edited
> · Define the cells in the grid that are available for editing
> · Specify the style (usually a foreground or background color) for displaying an editable cell
> · Specify the style for displaying an edited cell
> · Optionally, specify the processing to occur when a user edits a cell.

*Id.*, p. 30.  This evidence, on its face, establishes a *prima facie* infringement case for the claimed write-back elements.  Importantly, at the time VSi filed its Infringement Contentions, VSi could not have known that this manual was misleading and that the accused InfoSphere Warehouse product could not, in fact, write-back to certain multi-dimensional data sources such as IBM's Cubing Services, which was accused in VSi's original infringement contentions.  *Id.*

## B.  VSi Has Diligently Pursued Discovery of Non-Public Information.

Immediately after filing its Infringement Contentions, VSi began pursuing non-public discovery concerning IBM's Accused Products.  On April 23, 2010, the day after VSi served its Infringement Contentions, VSi served its first set of requests for production on IBM.  Ex. I, VSi's

First Set of Requests For Production of Documents to Defendant IBM.  Among other things, VSi requested "an executable version of each Accused Product in the same format and packaging as provided to [IBM's] customers."  *Id.*, No. 12.  IBM initially refused to produce the accused InfoSphere Warehouse software, arguing that "VSi can purchase its own copies of those products."  Ex. J, IBM's Objections and Responses, p. 9.  On June 15, 2010, VSi requested IBM to reconsider its position due to the high cost of the accused InfoSphere Warehouse software.  Ex. K, Enger 6/15/10 e-mail.  IBM then produced part of the accused software on July 1, 2010 and the remaining parts on July 21, 2010.  Exs. L-M, IBM Production Letters.  VSi began reviewing and installing the IBM software immediately thereafter to sharpen and focus its infringement theories.

VSi did not limit its discovery to review of the software itself, however.  VSi has diligently been reviewing the nearly **11 million pages** of mostly non-public information produced by IBM in this case.[3]  VSi has also deposed four technical witnesses about the functionality of the Accused Products.  One such technical witness was John Poelman, a software developer at IBM who was produced to testify regarding IBM's "ability to 'write back' data to data sources."  Ex. N, 30(b)(6) Deposition Notice, p. 8.[4]  During that deposition, for the first time, Mr. Poelman testified that, despite contrary assertions in IBM's product manual, InfoSphere Warehouse could not write-back to certain multi-dimensional data sources, including IBM's Cubing Services.  Ex. O, Excerpts from Poelman Depo., 231:5-233:2.

---

[3] IBM's document production for this case has been continuous and overwhelming.  For example, IBM initially produced more than 4 million pages of non-public information on June 8, 2010 as part of IBM's Local Patent Rule 3-4(a) document production.  Since then, IBM has produced 325,000 pages on August 23, 2010; 725,000 pages on August 30, 2010; 1.3 million pages on September 30, 2010; almost a million pages on October 5, 2010; and more than 4 million pages on November 24, 2010 – more than 7 months after VSi's infringement contentions were due.

[4] As further evidence of VSi's diligence, VSi also deposed: (1) Glenn Rasmussen on July 22, 2010; (2) Eileen Lin on August 8, 2010; and Matt Bedin on July 20, 2010 (Oracle).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

After the deposition, VSi attempted to substantiate IBM's testimony regarding the write-back capabilities of InfoSphere Warehouse.  Among other things, VSi reviewed IBM's voluminous document production and spent hundreds of hours installing and testing the accused InfoSphere Warehouse software.  Such a herculean effort was necessary because, as discussed above, InfoSphere Warehouse comprises numerous separate software components, each of which has separate documentation and must be separately installed and configured.  Adding to the complexity of the installation, IBM's software is notoriously difficult to install and configure.  During the course of its investigation, VSi confirmed that InfoSphere Warehouse could not write-back to the Cubing Services multi-dimensional data source, as stated in VSi's Infringement Contentions and suggested by the misleading IBM documentation.  *See* Ex. H, pp. 29-30.  But more importantly, VSi determined that InfoSphere Warehouse could write back to various relational data sources while still dynamically updating the OLAP cube.  *See* Ex. A, pp. 30-36. This contradicts the publicly available information in IBM's manuals, which state: "Writing data back to a relational data source does not affect the user's view of the data, but before the user can see the effect of the changed data, the query must be re-executed."  Ex. P, Excerpts from Alphablox: Developing with analytics APIs Version 9.5.1, p. 184.  Because of the misleading publicly available information regarding writing back to relational data sources, VSi did not originally assert its amended infringement theory against the relational databases.

