Robert A. Appleby (admitted *pro hac vice*)
robert.appleby@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Harper Batts (SBN 242603)
harper.batts@kirkland.com
KIRKLAND & ELLIS LLP
950 Page Mill Road
P.O. Box 51827
Palo Alto, CA 94304
Telephone: (650) 859-7000
Facsimile: (650) 859-7500

John M. Desmarais (admitted *pro hac vice*)
jdesmarais@desmarisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401

Attorneys for Defendant
*International Business Machines Corporation*
*Additional counsel listed on signature page*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| VASUDEVAN SOFTWARE, INC., <br><br>            Plaintiff, <br>    v. <br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION and ORACLE CORPORATION, <br><br>            Defendants. | Case No. 5:09-CV-05897-RS (HRL) <br><br>**IBM'S MOTION TO COMPEL DISCOVERY INTO VSI'S PRE-FILING INVESTIGATION** <br><br>Date: January 25, 2011 <br>Time: 10:00 a.m. <br>Courtroom: 2, 5th Floor <br><br>The Honorable Magistrate Judge Howard R. Lloyd |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................2

II. FACTUAL STATEMENT .......................................................................................3

    A. Nature of the Action...................................................................................3

    B. Nature of the Discovery Dispute.................................................................4

        1. IBM's Requests for Admission Nos. 1-24 and VSi's Objections.....4

        2. IBM's Interrogatory No. 13 and VSi's Objections. ..........................6

III. ARGUMENT............................................................................................................8

    A. IBM's Narrow Discovery Is Relevant to Determine Whether VSi Failed to Meet Its Obligations to Conduct a Reasonable Pre-Filing Investigation................................................................................................8

    B. IBM's Requests for Admission Nos. 1-24 Properly Inquire into VSi's Apparent Failure to Obtain or Use the Accused Products. ..........................9

        1. IBM's Requests for Admission Do Not Seek Privileged Communications. .............................................................................9

        2. IBM's Requests for Admission Do Not Seek Documents or Tangible Things Protected by the Work-Product Doctrine. ..........10

    C. IBM's Interrogatory No. 13 Properly Seeks a Description of VSi's Pre-Filing Investigation. ..............................................................................10

        1. IBM's Interrogatory No. 13 Does Not Seek Privileged Communications. ...........................................................................10

        2. IBM's Interrogatory No. 13 Does Not Seek Documents or Tangible Things Protected by the Work-Product Doctrine. ..........11

    D. To the Extent Any of the Requested Information Is Privileged or Work-Product, VSi Has Waived Such Protection. ...................................11

        1. VSi Voluntarily Put Its Pre-Filing Investigation at Issue in Its Submissions to the Court. ..............................................................11

        2. VSi Cannot Strategically Use Privilege and Work-Product Protections as Both Sword and Shield. ..........................................13

IV. CONCLUSION.......................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ................................................................................................ 13

*Graceway Pharm., LLC v. Perrigo Co.*, No. 2:10-cv-00937,
    2010 WL 2521026 (D.N.J. June 10, 2010) ............................................................................... 8

*In re Echostar*,
    448 F.3d 1294 (Fed. Cir. 2006) ............................................................................................. 13

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997) ............................................................................................. 2, 4

*Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW,
    2003 WL 21699799 (N.D. Cal. March 21, 2003) .................................................................... 9

*Resolution Trust Corp. v. Dabney*,
    73 F.3d 262 (10th Cir. 1995) ................................................................................................. 11

*Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741-SI,
    2004 WL 2480707 (N.D. Cal. Aug. 10, 2004) ......................................................................... 8

*Tennenbaum v. Deloitte & Touche*,
    77 F.3d 337 (9th Cir. 1996) ................................................................................................... 13

*United States v. Graf*,
    610 F.3d 1148 (9th Cir. 2010) ................................................................................................. 9

*United States v. Nobles*,
    422 U.S. 225 (1975) ......................................................................................................... 10, 11

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) ................................................................................................................. 9

*View Eng., Inc. v. Robotics Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ............................................................................................. 2, 8

