Robert A. Appleby (admitted *pro hac vice*)
robert.appleby@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

Harper Batts (SBN 242603)
harper.batts@kirkland.com
KIRKLAND & ELLIS LLP
950 Page Mill Road
P.O. Box 51827
Palo Alto, CA  94304
Telephone:  (650) 859-7000
Facsimile:  (650) 859-7500

John M. Desmarais (admitted *pro hac vice*)
jdesmarais@desmarisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone:  (212) 351-3400
Facsimile:  (212) 351-3401

Attorneys for Defendant
*International Business Machines Corporation*

*Additional counsel listed on signature page*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| VASUDEVAN SOFTWARE, INC., <br><br> Plaintiff, <br><br> v. <br><br> INTERNATIONAL BUSINESS MACHINES CORPORATION and ORACLE CORPORATION, <br><br> Defendants. | Case No. 5:09-CV-05897-RS (HRL) <br><br> **IBM'S OPPOSITION TO VSI'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS** <br><br> Date:  January 13, 2011 <br> Time:  1:30 p.m. <br> Place:  San Francisco, Courtroom #3, <br>       17th Floor |

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................1

APPLICABLE LAW ...........................................................................................3

ARGUMENT .......................................................................................................4

I.   Because The Bases For The Proposed Amendment Could Have — And
     Should Have — Been Known To VSi Before It Served Its Original
     Contentions, VSi Cannot Demonstrate The Required Good Cause To Secure
     Leave to Amend. ......................................................................................4

     A.   VSi's Lack Of Diligence Is Demonstrated By Its Failure To Rely On
          Any Nonpublic Information..........................................................7

     B.   VSi's Lack of Diligence Continued Long After It Discovered That Its
          Original Contentions Were Untenable.........................................8

     C.   The Caselaw On Which VSi Relies Does Not Support Leave To
          Amend Here. ..............................................................................10

II.  Although Given VSi's Lack Of Diligence The Court Need Not Consider
     Prejudice, The Prejudice That Would Be Created By The Proposed
     Amendment Also Compels Denial Of VSi's Motion.............................12

     A.   VSi's New Theories Would Expand The Scope Of The Asserted
          Claims And Raise New Claim Construction And Validity Issues.............13

          1.   VSi's New Theories Raise New Claim-Construction Issues. ........13

          2.   VSi's New Theories Raise New Validity Issues. ...........................14

     B.   VSi's Proposed Amendments Do Not Satisfy The Local Patent Rules. ....15

     C.   IBM's Preparation And Analysis Will Be Wasted....................17

     D.   A Continuance Would Not Remedy The Prejudice....................17

CONCLUSION ..................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*,
No. C05-03117 MJJ, 2007 WL 2221029 (N.D. Cal. Jul. 30, 2007) ............................................ 3, 9

*Acer, Inc. v. Tech. Props. Ltd.*,
Nos. 5:08-cv-00877, 882, 5398, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010).................... passim

*Alt v. Medtronic, Inc.*,
No. 2:04-CV-370, 2005 WL 6259386 (E.D. Tex. Oct. 28, 2005) ................................................ 18

*Altair Eng'g, Inc. v. LEDdynamics, Inc.*,
No. 07-CV-13150, 2009 WL 799184 (E.D. Mich. Mar. 24, 2009) .................................................. 9

*Antonious v. Spalding & Evenflo Cos., Inc.*,
275 F.3d 1066 (Fed. Cir. 2002)........................................................................................................ 5

*Atmel Corp. v. Info. Storage Devices, Inc.*,
No. C 95-1987 FMS, 1998 WL 775115 (N.D. Cal. Nov. 5, 1998) ................................................ 11

*Berger v. Rossignol Ski Co., Inc.*,
No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006)....................................... 6, 18

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*,
No. C 06-04206 WHA, 2007 WL 716131 (N.D. Cal. Mar. 2, 2007)............................................. 11

*Connectel, LLC v. Cisco Sys., Inc.*,
391 F. Supp. 2d 526 (E.D. Tex. 2005) ........................................................................................ 4, 6

*Coopervision, Inc. v. Ciba Vision Corp.*,
480 F. Supp. 2d 884 (E.D. Tex. 2007) ......................................................................................... 11

*Google, Inc. v. Netlist, Inc.*,
Nos. C 08-4144 SBA, C 09-5718 SBA, 2010 WL 1838693 (N.D. Cal. May 5, 2010) ................. 10

*Int'l Dev., LLC v. Richmond*,
No. 09-2495, 2010 WL 3946714 (D. N.J. Oct. 4, 2010)................................................................ 11

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992)........................................................................................................... 4

*Judin v. United States*,
110 F.3d 780 (Fed. Cir. 1997) ......................................................................................................... 1

*Mass. Inst. of Tech. v. Abacus Software*,
No. 5:01-CV-344-DF-CMC, 2004 WL 5586072 (E.D. Tex. Sept. 10, 2004) ................................. 8

*Network Appliance Inc. v. Sun Microsystems Inc.*,
Nos. C-07-06053, 05488 EDL, 2009 WL 2761924 (N.D. Cal. Aug. 31, 2009) ........................... 12

*Network Caching Tech., LLC v. Novell, Inc.*,
No. C-01-2079-VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) .......................................... 5

*Nike, Inc. v. Adidas Am. Inc.*,
    479 F. Supp. 2d 664 (E.D. Tex. 2007) ........................................................................... 4

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ........................................................................... passim

*Peters v. Active Mfg. Co.*,
    129 U.S. 530 (1889) ........................................................................................... 14

*Raytheon Co. v. Indigo Sys. Corp.*,
    No. 4:07-cv-109, 2008 WL 5378047 (E.D. Tex. Dec. 23, 2008).......................... 4, 16, 17

*Realtime Data, LLC v. Packeteer, Inc.*,
    No. 6:08cv144, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009).............................. 10, 17

*Seiko Epson Corp. v. Coretronic Corp.*,
    No. C 06-06946 MHP, 2008 WL 2563383 (N.D. Cal. June 23, 2008).......................... 12

*Softvault Sys., Inc. v. Microsoft Corp.*,
    No. 2:06-CV-16, 2007 WL 1342554 (E.D. Tex. May 4, 2007) ................................ 5, 8

*Sybase, Inc. v. Vertica Sys., Inc.*,
    No. 6:08 CV 24, 2009 WL 4574690 (E.D. Tex. Nov. 30, 2009) ............................ 14, 17

*Tessera, Inc. v. Advanced Micro Devices, Inc.*,
    No. C 05-4063 CW, 2007 WL 1288199 (N.D. Cal. Apr. 30, 2007) ............................ 11

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
    208 F.3d 981 (Fed. Cir. 2000) ........................................................................ 1, 5, 7

**Rules**

Patent L.R. 3-1 ................................................................................................ 3, 12, 15

Patent L.R. 3-6 ...................................................................................................... 2, 3

**EXHIBIT LIST**

*Exhibit A:*     Excerpts of AlphaBlox Product Manual, Ex. 7 to the Dep. of J. Poelman.