Soon after discovering in early November 2010 that InfoSphere Warehouse infringed the "write-back elements" under a different theory, VSi's attorneys drafted Amended Infringement Contentions.  On November 16, 2010, VSi sent IBM those Amended Infringement Contentions (along with redlines against the initial Infringement Contentions) and put IBM on notice of its intent to seek leave to amend its contentions.  Ex. Q, Enger 11/16/10 e-mail.  Thus, VSi has

1  diligently pursued non-public discovery on InfoSphere Warehouse and has not delayed in seeking
2  leave to amend its infringement contentions.

3  **C. VSi's Recently Discovered, Non-Public Information Is Very Important.**

4  VSi's Amended Infringement Contentions reflect the recently discovered, non-public
5  information that InfoSphere Warehouse can update various relational data sources while still
6  dynamically updating the OLAP cube.  This information is extremely important because this
7  functionality infringes the "write-back elements" of claims 1-2 of the '006 Patent and claims 1
8  and 3 of the '861 Patent.  *See Int'l Dev.*, 2010 WL 3946714 at *3 (noting "the importance of what
9  the court is excluding" as a factor in deciding whether to grant leave to amend infringement
10 contentions); *Coopervision, Inc. v. Ciba Vision Corp.*, 480 F.Supp.2d 884, 888 (E.D. Tex. 2007)
11 (considering "the importance of the particular matter").   VSi's Amended Infringement
12 Contentions prove beyond a shadow of a doubt that InfoSphere Warehouse includes the
13 aforementioned infringing capabilities. Ex. A, pp. 30-36.  InfoSphere Warehouse is an extremely
14 valuable and profitable software product and IBM's liability for infringement triggers substantial
15 damages.

16 **D. IBM Will Not Be Prejudiced By VSi's Amendment.**

17 IBM will not be not prejudiced by VSi's minor amendments to its infringement theory.
18 VSi is not seeking to make wholesale changes to its infringement case, but simply to slightly
19 tweak its theories as to only three claim elements present in just four of the fifty-four claims
20 asserted against one of IBM's Accused Products, InfoSphere Warehouse.  *See* Ex. B, pp. 31-37.
21 VSi's Amended Infringement Contentions do not accuse any additional IBM products or add any
22 new claims. Ex. A.  Because IBM is intimately familiar with its own product lines, IBM needs no
23 discovery to understand the InfoSphere Warehouse functionality implicated in VSi's Amended
24 Infringement Contentions.   VSi has brought this motion promptly, within months of IBM

1    producing a copy of InfoSphere Warehouse, before IBM has finished its document production,

2    before this Court has issued its *Markman* Order, and before this Court has entered an Order

3    setting a case schedule for the remainder of this case.  Further, IBM has been aware of VSi's

4    intention to supplement its infringement contentions for more than two weeks.  *See* Ex. Q.  In

5    sum, VSi's amendment is no surprise, and ample time remains for fact discovery, expert reports,

6

7    and trial since none of these deadlines has been set by the Court.

8        **E.  VSi's Amendment Does Not Require a Continuance.**

9        No continuance is needed.  The Court has not yet issued a scheduling order setting the

10    close of fact and expert discovery, much less setting a trial date.  And while the Parties have filed

11    claim construction briefs and the Court has conducted a *Markman* hearing, the Court has not

12    issued its *Markman* Order.  Further, VSi's amendment does not raise any new claim construction

13    issues.  The following table lists the implicated claim elements (*i.e.*, '006 claims 1-2(e)-(g) and

14    '861 claims 1&3(d)-(f)), with the emphasized claim terms representing those for which the