*Weil v. Investment/Indicators, Research and Mgmt., Inc.*,
    647 F.2d 18 (9th Cir. 1981) ................................................................................................... 11

**Rules**

Fed. R. Civ. P. 26(b)(3) ................................................................................................. 10, 11

**EXHIBIT LIST**

*Exhibit A:*   IBM's First Set of Requests for Admission (Nos. 1–24)

*Exhibit B:*   IBM's Second Set of Interrogatories (Nos. 13–14)

*Exhibit C:*   VSi's Responses to IBM's First Set of Requests for Admission

*Exhibit D:*   VSi's Responses to IBM's Second Set of Interrogatories

*– Emphasis Added Unless Otherwise Noted –*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 25, 2011, at 10:00 a.m. in Courtroom 2, 5th Floor, U.S. District Court for the Northern District of California, San Jose, Defendant International Business Machines Corporation ("IBM") shall move the Court pursuant to Federal Rule of Civil Procedure 37 for an order compelling Plaintiff Vasudevan Software, Inc. ("VSi") to respond to IBM's Requests for Admission Nos. 1–24 and Interrogatory No. 13.

IBM's counsel certifies, by signature below, that IBM has in good faith conferred telephonically with VSi and that those efforts were unsuccessful. IBM respectfully requests that this Court enter an order: (1) compelling responses to IBM's Requests for Admission Nos. 1–24, fully identified and discussed below; (2) compelling responses to IBM's Interrogatory No. 13, fully identified and discussed below; and (3) awarding IBM all such further relief as this Court deems just and appropriate.

This motion is based on the following Memorandum of Points and Authorities, the supporting Declaration of Martin A. Galese, the pleadings on file in this action, matters of which the Court may take judicial notice, and upon such other and further oral and documentary argument and evidence as the Court may permit at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Before filing suit for patent infringement, a patentee, through its counsel, must "at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement…." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.,* 208 F.3d 981, 986 (Fed. Cir. 2000).  This pre-filing analysis ordinarily requires that the patentee obtain a sample of the accused device and compare that device to the asserted claims.  *See Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("No adequate explanation was offered for why [plaintiff] failed to obtain, or attempted to obtain, a sample of the accused device … so that its actual design and functioning could be compared with the claims of the patent.").

It appears that VSi did not do this.  VSi now admits that the functionality that it accused of infringing two of the three patents-in-suit does not in fact infringe those patents.  (*See, e.g.*, VSi's Notice of Mot. and Mot. for Leave to Amend Its Infringement Contentions; Mem. of Points and Authorities In Supp. of Mot., D.I. 181, at 8 [hereinafter Mot. for Leave to Amend] ("During the course of its investigation, VSi confirmed that InfoSphere Warehouse could ***not*** write-back to the Cubing Services multi-dimensional data source, as stated in VSi's Infringement Contentions….").) VSi came to this realization by "installing and testing the accused InfoSphere Warehouse software." (*Id.*)  But despite the commercial availability of this IBM accused product, VSi did not perform its testing before filing suit as the law requires.  Rather, VSi tested the accused software over a year and a half after filing its complaint, months after serving its infringement contentions, and only after being told by an IBM witness that its factual infringement allegations were incorrect.

Recognizing from the outset that VSi's infringement allegations were factually flawed, IBM served requests for admission that asked VSi to admit that it had failed to obtain or operate the IBM Accused Products before VSi filed its complaint or served its infringement contentions in this action. (*See* Ex. A, IBM's First Set of Reqs. for Admis. (Nos. 1–24).)  IBM also served an interrogatory seeking a description of "any investigation undertaken by or on behalf of VSi before the filing of the complaint in this action…."  (Ex. B, IBM's Second Set of Interrogs. (Nos. 13–14), at No. 13.)  VSi

has refused to substantively answer IBM's requests for admission and this interrogatory, objecting with blanket assertions that all information encompassed by these requests is shielded by attorney-client privilege and/or work-product protection.  (*See* Ex. C, VSi's Resps. to IBM's First Set of Reqs. for Admis., at Nos 1–24; Ex. D, VSi's Resps. to IBM's Second Set of Interrogs., at No. 13.)  VSi's objections are meritless.  IBM's discovery requests do not seek privileged or work-product information, but rather the underlying factual details regarding the steps VSi took, or did not take, during its pre-filing investigation.  Even were VSi's concerns valid, VSi's recent attempts to show good cause to amend its incorrect infringement contentions have placed its pre-filing investigation squarely at issue and waived any privilege or work-product protection.  (*See, e.g.*, D.I. 181 at 5–8.)  Indeed, VSi's Motion for Leave to Amend confirms both the relevance and appropriateness of IBM's requested discovery into the inadequacy of VSi's pre-filing investigations.