*Exhibit B:*     Current Pricing of Exemplary Versions of the Accused IBM Products.

*Exhibit C:*     Historical Pricing of the Accused IBM Products Referenced in Ex. B.


*– Emphasis Added Unless Otherwise Noted –*

**INTRODUCTION**

Before filing suit for patent infringement, a patentee must "at a bare minimum, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement." *View Eng'g, Inc., v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  This pre-filing analysis requires diligent review of publically-available information and ordinarily requires that the patentee obtain a sample of the accused device and compare that device to the asserted claims.  *See Judin v. United States,* 110 F.3d 780, 784 (Fed. Cir. 1997) ("No adequate explanation was offered for why [plaintiff] failed to obtain, or attempted to obtain, a sample of the accused device . . . so that its actual design and functioning could be compared with the claims of the patent.").  The diligence expected of a patentee is echoed in this Court's requirement for early disclosure of infringement contentions, which "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Acer, Inc., v. Tech. Props. Ltd.,* Nos. 5:08-cv-00877, 882, 5398, 210 WL 3618687, at *4 (N.D. Cal. Sept. 10, 2010).

VSi's infringement contentions, however, do not reflect such diligence.  As VSi concedes, the asserted claims of two of the three patents-in-suit require "the capability for the software to dynamically update the OLAP cube and propagate those cube updates back to the relevant source databases." (VSi Opening Claim Construction Br., D.I. 162 at 6.)  VSi refers to the claim limitations that require this capability as the "write-back elements."   (VSi Mot. for Leave to Am. Its Infringement Contentions; Mem. of Points and Authorities in Supp. of Mot., D.I. 181 at 6.)  VSi was obligated to perform an investigation sufficient to acquire a reasonable basis for believing that IBM products performed these write-back elements.  VSi now reveals, however, that its entire basis for including these two patents in this suit and accusing IBM products of meeting the write-back elements comprised nothing more than a single passage of a single IBM manual.

VSi also now knows that its interpretation of that passage was incorrect and that the functionality that VSi accused of infringing the write-back patents does not in fact infringe.  But VSi should have known this fact before filing suit and before serving its infringement contentions.  As an initial matter, VSi's interpretation of the manual passage is contradicted by the manual itself.  (*See*

Ex. A at 181–82.)  Furthermore, it would have been readily apparent to anyone *who tested the commercially-available accused IBM software*, which was publically available for less than $3,000, that the accused configurations did not perform write back.  Indeed, VSi recently confirmed that these configurations do not infringe by "installing and testing the accused InfoSphere Warehouse software." (D.I. 181 at 8.)  VSi waited, however, over a year and a half after filing suit, months after serving its infringement contentions, and only after being told its original assumption was incorrect to perform that testing.  (*See id.*)

Faced with the fact that the accused IBM product configurations do not infringe the asserted "write-back" claims, VSi now presents an entirely new, more expansive, theory of infringement. Whereas VSi originally contended that updates to an OLAP cube displayed by IBM's Alphablox (a user interface) could pass back through the OLAP cube formed by IBM's Cubing Services to be written-back to disparate source databases, VSi's new theory circumvents Cubing Services altogether in favor of an assertion that Alphablox itself can "write back to various relational data sources while still dynamically updating the OLAP cube." (*See, e.g.*, D.I. 181 at 8.)  This fundamental change is far from a "slight tweak," but amounts rather to an entire overhaul of VSi's write-back infringement theories.  (*See* D.I. 181 at 10–11.)  Indeed, VSi's proposed changes are so significantly different that they raise various new claim-construction and invalidity issues that will need to be addressed by the Court should VSi be allowed to amend its contentions now.

But this Court should not allow VSi to amend its contentions.  VSi asserts that it has "good cause" for its proposed amendments because of its "recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." (*See* D.I. 181 at 4; *see also* Patent L.R. 3-6.)  VSi, however, does not identify any nonpublic information substantiating its new theory.  And the public information VSi does point to was readily available to VSi before it served its original contentions.  In fact, much of VSi's "new" evidence comes from the very same public manual that VSi incorrectly relied on to support its original infringement contentions.  (*See* Ex. A at 181, 184.)  Under this Court's Patent Local Rules, VSi cannot demonstrate the requisite diligence by performing an investigation now that it should have performed a year and a half ago.  And even if VSi could demonstrate that it

"discovered" something that it could not have known through a properly-conducted pre-filing investigation, VSi still waited *more than four months* to file this motion after being told that its original contentions were untenable. During that time the parties completed claim-construction briefing and the Court held a *Markman* hearing. Because carelessness, error, delay, and an utter lack of diligence underlie VSi's motion to amend, the Court should deny it.

## APPLICABLE LAW

Early in a patent-infringement case, this Court's Patent Local Rules require a party claiming patent infringement to serve "Infringement Contentions" in the form of a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1. These are to be binding on the party serving the contentions: under Patent Local Rule 3-6 "[a]mendment of the Infringement Contentions . . . may be made only by order of the Court upon a timely showing of good cause." The rule provides a list of non-exhaustive examples that support a finding of good cause, including the "recent discovery of *nonpublic information* about the Accused Instrumentality *which was not discovered, despite diligent efforts, before the service of the Infringement Contentions*." Patent L.R. 3-6. The good cause inquiry "considers first whether the moving party was diligent in amending its contentions and then whether the non-moving party would suffer prejudice if the motion to amend were granted." *Acer*, 2010 WL 3618687, at *3 (N.D. Cal. Sept. 10, 2010) (citations and internal quotations omitted).