15

16    Parties have either agreed to a construction or asked the Court to propose a construction:

| '006 claim 2(e)-(g)[5] | '861 claims 1&3(d)-(f) |
|---|---|
| e. accepting through the GUI a *dynamic on demand* user update of specific data displayed from the assembled *OLAP cube,* | d. accepting through the GUI a user update of specific data in the *OLAP cube,* |
| f. accessing an affected constituent *database* relevant to the specific data of the user update, and *dynamically* updating that *database* with the specific data of the user update, and | e. accessing a *database* relevant to the specific data, and updating that *database* *dynamically on demand* with the specific data, and |
| g. *dynamically on demand* updating the assembled *OLAP cube* with the specific data update. | f. dynamically updating the *OLAP cube* data displayed on the GUI with the specific data. |

25    As is apparent, there are no additional terms of art that must be construed as a result of VSi's

26    Amended Infringement Contentions.  Nor does the slight tweak of the infringement contentions to

27

---

28    [5]  Elements (e)-(g) of '006 claim 1 are substantially similar to the corresponding elements in '006 claim 2.

1   conform with the evidence IBM produced have any affect on the *Markman* issues, which have

2   absolutely nothing to do with the slight modification.  And it is not apparent how VSi's Amended

3   Infringement Contentions could affect the Parties' validity positions, either.  Finally, IBM has

4   taken depositions of only two fact witnesses, Frank Schwartz and Helen Vasudevan, both of

5   whom are non-technical, so IBM will not have to re-depose any witnesses or re-do any discovery

6   as a result of these amendments.

7

8   **IV.    CONCLUSION**

9           For these reasons, and because there is good cause based upon VSi's recent discovery of

10  non-public information about the Accused Instrumentality which was not discovered, despite

11  diligent efforts, before the service of the Infringement Contentions, VSi asks the Court to grant

12  this motion for leave and to enter the order submitted with this motion.

13

14  Dated:  December 17, 2010                          SUSMAN GODFREY LLP

15

16                                                     By:  _/s/ Brooke A.M. Taylor (by permission EJE)_
                                                       Brooke A. M. Taylor
17                                                     Lead Attorney
                                                       WA State Bar No. 33190 (Admitted Pro Hac Vice)
18                                                     btaylor@susmangodfrey.com
                                                       Daniel J. Walker
19                                                     WA State Bar No. 38876 (Admitted Pro Hac Vice)
                                                       dwalker@susmangodfrey.com
20                                                     SUSMAN GODFREY L.L.P.
                                                       1201 Third Avenue, Suite 3800
21                                                     Seattle, Washington 98101-3000
                                                       (206) 516-3880
22                                                     (206) 516-3883 (fax)
23

24                                                     Stephen E. Morrissey
                                                       CA Bar 187865
25                                                     smorrissey@susmangodfrey.com
                                                       Susman Godfrey LLP
26                                                     1901 Avenue of the Stars, Ste. 950
                                                       Los Angeles, CA  90067-6029
27                                                     (310) 789-3103
                                                       (310) 789-3005 (fax)
28

---

VSI'S MOTION FOR LEAVE TO AMEND ITS                                        Case No. 5:09-CV-05897 RS
INFRINGEMENT CONTENTIONS                    - 11                           11284-v4/1024.0010

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael F. Heim
TX State Bar No. 09380923
mheim@hpclip.com
Leslie V. Payne
TX Bar No. 00784736
lpayne@hpcllp.com
Eric J. Enger
TX Bar No. 24045833
eenger@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
600 Travis Street, Suite 6710
Houston, Texas 77002-2912
(713) 221-2000
(713) 221-2021(fax)

ATTORNEYS FOR PLAINTIFF

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3          I hereby certify that on this 17th day of December, 2010, a true and correct copy of the

4    foregoing   VSI'S   MOTION   FOR   LEAVE   TO   SUPPLEMENT   ITS   INFRINGEMENT

5    CONTENTIONS and accompanying exhibits and declaration was served on all counsel of record

6    via the Court's ECF System.

7
                                              /s/ *Eric J. Enger*____
8                                             Eric J. Enger

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28