## II.   FACTUAL STATEMENT

### A.   Nature of the Action

VSi filed this patent-infringement action in the Eastern District of Texas on April 13, 2009, accusing both IBM and Oracle Corporation of infringing U.S. Patent No. 6,877,006 and U.S. Patent No. 7,167,864.  The action was transferred to this Court on November 10, 2009.  VSi amended its complaint on June 3, 2010, further alleging that IBM and Oracle infringe U.S. Patent No. 7,720,861.

On April 22, 2010, VSi served its Disclosure of Asserted Claims and Infringement Contentions in accordance with Rule 3-1 of the Northern District of California's Patent Local Rules, alleging that the following IBM software suites infringe 54 claims of the patents-in-suit:  IBM's InfoSphere Warehouse (all 9.5 & 9.7 versions); DB2 Warehouse (version 9.5); IBM's DB2 Data Warehouse Edition (all 9.1 versions) *in combination with* either IBM WebSphere/DB2 Information Integrator (version 9.2) or WebSphere Federation Server (version 9.2); IBM's DB2 Universal Database Data Warehouse Edition (all 8.2 versions) *in combination with* IBM WebSphere/DB2 Information Integrator; and IBM Cognos 8 Business Intelligence.  VSi alleges that certain configurations of IBM software products included in these suites — namely, IBM's Alphablox, Cubing Services, Federation Server, and Information Integrator products — infringe the asserted claims of the patents-in-suit.  The Court heard oral argument on the parties' disputed claim terms on

October 20, 2010.  Discovery in the case is on-going.  No final discovery schedule or trial date has yet been ordered.

B.      **Nature of the Discovery Dispute**

After VSi served its infringement contentions, IBM recognized that those contentions were based on factual errors regarding the operation of the IBM Accused Products.  VSi's contentions contain, as VSi itself now admits, crucial inaccuracies regarding the ability of the Accused Products to "write-back" to source databases as claimed by VSi's patents-in-suit.  (*See* D.I. 181 at 8.)  These inaccuracies could and should have been uncovered through a review of the relevant IBM product documentation, publically available without charge, and by obtaining and operating the commercially-available Accused Products themselves.  Because VSi evidently did not conduct this required investigation, on August 23, 2010, IBM served targeted discovery on VSi, including requests for admission and an interrogatory, to ascertain VSi's compliance with Rule 11 of the Federal Rules of Civil Procedure and relevant Federal Circuit case law.  (*See* Ex. A; Ex. B); *see also Judin*, 110 F.3d at 784  ("No adequate explanation was offered for why [plaintiff] failed to obtain, or attempted to obtain, a sample of the accused device…. Under these circumstances, there is no doubt that [plaintiff] failed to meet the minimum standards imposed by Rule 11.").  Despite IBM's concerns, repeatedly identified to VSi, and VSi's own admission that its original infringement theory regarding the Accused Products was erroneous, VSi continues to refuse to respond substantively to IBM's narrow discovery into the steps VSi took, if any, in conducting a pre-filing investigation.

1.      **IBM's Requests for Admission Nos. 1-24 and VSi's Objections.**

On August 23, 2010, IBM served VSi with twenty-four requests for admission, seeking discovery into whether VSi had acquired or operated the Accused Products before filing its Complaint or serving its infringement contentions. (*See* Ex. A.)  IBM's requests seek whether VSi had obtained or operated the Accused Products (both in the aggregate and with respect to each of the Accused Products).  As outlined below, VSi has objected to each of IBM's requests asserting, among other objections, that "VSi's pre-suit investigation of IBM's Accused Products … is privileged and protected as attorney work-product."  (*See, e.g.*, Ex. C at No. 1.)