Because the rules were designed to require parties to crystallize their theories early and thereafter adhere to those theories, this Court maintains a restrictive policy regarding amendments to infringement contentions:

> Unlike the liberal policy for amending pleadings, *the philosophy behind amending claim charts is decidedly conservative*, and designed to prevent the "shifting sands" approach to claim construction. The rules were designed to require parties to *crystallize their theories of the case early in the litigation* and to *adhere to those theories once they have been disclosed*.

*Acer*, 2010 WL 3618687, at *4 (citations and internal quotations omitted); *see also Abbott Diabetes Care Inc. v. Roche Diagnostics Corp.*, No. C05-03117 MJJ, 2007 WL 2221029, at *1 (N.D. Cal. Jul. 30, 2007) (same); *accord O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). This restrictive policy exists "to further the goal of full, timely discovery and

provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2008 WL 5378047, at *1 (E.D. Tex. Dec. 23, 2008) (citations and internal quotations omitted).[1] Consistent with these requirements, "[t]he Patent Rules demonstrate high expectations as to plaintiffs' preparedness before bringing suit . . . . Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit and must explain with great detail their theories of infringement." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527–28 (E.D. Tex. 2005) (citations omitted).

In evaluating whether the moving party acted diligently, the Court must consider both "whether the party was diligent in discovering the basis for the proposed amendment" and "how quickly the party moves to amend its contentions once a new theory of infringement comes to light." *Acer*, 2010 WL 3618687, at *3 (citations and internal quotations omitted). "The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence." *O2 Micro Int'l*, 467 F.3d at 1366 (citations omitted); *see also, e.g., Acer*, 2010 WL 3618687, at *4. If the Court concludes that the moving party has not been diligent the inquiry ends — there is no need to consider prejudice to the non-moving party. *See, e.g., O2 Micro Int'l*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that [Plaintiff] did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to [Defendant]."); *Acer*, 2010 WL 3618687, at *5 ("Because [the patentee] has not demonstrated diligence, 'the inquiry should end.'") (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992), and citing *O2 Micro Int'l*, 467 F.3d at 1366–68).

## ARGUMENT

**I.    Because The Bases For The Proposed Amendment Could Have — And Should Have — Been Known To VSi Before It Served Its Original Contentions, VSi Cannot Demonstrate The Required Good Cause To Secure Leave to Amend.**

VSi was obligated to conduct a reasonable pre-filing investigation before both filing its

---

[1] Caselaw from the Eastern District of Texas is relevant here because "[t]he Local Patent Rules of the Eastern District of Texas were modeled on the rules of the Northern District of California." *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 n.2 (E.D. Tex. 2007).

complaint against IBM and serving its infringement contentions. *See, e.g.*, *View Eng'g, Inc.*, 208 F.3d at 986 ("Performing a pre-filing assessment of the basis of each infringement claim is … extremely important."); *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079-VRW, 2003 WL 21699799, at *7 (N.D. Cal. Mar. 21, 2003) ("[Plaintiff]'s failure to examine the accused products directly is both preposterous and unjustified.  Accordingly, the court concludes that its pre-filing investigation was unreasonable and does not comport with the requirements of FRCP 11.").  But whatever investigation VSi may have done was apparently insufficient to even reveal basic facts regarding the functionality of the accused products.  Thus, VSi is now forced to admit that the accused products do not operate as VSi has claimed in its infringement contentions.  (*See, e.g.*, D.I. 181 at 8 ("During the course of its investigation, VSi confirmed that InfoSphere Warehouse could **not write-back** to the Cubing Services multi-dimensional data source, as stated in VSi's Infringement Contentions….").)

In its defense, VSi argues that it could not have known without discovery precisely how the accused products operate.  (*See generally* D.I. 181.)  But that assertion is false and, in fact, refuted by VSi's own belated investigation.   VSi could have purchased exemplar versions of the accused products, which were publically available for less than $3,000 (*see* Exs. B, C), to test its theory, and would have immediately discovered that the accused functionality does not perform the write-back element.  *See, e.g.*, *Antonious v. Spalding & Evenflo Cos., Inc.*, 275 F.3d 1066, 1074 (Fed. Cir. 2002) (noting that in patent cases the plaintiff must at the very least make a comparison of "the accused device with the construed patent claims" to satisfy Rule 11).  Indeed, it is through "installing and testing the accused InfoSphere Warehouse software" that ". . .VSi confirmed that InfoSphere Warehouse could not write-back to . . . Cubing Services" (D.I. 181 at 8) and that therefore VSi's original theory was untenable.  VSi waited to do this testing, however, until a year and a half after filing suit, months after serving its contentions, and only after an IBM witness testified that VSi's assumptions were incorrect.  This fact alone negates any claim of diligence sufficient to demonstrate good cause.  *See Softvault Sys., Inc. v. Microsoft Corp.*, No. 2:06-CV-16, 2007 WL 1342554, at *1 (E.D. Tex. May 4, 2007) ("[Plaintiff] cannot establish diligence in light of its failure to fully analyze this information.") (citation omitted).

1    VSi could also have carefully read IBM's technical documentation, rather than rely on

2    incomplete passages from those documents, as the IBM documentation that VSi originally relied on

3    **specifically contradicts** VSi's original theories regarding the operation of the accused products.  (*See*

4    Ex. A at 182) (explaining that the "write-back" methods only work with third party products.)  VSi

5    could not assert that the IBM documentation is inaccurate and was instead forced to argue that the

6    documents are "misleading."  (D.I. 181 at 6.)  At most, then, VSi establishes that it made a mistake

7    in interpreting IBM's detailed and accurate publically-available documentation.  *Berger v. Rossignol*

8    *Ski Co., Inc.*, No. C 05-02523 CRB, 2006 WL 1095914, at *5 (N.D. Cal. Apr. 25, 2006) ("Even if

9    plaintiffs were found to have promptly sought leave to amend they still fail to satisfy this district's

10   good cause standard as they have not provided any justification for the amendment, other than mere

11   error.").  But "[c]arelessness or mere errors [] are insufficient to establish good cause."  *Id.*

12   The remaining justifications VSi provides for its failure to conduct an adequate pre-filing

13   investigation also lack merit.  VSi argues that the accused IBM product suites are complicated and

14   include many components, and that IBM's publically-available documentation is so "voluminous"

15   that VSi should be excused from having to fully analyze it before filing suit.  (*See* D.I. 181 at 5, 8.)