IBM Request for Admission No. 1, for example, seeks whether VSi had purchased or

otherwise obtained *any* Accused Product before filing its complaint, while Requests for Admission Nos. 5, 9, 13, 17, and 21, seek the same information on a per-Accused Product basis:

> **REQUEST FOR ADMISSION NO. 1:**
>
> Admit that VSi did not purchase or otherwise obtain any Accused Product prior to filing its complaint.
>
> *VSi Answer:*
>
> In addition to its General Objections, which are incorporated herein by reference, VSi objects to this request for admission because it calls for irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. VSI further objects to this request for admission because it calls for information protected by the attorney-client privilege and/or the work-product doctrine. **VSi's pre-suit investigation of IBM's Accused Products,** including whether VSi purchased or otherwise obtained any Accused Product prior to filing its complaint, **is privileged and protected as attorney work-product.**

(Ex. C at 3.)

Similarly, IBM's Request for Admission No. 2 seeks, in general, whether VSi operated any Accused Product before filing its complaint, while Requests for Admission Nos. 6, 10, 14, 18, and 22, seek the same information on a per-Accused Product basis:

> **REQUEST FOR ADMISSION NO. 2:**
>
> Admit that VSi did not operate any Accused Product prior to filing its complaint.
>
> *VSi Answer:*
>
> In addition to its General Objections, which are incorporated herein by reference, VSi objects to this request for admission because it calls for irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. VSI further objects to this request for admission because it calls for information protected by the attorney-client privilege and/or the work-product doctrine. **VSi's pre-suit investigation of IBM's Accused Products** including whether VSi operated any Accused Product prior to filing its complaint, **is privileged and protected as attorney work-product**.

(Ex. C at 3–4.)

IBM's Requests for Production Nos. 3 and 4 seek the same information as Nos. 1 and 2, but inquire as to whether VSi had obtained (No. 3) or operated (No. 4) any Accused Product before serving of its infringement contentions:

> **REQUEST FOR ADMISSION NO. 3:**
>
> Admit that VSi did not purchase or otherwise obtain any Accused Product prior to serving its infringement contentions.

*VSi Answer:*

In addition to its General Objections, which are incorporated herein by reference, VSi objects to this request for admission because it calls for irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. VSI further objects to this request for admission because it calls for information protected by the attorney-client privilege and/or the work-product doctrine. **VSi's pre-suit and post-filing investigations of IBM's Accused Products**, including whether VSi purchased or otherwise obtained any Accused Product prior to serving its infringement contentions, **is privileged and protected as attorney work-product.**

**REQUEST FOR ADMISSION NO. 4:**

Admit that VSi did not operate any Accused Product prior to serving its infringement contentions.

*VSi Answer:*

In addition to its General Objections, which are incorporated herein by reference, VSi objects to this request for admission because it calls for irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. VSI further objects to this request for admission because it calls for information protected by the attorney-client privilege and/or the work-product doctrine. **VSi's pre-suit and post-filing investigations of IBM's Accused Products**, including whether VSi operated any Accused Product prior to serving its infringement contentions, **is privileged and protected as attorney work-product.**

(Ex. C at 4–5.) Requests for Production Nos. 7, 11, 15, 19, and 23, and Nos. 8, 12, 16, 20, and 24, respectively, seek these two types of information on a per-Accused Product basis. (Ex. A.) VSi has, consistent with the examples shown above, objected to all twenty-four requests for admission on the basis that each seeks information "privileged and protected as attorney work-product." (*See generally* Ex. C.) IBM therefore moves, in the present motion, to compel VSi's response to each of its twenty-four requests for admission.