16   But neither the complexity of IBM's accused software products nor the detailed nature of IBM's

17   public product documentation excuses VSi from conducting an adequate and thorough pre-filing

18   investigation into the operation of the products.  *See, e.g.*, *Connectel*, 391 F. Supp. 2d at 528

19   ("Plaintiffs are expected to rigorously analyze all publicly available information before bringing suit

20   and must explain with great detail their theories of infringement.").  If anything, the substantial

21   amount of public and detailed IBM product documentation undermines VSi's suggestion that it

22   required post-filing discovery from IBM to substantiate its infringement theories.  In any event,

23   VSi's infringement theories do not implicate the vast majority of the product features or components

24   included in the accused product suites.  VSi would accordingly have no reason to analyze that

25   information.

26   Given that all of the information upon which VSi now relies in support of its proposed

27   amended infringement contentions **was available** before VSi commenced this lawsuit, VSi should

28   have discovered it well before dragging IBM into court and compelling IBM to defend against

admittedly erroneous infringement contentions.  *See, e.g.*, *View Eng'g*, 208 F.3d at 986 ("Performing a pre-filing assessment of the basis of each infringement claim is … extremely important.").  VSi's motion to amend should therefore be denied.

>     A.    **VSi's Lack Of Diligence Is Demonstrated By Its Failure To Rely On Any Nonpublic Information.**

VSi's lack of diligence is demonstrated by its failure to cite to or rely on ***any nonpublic information*** in support of either its withdrawal of its original contentions or its proposed amended contentions.  (*See* D.I. 181; D.I. 181 at Ex. A.)  To the contrary, all of the information VSi points to could have — and should have — been known to VSi before it served its original contentions and, indeed, before it filed this suit.  On this basis alone, VSi's motion should be denied.

The only allegedly nonpublic information VSi identifies in its brief is an excerpt from the deposition testimony of IBM witness John Poelman.[2]  (*See* D.I. 181 at 7; D.I. 181-20 ("Ex. O").)  But nothing in the cited testimony is nonpublic  — Mr. Poelman merely testified that Cubing Services lacks any write-back capability, a fact apparent from the publically-available product itself.  That VSi did not bother to verify that the accused IBM product configurations were capable of the required "write-back" operations before filing suit does not make such information nonpublic.  (*See* D.I. 181 at 6–7.)

Moreover, the testimony at issue relates directly to a publicly-available manual that VSi itself identified in its original infringement contentions.  When asked about the feature of Alphablox described in the cited manual, Mr. Poelman explained what should have been obvious to anyone who read the manual.  Although VSi contends that it interpreted the manual's statement that Alphablox supports "[w]riting back to multidimensional sources" to include Cubing Services (D.I. 181 at 6), Mr. Poelman noted that VSi's interpretation is ***directly contradicted on the very next page***

---

[2] VSi misleadingly states that it "deposed four technical witnesses about the functionality of the Accused Products," and that these depositions constitute "further evidence of VSi's diligence." (D.I. 181 at 7 & n.4.)  But VSi cites to only the deposition of John Poelman as providing a basis for its new infringement theories.  Incredibly, of the remaining three witnesses, Glenn Rasmussen, was deposed regarding IBM's Cognos product line — which is not accused of infringing either patent at issue here — and Matt Beldin of Oracle, is not even an IBM employee.  VSi conspicuously fails to explain how any of these depositions could possibly be relevant here.

of the manual:

> Q. What are the cube servers that Alphablox can communicate with that do support write back?
>
> A. Hyperion Essbase and Microsoft Analysis Services third-party products.
>
> Q. And those are the only two cube servers that work with Alphablox that can support write back?
>
> A. That's right. Those are the only two that I believe are supported **based on the statement on Page 182** related to the write back-related methods where it says, "These write back methods are designed for applications that write back to an Essbase or Microsoft Analysis Services 2000 data source. Some of the methods are specific to Essbase only."

(D.I. 181-20 ("Ex. O") at 5 (referencing IBM's Ex. A at 182 (explaining that the write-back methods only work with third-party products)).) That Mr. Poelman pointed out this passage in a public IBM manual during his deposition does not make the information nonpublic. *See, e.g., Mass. Inst. of Tech. v. Abacus Software*, No. 5:01-CV-344-DF-CMC, 2004 WL 5586072, at *3, *6 (E.D. Tex. Sept. 10, 2004) ("The [] information 'discovered' by Plaintiffs at the [] deposition has been widely disseminated on the internet, and was available to Plaintiffs had they conducted a reasonable investigation" thus "Plaintiffs have not set forth good cause for their lengthy delay in seeking to amend their infringement contentions.")

In sum, the information on which VSi relies is not "new information" that it acquired during discovery — it is information that was publicly available before VSi filed suit. Accordingly, VSi "cannot establish diligence in light of its failure to fully analyze this information." *Softvault Sys.*, 2007 WL 1342554, at *1. VSi's motion to amend its infringement contentions should therefore be denied.

**B.     VSi's Lack of Diligence Continued Long After It Discovered That Its Original Contentions Were Untenable.**

To prevail on its motion, VSi must not only establish that it acted diligently in preparing its original contentions, it must also show that it acted diligently in moving to amend its contentions after allegedly new information was discovered. *See, e.g., O2 Micro Int'l*, 467 F.3d at 1363 ("The district judges in the Northern District of California . . . have understood the good cause requirement in the local patent rules to require a showing that the party seeking leave to amend acted with

diligence in promptly moving to amend when new evidence is revealed in discovery.")  VSi has not — and cannot — make that showing here.  As discussed above, VSi bases its motion on information it allegedly learned "for the first time" during the deposition of IBM witness John Poelman.  (D.I. 181 at 7.)   But, setting aside the fact that the information "learned" was already public, Mr. Poelman's deposition took place on ***July 16, 2010***; yet VSi did not move to amend its contentions until December 1, 2010, a ***delay of more than four months***.  (*See* D.I. 181; *see also* D.I. 181-20 ("Ex. O") at 2.)  That delay alone demonstrates VSi's lack of diligence.  Indeed, courts have found a lack of diligence based on similar periods of delay:

> Even accepting [Plaintiff]'s contention that it could not know how the [accused product] operated until the [] deposition in late February 2003 and focusing on the period after this deposition, as the district court did, [Plaintiff] ***waited almost three months***, until May 23, to serve its proposed amended contentions and two more weeks to formally move to amend.