> **2.      IBM's Interrogatory No. 13 and VSi's Objections.**

IBM's Interrogatory No. 13, also served on August 23, 2010, seeks, for each patent claim asserted against IBM, a description of "any investigation undertaken by or on behalf of VSi before the filing of the complaint in this action regarding potential infringement by IBM of that claim.…" (Ex. B at Interrog. No. 13.) IBM's interrogatory specifically requests that VSi's description provide at least the following details:

(i)      "an identification of every person or entity that … participated in, or provided information concerning the investigation";

      (ii)    "a description of all analyses of any of the products … identified in VSi's infringement contentions";

      (iii)   "an identification of all IBM products … purchased or otherwise obtained by VSi";

      (iv)   "a description of all tests performed on any of the products … identified in VSi's infringement contentions…";

      (v)    "a description of every instance where VSi applied the claim to an accused device";

      (vi)   "an identification of all documents and things reviewed or relied upon in connection with the investigation"; and

      (vii)  "a description of the results and/or conclusions of the investigation."

(*Id.*)  VSi objected to IBM's Interrogatory No. 13, claiming — without further explanation or justification — that any "[d]etails of pre-suit investigations are privileged and/or protected by the attorney work-product doctrine":

> **INTERROGATORY NO. 13:**
>
> **For each patent claim of each Patent-In-Suit identified in VSi's infringement contentions**, including any supplements thereto, **describe in detail any investigation undertaken by or on behalf of VSi before the filing of the complaint in this action regarding potential infringement by IBM of that claim,** including without limitation, an identification of every person or entity that supervised, assisted, participated in, or provided information concerning the investigation, a description of all analyses of any of the products and/or components identified in VSi's infringement contentions, an identification of all IBM products and/or components purchased or otherwise obtained by VSi, a description of all tests performed on any of the products and/or components identified in VSi's infringement contentions or any other IBM products and/or components, a description of every instance where VSi applied the claim to an accused device, an identification of all documents and things reviewed or relied upon in connection with the investigation, and a description of the results and/or conclusions of the investigation.
>
> *VSi Answer:*
>
> VSi reiterates its General Objections and incorporates the same by reference herein. VSi further objects to this interrogatory as unduly burdensome, compound and in violation of the Court's Case Management Scheduling Order, which limits IBM to twenty-five interrogatories, insofar as it purports to treat multiple independent requests for detailed information as a single interrogatory. VSi further objects to the extent the interrogatory calls for legal conclusions and/or information protected by the attorney-client privilege and/or the work-product doctrine; VSi will respond only based on non-privileged information. VSi also objects to this interrogatory to the extent it calls for the premature disclosure of expert testimony. Subject to the foregoing objections, VSi responds as follows: **Details of pre-suit investigations are privileged and/or protected by the attorney work-product doctrine**, including but not limited to: descriptions of all products analyzed during the investigation; the

      identification of IBM products obtained by VSi during the investigation; descriptions of all tests performed on any IBM products during the investigation; descriptions of the instances where VSi applied the claim to an IBM product; identification of all documents and things reviewed or relied upon in connection with the investigation; and a description of the results of the investigation.

(Ex. D at 3–4.)  IBM therefore also moves in the present motion to compel VSi to substantively respond to Interrogatory No. 13.

## III.   ARGUMENT

### A.   IBM's Narrow Discovery Is Relevant to Determine Whether VSi Failed to Meet Its Obligations to Conduct a Reasonable Pre-Filing Investigation.

VSi was obligated to conduct a reasonable pre-filing investigation before both filing its complaint against IBM and its subsequent submission of infringement contentions.  *See, e.g.*, *View Eng., Inc.*, 208 F.3d at 986 ("Performing a pre-filing assessment of the basis of each infringement claim is … extremely important.").  Factual errors in VSi's infringement contentions, however, led IBM to believe that VSi failed to adequately investigate the Accused Products before filing its complaint or serving its infringement contentions.  Confirming IBM's suspicions, VSi now admits that the Accused Products do not operate as VSi has claimed in its infringement contentions.  (*See, e.g.*, D.I. 181 at 8 ("During the course of its investigation, VSi confirmed that InfoSphere Warehouse could *not* write-back to the Cubing Services multi-dimensional data source, as stated in VSi's Infringement Contentions….").)