*O2 Micro Int'l*, 467 F.3d at 1367-68; *see also Acer*, 2010 WL 3618687, at *4–*5 (finding that a party was not diligent when it "did not seek to amend its infringement contentions until [] ***three months*** after it began its review and three weeks after that review was completed.").

VSi's delay is particularly inexcusable here given the events that occurred during that period of delay.  VSi inexplicably waited to move to amend its infringement contentions until ***after*** the parties filed all of their claim-construction briefs, and ***after*** the Court heard oral argument at the October 20, 2010, *Markman* hearing.  VSi's unreasonable and avoidable delay thus deprived IBM of any opportunity to account for VSi's new infringement theories during claim construction.  *See, e.g., Altair Eng'g, Inc. v. LEDdynamics, Inc.*, No. 07-CV-13150, 2009 WL 799184, at *7 (E.D. Mich. Mar. 24, 2009) ("[Defendant's witness] was deposed … nearly two months before [Plaintiff] filed its responsive *Markman* brief [] and nearly three months before the *Markman* hearing took place. Given this timing, [the witness]'s deposition testimony cannot excuse the lateness of [Plaintiff]'s motion to amend [its infringement contentions].");  *Abbott Diabetes Care*, 2007 WL 2221029, at *1 ("As [Plaintiff] was well aware, this five-month period encompassed events that would have been significantly affected by new infringement allegations, including claim construction and setting of the current pretrial schedule.  Accordingly, [Plaintiff] fails to present sufficient evidence of diligence to support a showing of good cause sufficient to justify leave to amend its infringement

contentions.").

VSi's reference to IBM's document production, moreover, as purportedly justifying its delay is meritless as *VSi has not identified a single document from IBM's production* in either its original or its amended contentions that serve as a basis for its infringement theories.  And even if IBM's document production were relevant to VSi's motion — which it is not — courts have flatly rejected such an excuse:

> Plaintiff repeatedly notes the enormity of Defendants' production as a basis for the late request and as evidence of Plaintiff's diligence. While the Court is sympathetic to the time and effort required to sift through such voluminous records, *Plaintiff cannot use the complexity of this case as an excuse for its lack of diligence or initial preparation*. Plaintiff affirmatively took on the task of managing and prosecuting [this] lawsuit . . . .  Furthermore, Plaintiff's characterization of the lawsuit cuts both ways. With a lawsuit of great complexity, *it is all the more imperative to avoid springing new claims on Defendants at a late stage*.

*Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08cv144, 2009 WL 2590101, at *6 (E.D. Tex. Aug. 18, 2009).  VSi, therefore, cannot blame IBM's document production for its lack of diligence.

Finally, VSi's focus on when it learned of particular information is unavailing because the proper inquiry focuses not on when VSi learned the information but rather when it *could have* learned of the information:

> [Patentee] contends that it acted diligently with respect to its proposed amendments because it only recently discovered non-public information to support such contentions through Rule 30(b)(6) depositions taken in February and March 2010. This argument misses the point.  The critical issue is *not when* [Patentee] discovered this information, *but rather, whether they could have discovered it earlier* had it acted with the requisite diligence.  *The answer is "yes."*

*Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, C 09-5718 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010).  As previously discussed, had VSi carefully read IBM's public product manuals or obtained and analyzed the commercially-available accused products when it was obligated to — before filing suit and before serving infringement contentions — it would have learned that its contentions were untenable.  VSi's lack of diligence before filing suit or serving infringement contentions, and lack of diligence even in seeking to amend its flawed infringement contentions, should not be excused and VSi's motion should be denied.

## C.    The Caselaw On Which VSi Relies Does Not Support Leave To Amend Here.

None of the cases on which VSi relies favor granting of leave to amend here.  In *Comcast*

*Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 WL 716131, at *2 (N.D. Cal. Mar. 2, 2007), the court emphasized that "[v]ery little discovery ha[d] occurred." *Id*. at *1. But this case has been proceeding for 18 months and VSi's own motion admits that there has already been extensive discovery. (*See, e.g.*, D.I. 181 at 6–9.) Moreover, the *Comcast* court based its decision to permit amended infringement contentions in large part on the fact that the case was a declaratory-judgment action:

> Unlike the normal patent-infringement action, **the patent owner here did not commence this action**. Instead, the patent owner was sued for a declaratory judgment that the patent claims, if valid, were not infringed. At the outset of such litigation, we cannot expect that patent owner to have done as much infringement-analysis homework as we would expect of a patent owner who initiates and thus chooses the timing of the litigation.

*Id*. at *1. This fact alone completely distinguishes *Comcast* from the current situation, where VSi is "a patent owner who initiate[d] and thus [chose] the timing of the litigation." *Id*.

In *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. C 05-4063 CW, 2007 WL 1288199 (N.D. Cal. Apr. 30, 2007), furthermore, the "Defendants s[ought] to amend their invalidity contentions **well in ad[vance] of . . . briefing on claim construction**," and the court distinguished that case from another denying leave to amend where "the defendants sought to amend their contentions **after claim construction** had been completed and 'well over one year after preliminary infringement contentions were served.'" *Id*. at *2 (referencing *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987 FMS, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)). Here, of course, claim-construction briefing and the *Markman* hearing both occurred, and VSi's infringement contentions were served more than eight months ago. *See also Coopervision, Inc. v. Ciba Vision Corp.*, 480 F. Supp. 2d 884, 890 (E.D. Tex. 2007) ("Unlike many cases in which leave to amend contentions is denied, this request was made months before the claim construction hearing . . . ."); *Int'l Dev., LLC v. Richmond*, No. 09-2495, 2010 WL 3946714, at *4 (D. N.J. Oct. 4, 2010) ("Although *Markman* briefs have been submitted, no hearing has been scheduled and, therefore, the parties' *Markman* briefs may still be revised.").