"In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng., Inc.*, 208 F.3d at 986.  To that end, IBM served narrowly tailored discovery — IBM's Requests for Admission Nos. 1-24 and Interrogatory No. 13 — into VSi's pre-filing investigations of the Accused Products.  *See, e.g., Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741-SI, 2004 WL 2480707, at *2 (N.D. Cal. Aug. 10, 2004) ("Generally speaking, questions regarding what [plaintiff] did in conducting his pre-filing investigation, and what he concluded from this investigation, are proper.")*; Graceway Pharm., LLC v. Perrigo Co.*, No. 2:10-cv-00937, 2010 WL 2521026 (D.N.J. June 10, 2010) ("[Defendant] may only positively assert that there was no presuit investigation if … [defendant] had first made a

discovery request (including admissions, documents, interrogatories, etc.)…."); (Ex. A; Ex. B.) IBM's Requests for Admission Nos. 1–24, inquiring into whether VSi obtained or operated any of the Accused Products before pursuing its claims against IBM, are relevant to whether VSi complied with its pre-filing obligations.  *See, e.g.*, *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2003 WL 21699799, at *7 (N.D. Cal. March 21, 2003) ("[Plaintiff]'s failure to examine the accused products directly is both preposterous and unjustified.  Accordingly, the court concludes that its pre-filing investigation was unreasonable and does not comport with the requirements of FRCP 11.").  IBM's Interrogatory No. 13, requesting a factual description of VSi's pre-filing investigation, seeks similar information — relevant as to whether VSi could have determined that it had a reasonable chance of proving infringement before asserting its claims against IBM.  As demonstrated below, VSi has no basis to withhold this information.

**B.     IBM's Requests for Admission Nos. 1-24 Properly Inquire into VSi's Apparent Failure to Obtain or Use the Accused Products.**

**1.     IBM's Requests for Admission Do Not Seek Privileged Communications.**

VSi's privilege objections to IBM's Requests for Admissjon Nos. 1–24 are baseless.  The attorney-client privilege protects against the disclosure of *communications*, made in confidence, between an attorney and his or her client.  *See, e.g.*, *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (setting forth eight-factor test for attorney-client privilege.)  In contrast, IBM's Requests for Admission Nos. 1–24 ask VSi to confirm — as IBM has suspected from the outset of this case and as VSi has now conceded in its Motion for Leave to Amend — that VSi failed to obtain or operate the Accused Products before bringing suit or submitting its infringement contentions. (*See, e.g.*, Ex. A at No. 1 ("Admit that VSi did not purchase or otherwise obtain any Accused Product prior to filing its complaint."), No. 2 ("Admit that VSi did not operate any Accused Product prior to filing its complaint.").)  None of IBM's Requests for Admission Nos. 1–24 requires VSi to disclose the substance of communications with its counsel — nor would discussions with counsel regarding these topics cloak the underlying facts in privilege.  *See, e.g.*, *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The [attorney-client] privilege only protects disclosure of communications, it does not protect disclosure of the underlying facts by those who communicated with the attorney…."

(citation omitted)).

### 2. IBM's Requests for Admission Do Not Seek Documents or Tangible Things Protected by the Work-Product Doctrine.

VSi's work-product objections to IBM's Requests for Admission Nos. 1–24 are equally baseless. The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial," Fed. R. Civ. P. 26(b)(3), so as to "shelter[] the mental processes of the attorney…." *United States v. Nobles*, 422 U.S. 225, 239 (1975). IBM's Requests for Admission Nos. 1–24 seek neither documents or tangible things, nor impinge upon the mental processes of VSi's counsel, but simply seek whether VSi had acquired or operated the Accused Products before filing of its complaint or serving its infringement contentions. IBM's Requests for Admission — such as "Admit that [it] did not operate any Accused Product prior to filing its complaint" — do not require VSi to disclose any documents, opinions, or conclusions regarding the acts in question. (*See, e.g.*, Ex. A at No. 2.) Indeed, if VSi did not obtain or operate the Accused Products before the relevant filings — as its infringement contentions and recent Motion for Leave to Amend indicate — it could have no relevant work-product to protect from disclosure.