The remaining two cases cited by VSi are similarly unavailing. In *Network Appliance Inc. v. Sun Microsystems Inc.*, Nos. C-07-06053, 05488 EDL, 2009 WL 2761924 (N.D. Cal. Aug. 31,

2009), the court actually ***denied leave*** to make many of the proposed amendments despite the actual discovery of non-public information and a showing of diligence — neither of which VSi has shown here — and permitted limited amendment only "to include a new group of products released . . . after [Plaintiff] served its FICs" because "[Plaintiff] could not have included these products when it initially served its FICs" and "[Defendant] does not claim that it would suffer any prejudice from amendment, and it would not need additional discovery." *Id.* at *2-*3. Again, none of that is true here. Finally, in *Seiko Epson Corp. v. Coretronic Corp.*, No. C 06-06946 MHP, 2008 WL 2563383, (N.D. Cal. June 23, 2008), the court permitted the addition of new product model numbers where "Defendants refuse to publicly disclose these model numbers due to competitive reasons," and Plaintiff "could not have known of these products until [Defendant]'s disclosure." *Id.* at *2, *4. VSi does not identify any such nonpublic information here. Accordingly, VSi's motion must fail.

## II. Although Given VSi's Lack Of Diligence The Court Need Not Consider Prejudice, The Prejudice That Would Be Created By The Proposed Amendment Also Compels Denial Of VSi's Motion.

VSi cannot establish that it acted diligently, so its motion should be denied — no need exists to consider prejudice to IBM. *See, e.g., O2 Micro Int'l*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that [Plaintiff] did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to [Defendant].");  *Acer*, 2010 WL 3618687, at *5 ("Because [the patentee] has not demonstrated diligence, 'the inquiry should end.'") (citations omitted). Even were the Court to consider this element, however, prejudice created by VSi's amendment also compels denial of VSi's motion. Here, no question exists that IBM will be prejudiced if VSi is allowed to proceed with its proposed amended infringement contentions because VSi's new theories would not only cause IBM to have squandered considerable sums in legal fees and costs, but also force IBM, at the very least, to grapple with entirely new claim construction and invalidity issues. Moreover, if allowed, VSi's proposed infringement contentions would force IBM to defend against vague contentions that fail to meet detailed disclosure requirements of this Court's Local Patent Rules. *See, e.g.* P.L. Rule 3-1(c). VSi's motion should thus be denied for this additional reason.

A.    **VSi's New Theories Would Expand The Scope Of The Asserted Claims And Raise New Claim Construction And Validity Issues.**

VSi's claim that it seeks "simply to slightly tweak its theories as to only three claim elements" (D.I. 181 at 9) belies both the substantial expansion in claim scope implied by VSi's new theories and conceals the critical role the "tweaked" claim elements played in VSi's efforts to defend the novelty of its patents over prior art during reexamination.  (*See, e.g.*, Reexamination File History for U.S. Patent No. 6,877,006, D.I. 167-3 ("Ex. B-2") at 54.)   Contrary to VSi's unsupported position, VSi's proposed amendments would require substantial additional claim-construction briefing to address VSi's new, more expansive, theories and would correspondingly expand the scope of invalidating prior art beyond that already identified by IBM.

1.    **VSi's New Theories Raise New Claim-Construction Issues.**

VSi's original infringement theories require, among other things, a specific flow of information:  first, data from disparate databases is used by IBM's Cubing Services to construct an OLAP cube; next, IBM's Alphablox displays the OLAP cube; and finally Alphablox accepts user changes to specific data from the OLAP cube and "writes" the changes back, through Cubing Services, to dynamically update the affected databases.  (*See, e.g.*, D.I. 181-13 ("Ex. H") at 25 ("The Cubing Services Component of the Accused Software constructs the OLAP cube directly from the data stored on the disparate database[s]"); D.I. 181-13 ("Ex. H") at 27 ("The OLAP cubes are displayed using the GUI provided by … IBM's Alphablox."); D.I. 181-13 ("Ex. H") at 30 ("The Accused Software uses the GUI to accept a user update of specific data displayed from the dynamically assembled OLAP cube…"); D.I. 181 at 8.)  VSi's initial theory — that updates to the OLAP cube go back through Cubing Services to be written-back to the source database — comports with VSi's own description of the invention of the patents-in-suit:  "Another important feature of the VSi invention is the capability for the software to dynamically update the OLAP cube and ***propagate those cube updates*** back to the relevant source databases….  The ability to update data ***through the cube*** to the original disparate source databases makes maintaining the integrity of the data in the source databases quicker and easier."  (VSi's Claim Construction Br., D.I. 162 at 3–4.)  VSi's new theories, by contrast, short-circuit Cubing Services — as VSi now recognizes that it cannot operate

as required — and instead base alleged infringement on VSi's assertion that Alphablox can itself "write back to various relational data sources while still dynamically updating the OLAP cube," without propagating cube updates back through Cubing Services to the relevant source databases. (*See, e.g.*, D.I. 181 at 8.)

VSi's new position thus raises, at a minimum, new claim-construction issues with regard to whether the claims are broad enough to encompass VSi's "short-circuit" arrangement, specifically with respect to at least the terms "dynamically" (for which IBM agreed to a construction without knowledge of VSi's new theories) and "updating" (which was not originally identified as needing to be construed). (*See, e.g.*, '006 Patent, D.I. 1-1 ("Ex. 1") at claim 1(g).) Simply stated, if VSi's proposed amendments are allowed, either the claim-construction process must be repeated so that IBM could address these issues or IBM will be deprived of the opportunity to take VSi's new theories into account in IBM's defenses. Either scenario would impose significant prejudice on IBM. To place that undue burden on IBM would be especially egregious here where VSi withheld its new infringement theories throughout the entire period of claim-construction briefing, and revealed them only after the *Markman* hearing was completed. *See Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08 CV 24, 2009 WL 4574690, at *2 (E.D. Tex. Nov. 30, 2009) ("Allowing [Plaintiff] to amend its infringement contentions at this late stage of litigation would require additional claim construction briefing and a supplemental *Markman* hearing. . . . [and] would significantly prejudice [Defendant].").