### C. IBM's Interrogatory No. 13 Properly Seeks a Description of VSi's Pre-Filing Investigation.

#### 1. IBM's Interrogatory No. 13 Does Not Seek Privileged Communications.

VSi's blanket privilege objection to IBM's Interrogatory No. 13 is neither appropriate nor supported by any predicate facts establishing the existence of privileged communications. IBM's Interrogatory No. 13 seeks a description of "any investigation undertaken by or on behalf of VSi before the filing of the complaint in this action regarding potential infringement by IBM of that claim…." (Ex. B at No. 13.) Like IBM's Requests for Admission Nos. 1–24, IBM's Interrogatory No. 13 is narrowly focused on factual details regarding VSi's investigation into the Accused Products, rather than inquiring into VSi's communications with its counsel. (*Id.*) The particular details requested by IBM's Interrogatory No. 13, such as "an identification of every person or entity that … participated in, or provided information concerning the investigation" and "a description of all tests performed on any of the products … identified in VSi's infringement contentions …," seek facts regarding VSi's pre-filing investigation that do not require VSi to divulge attorney-client

communications. (*Id.*) Indeed, VSi's refusal to even identify those persons who "participated in, or provided information concerning the investigation" fails to demonstrate that any attorney-client communications are even at issue — VSi's burden to show. *See, e.g.*, *Weil v. Investment/Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("[T]he burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it." (citations omitted)).

### 2. IBM's Interrogatory No. 13 Does Not Seek Documents or Tangible Things Protected by the Work-Product Doctrine.

As discussed above, the work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3); *see also Nobles*, 422 U.S. at 239. IBM's Interrogatory No. 13, however, seeks neither documents or tangible things, nor the opinions or conclusions of VSi's counsel. As discussed above, each detail requested by IBM concerns either the identity of individuals who participated in VSi's pre-filing investigation or the facts regarding the actions VSi took as part of that investigation. No part of IBM's interrogatory seeks VSi to reveal the substance of any opinions formed or materials prepared during the course of its testing that reflect those opinions. At most, IBM's interrogatory request asks VSi to provide "a description of the results and/or conclusions of the *investigation*," but in so doing seeks no more than VSi's ultimate pre-suit conclusions regarding whether its complaint against IBM was justified. Such details do not delve into the "mental processes" of VSi's counsel. *See, e.g.*, *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("[T]he work product doctrine … does not protect facts concerning the creation of work product or facts within the work product. Thus, work product does not preclude inquiry into the mere fact of an investigation." (citation omitted)). Nor does VSi's response or objection provide any basis to conclude otherwise.

### D. To the Extent Any of the Requested Information Is Privileged or Work-Product, VSi Has Waived Such Protection.

#### 1. VSi Voluntarily Put Its Pre-Filing Investigation at Issue in Its Submissions to the Court.

Even if VSi's objections regarding privilege or work-product were valid, VSi's recent Motion for Leave to Amend places the details of its pre-filing investigation squarely at issue. (*See, e.g.*, D.I.

181 at 4–8.) In its attempt to show good cause to amend its infringement contentions and correct its admitted errors regarding the operation of the Accused Products, VSi now *concedes* that it neither acquired nor tested relevant Accused Products before filing either its complaint or serving its infringement contentions — exactly the type of information sought by IBM in, at least, its Requests for Admission Nos. 1–24 and Interrogatory No. 13:

- "VSi *began reviewing and installing* the IBM software immediately [*after* obtaining copies of Accused Products from IBM through discovery] to sharpen and focus its infringement theories."  (D. I. 174 at 7);
- "*After* the deposition … VSi … spent hundreds of hours *installing and testing the accused InfoSphere Warehouse software*. … During the course of its investigation, VSi confirmed that InfoSphere Warehouse could not write-back to the Cubing Services multi-dimensional data source, as stated in VSi's Infringement Contentions…."  (D.I. 181 at 8.)