## 2. VSi's New Theories Raise New Validity Issues.

Similarly, VSi's proposed amended contentions raise additional validity issues which IBM has had no opportunity to analyze or address in its invalidity contentions. *See, e.g.*, *Peters v. Active Mfg. Co.*, 129 U.S. 530, 537 (1889) ("That which infringes, if later, would anticipate, if earlier."). In particular, VSi has already admitted that all of the claim elements in the asserted independent claims were known in the prior art, save for the "write-back" elements. (S*ee, e.g.*, D.I. 167-2 ("Ex. B-1") at 12–15.) VSi's proposed amended contentions, however, now apparently assert that these "write-back" elements can, in fact, be met through the use of "standard SQL statements for updating relational data sources." (D.I. 181-2 ("Ex. A1") at 33.) As VSi's own evidence shows, such

technology is standard across the database industry, and it is ***well-known prior art***.  (*See, e.g.*, U.S. Patent No. 5,918,232, D.I. 167-1 ("Ex. A") at 19 ("In order to use relational databases, a Structured Query Language (SQL) was developed to interrogate and process data.  SQL can be used as a full-blown programming language, or SQL commands can be embedded within a programming language to interface with a database.")  VSi's broader position with respect to these "write-back" elements is thus highly relevant to validity, and IBM will be severely prejudiced if it is not permitted to amend its invalidity contentions in light of VSi's new infringement theories.

## B.   VSi's Proposed Amendments Do Not Satisfy The Local Patent Rules.

Local Patent Rule 3-1(c) requires, among other things, that VSi provide "[a] chart identifying specifically where each limitation of each accused claim is found within each Accused Instrumentality…."   VSi's proposed amended infringement contentions, however, do not meet this requirement.  Specifically, as mentioned above, VSi no longer asserts that AlphaBlox writes back to Cubing Services, or that in turn Cubing Services writes back to the original disparate source databases, but rather now asserts that Alphablox can "write back to various relational data sources while still dynamically updating the OLAP cube."  (*See, e.g.*, D.I. 181 at 8.)  VSi's proposed amendments, however, fail entirely to identify ***how anyone could do this*** with the accused IBM software products, much less what elements or configuration of the accused IBM products would meet, for example, the claim element of "dynamically on demand updating the assembled OLAP cube with the specific data."  (*See, e.g.*, D.I. 181-2 ("Ex. A1") at 36–38; '006 Patent, D.I. 1-1 ("Ex. 1") at claim 1(g).)  For example, VSi still contends that the "assembling with a computer an OLAP cube" element is met by "[t]he Cubing Services component."  (*see, e.g.*, D.I. 181-2 ("Ex. A1") at 27; '006 Patent, D.I. 1-1 ("Ex. 1") at claim 1(c)).  VSi concedes that it previously believed that the "dynamically on demand updating the assembled OLAP cube" was met by AlphaBlox writing back to Cubing Servies, which VSi now knows cannot happen.  VSi's new contentions simply delete that assertion.  Not only do the new contentions include no reference to Cubing Services for that element, they include no assertion of "specifically where [that] limitation … is found within [the] Accused Instrumentalities."  P.L. Rule 3-1(c).  Indeed, VSi's failure to identify "specifically where each limitation of each accused claim is found within each Accused Instrumentality" is confirmed by the

fact that VSi cites to the **exact same passages** from various AlphaBlox documentation in support of this and another, ***entirely different claim element***.  (*Compare, e.g.*, D.I. 181-2 ("Ex. A1") at 70–71 *with* D.I. 181-2 ("Ex. A1") at 74–75; '861 Patent, D.I. 139-2 ("Ex. B") at claim 3(d), (f).)

Rather than provide IBM with "adequate notice and information with which to litigate [the] case[]," *see, e.g., Raytheon Co.*, 2008 WL 5378047, at *1, VSi seeks this Court's permission to insert screenshots, apparently of its own creation, which it purports to be "AlphaBlox Screenshots showing the OLAP is updated with the specific data update."  (D.I. 181-2 ("Ex. A1") at 38.)  VSi's proposed amended contentions, however, ***provide no detail whatsoever regarding these screenshots***, including how the OLAP cube is "dynamically on demand update[d]."  VSi's contentions fail even to disclose the products, IBM or otherwise, involved in the operation depicted in its screenshots, much less what infringing combinations or configurations VSi now seeks to allege infringe.  Moreover, VSi's apparent new infringement theory — that the write-back elements can be met with "standard SQL statements for updating relational data sources" (D.I. 181-2 ("Ex. A1") at 33) — draws into VSi's proposed infringement contentions a technology which "can be used as a full-blown programming language."  (*See, e.g.*, '232 patent, D.I. 167-1 ("Ex. A") at 19.)  It is simply not clear from VSi's screenshots, especially in light of VSi's citation to AlphaBlox's support for "a full-blown programming language," whether the functionality purportedly depicted in VSi's screenshots was included in the accused IBM products or was programmed by VSi.

VSi also fails to cite to any of IBM's source code in support of these new theories in its proposed amended infringement contentions.[3]  Nor has VSi provided any detail about its new theory in its brief.  (*See, e.g.*, D.I. 181 at 8 (providing a bare assertion of infringement without identifying where each limitation of each accused claim is found within each Accused Instrumentality).)  The proposed amendments thus obfuscate rather than illuminate VSi's new theory of infringement.  Accordingly, should the Court permit VSi to amend its infringement contentions now, IBM would

---

[3] Indeed, as described in detail in IBM's recently-filed motion to compel discovery regarding IBM's source code (D.I. 183), VSi has refused outright to provide source code citations in support of its infringement contentions prior to expert discovery and is thus thwarting IBM's ability to adequately prepare one of its core defenses in this case: noninfringement of the patents-in-suit.

be forced to defend against vague infringement contentions that do not comport with the explicit requirements of this Court's Local Rules.  This imposition would cause IBM to suffer further prejudice and provides yet another basis to deny VSi's motion.

### C.      IBM's Preparation And Analysis Will Be Wasted.

Because VSi's amendments, contrary to the local rules, would change its theories long after they should have been disclosed, IBM will suffer prejudice in the form of a "do over," which courts have recognized as prejudicial:

> Despite [Plaintiff]'s protestations to the contrary, its supplemental PICs do alter some of its infringement theories.  **_Were the court to allow [Plaintiff] to supplement its PICs in the manner proposed, the entire case, which is now some twenty-one months old, would essentially start over from scratch_.**  The Defendants would need to expend a king's ransom in assessing the new PICs, reformulating its defense strategy and participating in reopened fact discovery were the court to allow [Plaintiff] to submit its supplemental PICs.  They would also be prejudiced by the inevitable delay that would ensue.