VSi's filing, moreover, makes repeated claims regarding its pre-filing investigations, including details clearly responsive to IBM's outstanding discovery:

- "Despite VSi's best efforts, [alleged detail regarding the Accused Products] *was not discovered* – *nor could it have been discovered* – prior to VSi's serving its highly-detailed preliminary infringement contentions."  (D.I. 181 at 4);
- "VSi *spent hundreds of man-hours* reviewing [IBM] documentation, as well as other publicly-available information, *in preparing VSi's Infringement Contentions.*"  (D.I. 181 at 5);
- "Importantly, at the time VSi filed its Infringement Contentions, VSi *could not have known* that this manual was misleading and that the accused InfoSphere Warehouse product could not, in fact, write-back to certain multi-dimensional data sources such as IBM's Cubing Services…."  (D.I. 181 at 6.)

VSi's statements and theories thus put directly at issue both the steps it took during its pre-filing investigations and those it apparently did *not* take and purports not to have been able to take. Accordingly, to the extent that any information sought by IBM's discovery were privileged or work

product, VSi has waived that protection.

### 2. VSi Cannot Strategically Use Privilege and Work-Product Protections as Both Sword and Shield.

VSi's reliance on its pre-filing investigations in its filing to this Court is inconsistent with its blanket objections of privilege and work-product protection in response to IBM's outstanding discovery requests. *See, e.g.*, *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used both as a sword and a shield." (citation omitted)). Even were VSi's objections regarding privilege valid — which they are not — VSi cannot continue to hide behind those protections while selectively disclosing those details that it views as helpful to its case. *See, e.g.*, *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340–41 (9th Cir. 1996) ("[Waiver's] principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications as to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable."). Similarly, even if VSi were correct in asserting that details regarding its pre-filing investigations could be protected as work product, VSi's strategic choice to disclose details of those investigations waived VSi's right to withhold potentially less-favorable factual details related to its investigations. *See, e.g.*, *In re Echostar*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (holding that voluntary disclosure waives work-product protection to "non-opinion" work product concerning the same subject matter). Consequently, IBM is entitled to substantive responses to its Requests for Admission Nos. 1–24 and Interrogatory No. 13, regardless of the prior merit of VSi's privilege and work-product objections.

## IV. CONCLUSION

For the foregoing reasons, IBM respectfully requests that its Motion to Compel be granted in its entirety and VSi be ordered to produce information responsive to IBM's Requests for Admission Nos 1–24 and Interrogatory No. 13.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  December 21, 2010 | *International Business Machines Corporation* |
| 3 | | By:     /s/ Martin A. Galese         |

Robert A. Appleby (admitted *pro hac vice*)
robert.appleby@kirkland.com
Jon T. Hohenthaner (admitted *pro hac vice*)
jon.hohenthaner@kirkland.com
Joseph A. Loy (admitted *pro hac vice*)
joseph.loy@kirkland.com
Andrew G. Heinz (admitted *pro hac vice*)
andrew.heinz@kirkland.com
Martin A. Galese (admitted *pro hac vice*)
martin.galese@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Harper Batts (SBN 242603)
harper.batts@kirkland.com
KIRKLAND & ELLIS LLP
950 Page Mill Road
P.O. Box 51827
Palo Alto, CA  94304
Telephone:  (650) 859-7000
Facsimile:  (650) 859-7500


John M. Desmarais (admitted *pro hac vice*)
jdesmarais@desmarisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone:  (212) 351-3400
Facsimile:  (212) 351-3401

Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES CORPORATION

# CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2010, a true and correct copy of the foregoing IBM'S MOTION TO COMPEL DISCOVERY INTO VSI'S PRE-FILING INVESTIGATION was served by email delivery on counsel for the parties as follows:

*Counsel for Plaintiff VSi:*

Brooke A. M. Taylor (btaylor@susmangodfrey.com)
Daniel J. Walker (dwalker@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000

Stephen E. Morrissey (smorrissey@susmangodfrey.com)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California  90067-6029

Michael F. Heim (mheim@hpcllp.com)
Leslie V. Payne (lpayne@hpcllp.com)
Eric J. Enger (eenger@hpcllp.com)
HEIM, PAYNE & CHORUSH, L.L.P.
600 Travis Street, Suite 6710
Houston, TX 77002

   /s/ Martin A. Galese
Martin A. Galese (admitted *pro hac vice*)
martin.galese@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900