_Raytheon_, 2008 WL 5378047, at *2.  Indeed, IBM has spent nearly eight months preparing its case based on VSi's existing contentions, and much of that work will be negated if VSi is permitted to change its theory at this late stage.  Courts have denied leave to amend on this very basis:

> Although Plaintiff argues that new claims will not be added to the litigation, it fails to recognize the severe prejudice each Defendant will suffer as a result of changing the asserted claims against that particular Defendant, given the late stage of the proceedings. . . .  The Defendants have justifiably relied on Plaintiff's Original Infringement Contentions as a framework for proceeding through discovery and preparing to file dispositive motions and for trial. At the time the instant Motion was filed, the parties had already proceeded through nine months of discovery.  A _Markman_ hearing was held in April.  **_This lawsuit has reached a stage where changing the framework for this litigation would be significantly prejudicial to Defendants._**  Moreover, the substantial changes that Plaintiff proposes would exponentially increase such prejudice.

_Realtime Data_, 2009 WL 2590101, at *8.  Thus, the prejudice to IBM would be both significant and concrete were the Court to permit VSi to amend its infringement contentions now.

### D.      A Continuance Would Not Remedy The Prejudice.

A continuance would not prevent the harm caused to IBM by VSi's proposed amendments, especially considering VSi's lengthy period of delay in filing the instant motion, which needlessly encompassed both the claim-construction briefing and the _Markman_ hearing. _Sybase_, 2009 WL 4574690, at *2 ("The final factor is the availability of a continuance to cure any potential prejudice. Considering that the claim construction briefing and the Markman hearing have already concluded, a

1    continuance is not likely to remedy any potential prejudice that [Defendant] might suffer if

2    infringement contentions concerning the [] Patent were added to the case."); *see also Alt v.*

3    *Medtronic, Inc.*, No. 2:04-CV-370, 2005 WL 6259386, at *3 (E.D. Tex. Oct. 28, 2005)

4    ("Considering that the claim construction briefing and the *Markman* Hearing have already

5    concluded, a continuance is not likely to remedy any potential prejudice that [Defendant] might

6    suffer.").  VSi's motion should therefore be denied.

7                                          **CONCLUSION**

8           "The Patent Local Rules are designed to prevent exactly what [Plaintiff is] attempting to do

9    here: alter [its] infringement theory after it became apparent [it was] were going to lose."  *Berger*,

10   2006 WL 1095914, at *6.  IBM thus respectfully requests that the Court deny VSi's motion in its

11   entirety for the reasons stated above.

12

13          Dated:  December 23, 2010                   *International Business Machines Corporation*

14                                          By:  ___/s/ Martin A. Galese_____

15                                          Robert A. Appleby (admitted *pro hac vice*)
                                            robert.appleby@kirkland.com
16                                          Jon T. Hohenthaner (admitted *pro hac vice*)
                                            jon.hohenthaner@kirkland.com
17                                          Joseph A. Loy (admitted *pro hac vice*)
                                            joseph.loy@kirkland.com
18                                          Andrew G. Heinz (admitted *pro hac vice*)
                                            andrew.heinz@kirkland.com
19                                          Martin A. Galese (admitted *pro hac vice*)
                                            martin.galese@kirkland.com
20                                          KIRKLAND & ELLIS LLP
                                            601 Lexington Avenue
21                                          New York, NY 10022-4675
                                            Telephone:  (212) 446-4800
22                                          Facsimile:  (212) 446-4900

23                                          Harper Batts (SBN 242603)
                                            harper.batts@kirkland.com
24                                          KIRKLAND & ELLIS LLP
                                            950 Page Mill Road
25                                          P.O. Box 51827
                                            Palo Alto, CA  94304
26                                          Telephone:  (650) 859-7000
                                            Facsimile:  (650) 859-7500
27

28                                          John M. Desmarais (admitted *pro hac vice*)
                                            jdesmarais@desmaraisllp.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone:  (212) 351-3400
Facsimile:  (212) 351-3401

Attorneys for Defendant
INTERNATIONAL BUSINESS MACHINES
CORPORATION

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on this 23rd day of December, 2010, a true and correct copy of the

3

foregoing IBM'S OPPOSITION TO VSI'S MOTION FOR LEAVE TO AMEND ITS

4

INFRINGEMENT CONTENTIONS was served by email delivery on counsel for the parties as

5

follows:

6

*Counsel for Plaintiff VSi:*                    *Counsel for Defendant Oracle Corporation:*

7

8

Brooke A. M. Taylor                              Dave Nelson (admitted *pro hac vice*)
(btaylor@susmangodfrey.com)                      davenelson@quinnemanuel.com

9

Daniel J. Walker                                 Jennifer Bauer (admitted pro hac vice)
(dwalker@susmangodfrey.com)                      jenniferbauer@quinnemanuel.com

10

SUSMAN GODFREY L.L.P.                            Ellen Padilla (admitted pro hac vice)
1201 Third Avenue, Suite 3800                    ellenpadilla@quinnemanuel.com

11

Seattle, Washington 98101-3000                   QUINN EMANUEL URQUHART &
                                                 SULLIVAN

12

                                                 500 W. Madison, Suite 2450
                                                 Chicago, IL 60661

13

14

Stephen E. Morrissey                             Sean Pak (CA Bar No. 219032)
(smorrissey@susmangodfrey.com)                   seanpak@quinnemanuel.com

15

SUSMAN GODFREY L.L.P.                            QUINN EMANUEL URQUHART &
1901 Avenue of the Stars, Suite 950              SULLIVAN

16

Los Angeles, California 90067-6029               50 California Street, 22nd Floor
                                                 San Francisco, California 94111

17

18

Michael F. Heim (mheim@hpcllp.com)               Matthew Sarboraria (CA Bar No. 211600)

19

Leslie V. Payne (lpayne@hpcllp.com)              ORACLE CORPORATION
Eric J. Enger (eenger@hpcllp.com)                500 Oracle Parkway, 7th Floor

20

HEIM, PAYNE & CHORUSH, L.L.P.                    Redwood Shores, CA 94065
600 Travis Street, Suite 6710                    matthew.sarboraria@oracle.com

21

Houston, TX 77002

22

23

   /s/ Martin A. Galese
Martin A. Galese (admitted *pro hac vice*)

24

martin.galese@kirkland.com
KIRKLAND & ELLIS LLP

25

601 Lexington Avenue
New York, NY 10022-4675

26

Telephone: (212) 446-4800
Facsimile: (212) 446-4900

27

28