1    Brooke A. M. Taylor, WSBA 33190 (Admitted PHV)
     btaylor@susmangodfrey.com
2    Daniel J. Walker, WSBA 38876 (Admitted PHV)
     dwalker@susmangodfrey.com
3    SUSMAN GODFREY L.L.P.
     1201 Third Avenue, Suite 3800
4    Seattle, Washington 98101-3000
     Telephone:  (206) 516-3880
5    Facsimile:  (206) 516-3883

6
     Stephen E. Morrissey, CA Bar 187865
7    smorrissey@susmangodfrey.com
     SUSMAN GODFREY L.L.P.
8    1901 Avenue of the Stars, Suite 950
     Los Angeles, California  90067-6029
9    Telephone:  (310) 789-3100
     Facsimile:  (310) 789-3150
10
     Attorneys for Plaintiff
11

12                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
13                      **SAN JOSE DIVISION**

14   VASUDEVAN SOFTWARE, INC.,              | Case No. 5:09-CV-05897 (RS-HRL)

15              Plaintiff,

16   vs.                                     | **VSI'S OPPOSITION TO IBM'S MOTION
                                             | TO COMPEL DISCOVERY INTO VSI'S
17   INTERNATIONAL BUSINESS MACHINES         | PRE-FILING INVESTIGATION**
     CORPORATION and ORACLE
18   CORPORATION                             | Date: February 1, 2011
                                             | Time: 10:00 a.m.
19              Defendants.                  | Place: San Jose, Courtroom #2

20                                           | The Honorable Magistrate Judge Howard R.
                                             | Lloyd
21

22

23

24

25

26

27

28

VSI'S OPPOSITION TO IBM'S MOTION TO                      Case No. 5:09-CV-05897 RS
COMPLEL DISCOVERY INTO VSI'S PRE-FILING                  11378-v1/1024.0010
INVESTIGATION

## Table of Contents

I.      INTRODUCTION.................................................................................................1

II.     BACKGROUND FACTS ......................................................................................2

III.    ARGUMENT .........................................................................................................3

A.      The Privileged Information Sought By IBM Is Neither Relevant
        Nor Reasonably Calculated to Lead to the Discovery of Admissible
        Evidence ....................................................................................................3

        1.      Rule 11 Discovery is Disfavored And, To The Extent Permitted,
                Should Be Deferred Until The Case Has Been Decided On The Merits 3

        2.      The Federal Circuit's *Q-Pharma* Opinion Controls and Does Not
                Require Testing ...............................................................................5

        3.      VSi's Detailed Infringement Contentions Are Sufficient to Bar A
                Rule 11 Inquiry................................................................................8

B.      The Information Sought By IBM is Protected By The Attorney-Client
        And Work Product Privileges, Which Have Not Been Waived .......................10

        1.      The Information Sought By IBM Is Protected By The Attorney-Client
                Privilege..........................................................................................10

        2.      The Information Sought By IBM is Attorney Work Product...............12

        3.      VSi Has Not Waived Privilege Or Work Product Immunity................14

IV.     CONCLUSION.....................................................................................................16

1

**Table of Authorities**

2

**Cases**

3   *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) ................................................... 15

4   *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127 (9th Cir. 1992) ...................................... 10, 11

5   *Ferruza v. MTI Tech.*, No. SACV 00-0745, 2002 WL 32344347
    (C.D. Cal. June 13, 2002) ................................................................................. 13

6
7   *Graceway Pharm., LLC v. Perrigo Co.*, No. 2:10-cv-00937, 2010 WL 2521026 (D.N.J. June 10,
    2010 ........................................................................................................ 6, 10

8   *Hickman v. Taylor*, 329 U.S. 495 (1947) ................................................................. 13, 14

9   *In re Echostar*, 448 F.3d 1294 (Fed. Cir. 2006) ......................................................... 14

10  *In re Keegan Mgmt. Co. Secs. Litig.*, 78 F.3d 431 (9th Cir. 1996) ...................................... 5

11  *Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177 (7th Cir. 1985) ............. 4

12  *Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328 (Fed. Cir. 2007) ............................... 8

13  *Judin v. United States*, 110 F.3d 780 (Fed. Cir. 1997) ............................................... 5, 7, 10

14  *Miller v. Ventro Corp.*, No. C01-01287, 2004 WL 868202 (N.D. Cal. April 21, 2004) .............. 13

15  *Network Caching Technology, LLC v. Novell*, No. C-01-2079-VRW, 2003 WL 21699799
    (N.D. Cal. March 21, 2003) ............................................................................. 5, 10

16
17  *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418, 2005 WL
    1459555 (N.D. Cal. June 21, 2005) ..................................................................... 13

18  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2004) .................... 5, 6, 7, 9, 10

19  *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) ....................................... 13

20  *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985) ........................................................... 13

21  *Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741-SI, 2004 WL 2480707
    (N.D. Cal. Aug. 10, 2004) ............................................................................. 10, 12

22
23  *United States v. Deloitte*, 610 F.3d 129 (D.C. Cir. 2010) ............................................ 13

    *United States v. District Council of N.Y. City*, No. 90 CIV. 5722, 1992 WL 208284 (S.D.N.Y.
24  Aug. 18, 1992) .......................................................................................... 14

25  *United States v. Landon*, No. C 06-3734, 2006 WL 3377894 (N.D. Cal. Oct. 30, 2006) ............. 11

26  *United States v. Nobles*, 422 U.S. 225 (1975) ........................................................ 13

27  *Upjohn Co. v. United States*, 449 U.S. 383 (1981) ..................................................... 11

28

*View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000)....... 5, 7, 10

**Rules**

Fed. R. Civ. P. 11 Advisory Committee Notes ........................................................................... 4, 5

VSI'S OPPOSITION TO IBM'S MOTION TO
COMPEL DISCOVERY INTO VSI'S PRE-FILING
INVESTIGATION

Case No. 5:09-CV-05897 RS

11378-v1/1024.0010

## I.     INTRODUCTION

IBM is improperly attempting to transform this patent infringement case into a fishing expedition on VSi's pre-filing investigation.  To be clear, IBM is directly infringing three of VSi's patents.  According to IBM's motion to compel, the only issue to which the requested information is relevant is a determination of whether VSi complied with Rule 11 when it filed suit against IBM.  But as is clear from VSi's infringement contentions – which total more than 368 pages and contain extensive citation to supporting evidence, including IBM's own extensive product literature – VSi has more than satisfied the low-bar standard of Rule 11.

Additionally, IBM does not say how the information it seeks will help it support a future Rule 11 motion.  (Indeed, IBM would be unwise to file such a meritless motion.)  IBM misrepresents the relevant legal standards when it suggests that VSi was legally obligated to purchase and test IBM's software before filing suit.  As is discussed below, VSi was not legally required to purchase IBM's incredibly expensive software and test it before filing suit, particularly given that VSi's infringement contentions contained so much evidentiary support from other publicly available information.  Moreover, IBM's assertion that VSi's motion to amend is evidence of its failure to investigate is absurd.  Of the 109 limitations among 54 claims in the three asserted patents, VSi proposes making small revisions to just three limitations in only four claims.  By any truthful measure, these are minor adjustments to VSi's infringement theories, only made necessary by the fact that IBM's product literature is misleading.

IBM's motion is also procedurally flawed because the advisory notes to Rule 11 state that IBM should seek leave of court before conducting Rule 11 discovery.  IBM has never sought such leave nor does it have any basis to do so given VSi's detailed infringement contentions.  The discovery IBM seeks is not relevant and necessarily attempts to elicit attorney-client privileged

information and work product – a violation of the Federal Rules.  VSi respectfully asks the Court to put a halt to this nonsense, so the parties can focus on the real issues (namely, IBM's infringement of VSi's patents) and stop wasting resources on IBM's side show.

## II.     BACKGROUND FACTS

On April 22, 2010, pursuant to Patent Rule 3-1, VSi served IBM with detailed preliminary infringement contention ("PIC") charts that are replete with citations to publicly available product manuals and technical documentation concerning the accused products.  As discussed in VSi's pending Motion For Leave To Amend Its Infringement Contentions, the PICs cite specific portions of the InfoSphere Warehouse manuals as describing the claimed "write-back elements" of U.S. Patent Nos. 6,877,006 ("the '006 Patent") and 7,720,861 ("the '861 Patent").  (Docket No. 181 (incorporated by reference), at 6.)  After receiving executable versions of the accused software, deposition testimony, and millions of pages of non-public documents from IBM during discovery, VSi learned that the cited portions of the manuals were misleading and the accused InfoSphere Warehouse product did not operate in the specific manner described in the cited portions of the manuals.  (*Id.* at 7-8.)  VSi promptly moved to amend its original PICs to correct the allegations pertaining to the "write-back elements."  (*Id.* at 8-9.)  These amendments are very minor and do not change the essence of this case – the same patents, same patent claims and same products are still at issue.  IBM has opposed that pending motion.

Four months after receiving VSi's original infringement contentions, IBM served requests for admission and an interrogatory seeking intrusive discovery into privileged details of VSi's pre-filing investigation activities.  Specifically, IBM requested that VSi "describe in detail" the pre-filing investigation undertaken by VSi, "including without limitation":

> (1)     An identification of every person or entity that supervised, assisted, participated in, or provided information concerning the investigation;

(2)  A description of all analyses of any products and/or components identified in VSi's infringement contentions;

(3)  An identification of all IBM products and/or components purchased or otherwise obtained by VSi;

(4)  A description of all tests performed on any of the products and/or components identified in VSi's infringement contentions or any other IBM products and/or components;

(5)  A description of every instance where VSi applied the claim to an accused device;

(6)  An identification of all documents and things reviewed or relied upon in connection with the investigation;

(7)  A description of the results and/or conclusions of the investigation.

(IBM Br. Ex. B, at Interrog. No. 13.)  IBM also requested that VSi identify whether it purchased, obtained, or operated each of the accused products before filing the complaint (IBM Br. Ex. C, at Nos. 1, 2, 5, 6, 9, 10, 13, 14, 17, 18, 21, 22) or before serving its infringement contentions (*id.* at Nos. 3, 4, 7, 8, 11, 12, 15, 16, 19, 20, 23, 24).   VSi objected to these discovery requests on multiple grounds, including (1) that the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence; and (2) that the information sought is protected by the attorney-client privilege and/or work-product doctrine. (*Id.*)

## III.   ARGUMENT

### A.   The Privileged Information Sought By IBM Is Neither Relevant Nor Reasonably Calculated to Lead to the Discovery of Admissible Evidence

#### 1.   Rule 11 Discovery is Disfavored And, To The Extent Permitted, Should Be Deferred Until The Case Has Been Decided On The Merits

The sole basis for IBM's purported need for the contested discovery is "to ascertain VSi's compliance with Rule 11 of the Federal Rules of Civil Procedure and relevant Federal Circuit case law." (IBM Br. at 4.)  Even if the requested information were relevant and discoverable – which, as discussed in detail below, it is not – Rule 11 discovery is subject to heightened scrutiny. Cognizant of the potential for gamesmanship and harassment, the Advisory Committee Notes expressly encourage courts to limit the use of Rule 11 as a basis for discovery:

To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. **Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances**.

Fed. R. Civ. P. 11 Advisory Committee Notes to the 1983 Amendment (emphasis added); s*ee also Indianapolis Colts v. Mayor & City Council of Baltimore*, 775 F.2d 177, 182-83 (7th Cir. 1985) (denying discovery into plaintiff's "motivation in filing the interpleader claim"). The Advisory Committee Notes to the 1993 Amendments add that "[Rule 11 motions] should not be employed as a discovery device . . . or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine."

The Advisory Committee's concern is well founded – this is a classic case of a party attempting to engage in "satellite litigation" that amounts to a tremendous waste of time and resources. If IBM's flawed view of the law were correct, every document that is governed by Rule 11 could, upon the slightest challenge raised by an opponent, subject a party to discovery relating to the details of its investigative process and research. The opportunity for abuse would be rampant if this were really the law. At a very minimum, such discovery should not be permitted unless and until the proponent has set forth a plausible basis for a Rule 11 violation, which, as demonstrated below, IBM has not and cannot.

Additionally, notwithstanding the clear language of the advisory notes, IBM has never sought "leave of the court" to conduct Rule 11 discovery. Such leave – if and when requested – should be denied for the many reasons set forth herein. But even if the Court permits Rule 11 discovery, it should defer the discovery until the final resolution of the litigation. *See* Fed. R. Civ. P. 11 Advisory Committee Notes to the 1993 Amendment ("[T]he court may defer its ruling . . . until final resolution of the case in order to avoid immediate conflicts of interest **and to reduce the disruption created if a disclosure of attorney-client communications is needed to**

**determine whether a violation occurred** or to identify the person responsible for the violation.")

(emphasis added); *see also In re Keegan Mgmt. Co. Secs. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996)

(requiring a finding that the suit was "baseless" before Rule 11 sanctions may be imposed);

*Network Caching Technology, LLC v. Novell*, No. C-01-2079-VRW, 2003 WL 21699799, at \*7-8

(N.D. Cal. March 21, 2003) (denying Rule 11 motion because the suit had not yet been shown to

be baseless). Discovery is ongoing and there has been no *Markman* ruling, no expert disclosures,

and no dispositive motions. We are far from any adjudication on the merits. Before such an

adjudication, IBM should not be allowed to create further disruptions that are clearly intended to

shift the focus from the real issues and drive up the costs of litigation for VSi.

### 2. The Federal Circuit's *Q-Pharma* Opinion Controls and Does Not Require Testing

IBM contends that a pre-filing investigation is legally inadequate under Rule 11 unless the

patentee acquires and tests the accused product. IBM cites *View Engineering, Inc. v. Robotic

Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000), and *Judin v. United States*, 110 F.3d 780

(Fed. Cir. 1997), for this proposition. This argument is meritless in light of Federal Circuit

authority that was issued after—and that expressly distinguishes—the cases cited by IBM.

The Rule 11 standard "is one of reasonableness under the circumstances." Fed. R. Civ. P.

11 Advisory Committee Notes to the 1983 Amendment. In the context of a patent suit, the

Federal Circuit held in *Q-Pharma* that a patentee satisfies its Rule 11 obligations by performing

an infringement analysis, which "can simply consist of a good faith, informed comparison of the

claims of a patent against the accused subject matter." *Q-Pharma, Inc. v. Andrew Jergens Co.*,

360 F.3d 1295, 1300-02 (Fed. Cir. 2004); *see also View Eng'g*, 208 F.3d at 986 ("The presence of

an infringement analysis plays the key role in determining the reasonableness of the pre-filing

inquiry made in a patent infringement case under Rule 11.").

Contrary to IBM's repeated assertions, a reasonable infringement analysis does not require the patentee to acquire and test the accused product before filing suit. *See Q-Pharma*, 360 F.3d at 1301-02 (rejecting defendant's argument that Rule 11 required plaintiff to perform chemical testing on the accused product). The gravamen of IBM's legal argument – that "the law requires" "testing before filing suit" (IBM Br. at 2) – is, therefore, erroneous.

Despite the fact that the Federal Circuit's *Q-Pharma* opinion cites and distinguishes *View Engineering* and *Judin*, IBM failed to cite it to this Court.[1] In that case, Q-Pharma accused Jergens of infringing its patent by selling a product known as "Curel Age Defying Therapeutic Moisturizing Lotion with Coenzyme $Q_{10}$." *Q-Pharma*, 360 F.3d at 1297. Q-Pharma's patent claimed a certain therapeutic composition containing a "therapeutically effective amount of Coenzyme $Q_{10}$." *Id.* Notwithstanding the product name and labeling, Jergens' lotion in fact contained a negligible quantity of Coenzyme $Q_{10}$. *Id.* at 1298. Jergens asserted that Q-Pharma's pre-filing investigation was inadequate under Rule 11 because, among other reasons, Q-Pharma failed to perform "inexpensive chemical tests" to determine the Coenzyme $Q_{10}$ content before filing suit. *Id.* at 1302. The Federal Circuit rejected Jergens' argument, holding:

> Because Q-Pharma obtained a sample of the accused product,[2] reviewed Jergens'

---

[1] The argument rejected by the Federal Circuit in *Q-Pharma* is strikingly similar to that made by IBM in the present motion. *Compare* IBM Br. at 2 (citing *View Engineering* and *Judin* in support of the argument that VSi violated Rule 11 because it "did not perform its testing before filing suit as the law requires"), *with Q-Pharma*, 360 F.3d at 1301-02 (rejecting defendant's reliance on *View Engineering* and *Judin* for the proposition that plaintiff violated Rule 11 because it did not perform chemical tests on the accused product before filing suit). When KeyCited on Westlaw, both *View Engineering* and *Judin* identify the Federal Circuit's *Q-Pharma* opinion as a "Negative Citing Reference." Indeed, even one of the district court cases cited by IBM mentions *Q-Pharma* and recognizes that a patentee's pre-filing obligations can be satisfied without acquiring and testing the accused product. *See Graceway Pharm., LLC v. Perrigo Co.*, No. 2:10-cv-00937, 2010 WL 2521026, at *4 (D.N.J. June 10, 2010) ("The touchstone of a pre-suit investigation would appear to be reasonable inquiry in the circumstances, **not necessarily testing the actual alleged infringing product**.") (emphasis added).

[2] Any suggestion by IBM that the Federal Circuit's reference to "obtaining a sample of the accused product" is a necessary condition to satisfying Rule 11 obligations is meritless. As the remainder of the sentence indicates, the "most important" part of the pre-filing investigation is comparing the claims of the patent with the accused product. Moreover, the opinion discusses the acquisition of the accused product in connection with Q-Pharma's review of the advertising and labeling on the bottle. 360 F.3d at 1302. Nothing in the opinion suggests the result would have been

statements made in the advertising and labeling of the accused product, and, **most importantly, compared the claims of the patent with the accused product**, we conclude that its claim of infringement was supported by a sufficient factual basis.

*Id.* at 1302-03 (emphasis added).

The *Q-Pharma* panel's rejection of the defendant's reliance on *View Engineering* and *Judin* for the proposition that pre-filing testing of the accused product is required by Rule 11 is equally applicable to the present case.  Specifically, the court noted that in *View Engineering*, "the patentee had not performed any claim construction analysis or an infringement analysis prior to filing its counterclaim for infringement."  *Id.* at 1302.  Indeed, in *View Engineering*, the patentee was unable to explain "exactly why, on an element by element basis, [it] felt [the defendant] infringed the '147 patent."  208 F.3d at 985.  Instead, the patentee's sole basis for filing suit was that its Vice President believed that "'it was likely that [the defendant] would infringe the eight patents, and he had no information which would lead him to a different conclusion.'"  *Id.*  Similarly, the patentee in *Judin* had not obtained or attempted to obtain a sample or even a "technical description" of the accused product.  110 F.3d at 783.  There was simply "no evidence that Judin or his attorneys compared the accused devices with the patent claims prior to filing the complaint."  *Id.* at 780 (quotation marks omitted).  In contrast, as discussed in further detail below, VSi's original infringement contentions demonstrate that it performed a careful, element-by-element analysis of IBM's accused products based on a thorough review of highly detailed technical documents.

Though IBM omitted citation to *Q-Pharma*, it is binding Federal Circuit precedent and its holding should not be ignored.  As *Q-Pharma* makes clear, the Federal Circuit requires only that the patentee undertake a "good faith, informed comparison of the claims of a patent against the accused subject matter," which can be based on any sufficiently detailed information.  *Q-Pharma*,

different if Q-Pharma had relied upon the labeling and advertising on the bottles in its infringement analysis without physically acquiring a sample of the product.

360 F.3d at 1302; *see also Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).

### 3. VSi's Detailed Infringement Contentions Are Sufficient to Bar A Rule 11 Inquiry

In the present case, VSi's PICs detail how IBM's accused products infringe the asserted claims on a limitation-by-limitation basis. For each limitation (including the "write-back limitations") and each accused product, VSi provided narrative and identified specific excerpts taken from thousands of pages of publicly available manuals and technical documentation. For example, as described in detail in VSi's co-pending Opposition to IBM's Motion to Compel Response to IBM's Interrogatory No. 15 Regarding Source Code at pages 3-4 ("VSi's Source Code Opposition" – filed contemporaneously herewith), VSi's PICs cite evidence that explicitly teaches how InfoSphere Warehouse performs the "write-back limitations" of "accepting . . . a dynamic on demand user update" (referred to as "inputting and modifying data" in IBM's literature) and then "dynamically updating" both the "affected constituent database" (referred to as "modifying data in a federated system" in IBM's literature) and the "assembled OLAP cube with the specific data update" (the figure from IBM's literature shows updates to the OLAP cube):

- "Chapter 16. Inputting and modifying data: You can input, or write back, data to data sources using Alphablox." Ex. 2-A to VSi's Source Code Opposition, p. 29.
- "Modifying data in a federated system: With a federated system, you can issue INSERT, UPDATE, and DELETE statements on data source objects using nicknames." *Id.*, p. 30.



- "                              " *Id.*, p. 32.

---

VSi's PICs also include in-depth narrative explanations of how VSi's infringement theories map to IBM's accused products, as discussed at pages 4-5 of VSi's Source Code Opposition.  IBM's only basis for accusing VSi of conducting an inadequate pre-filing investigation under Rule 11 is that during discovery, VSi learned that the InfoSphere Warehouse product did not satisfy the "write-back limitations" in precisely the manner described in VSi's PICs.  Of course, this is exactly what discovery is for – to ascertain the facts.  And as described in further detail in VSi's Motion For Leave To Amend Its Infringement Contentions, the reason for the error in VSi's infringement contentions is that IBM's publicly available documentation was misleading. (Docket No. 181, at 7-8.)  The detailed infringement analysis set forth in VSi's PICs demonstrates that VSi satisfied its obligation to "interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement," notwithstanding the fact that misleading documentation made available by IBM resulted in a minor error that has been corrected.  *See Q-Pharma*, 360 F.3d at 1300-01.

Indeed, VSi's pre-filing investigation was even more reasonable than the investigation in *Q-Pharma* for two reasons.  First, the chemical tests in *Q-Pharma* that the plaintiff chose to forgo were "inexpensive," *id.* at 1302, whereas in this case purchasing the InfoSphere Warehouse product would have been tremendously expensive. To purchase the relevant editions of just one of the versions of the four accused IBM products would cost VSi **more than $200,000**.  Ex. A, Checkout for InfoSphere Warehouse version 9.7.  Second, the manuals and technical documentation relied upon by VSi have proven to be far more reliable than the labels and advertising materials in *Q-Pharma*.  Specifically, the inaccurate advertising materials and labeling were critical to Q-Pharma's case and, when the inaccuracies were discovered, led to Q-Pharma voluntarily dismissing the suit.  *Id.* at 1304.  In contrast, VSi only requests a minor amendment of its infringement contentions to compensate for IBM's misleading manuals.

IBM has identified no persuasive authority for its accusations that VSi failed to satisfy its Rule 11 obligations.[3]   In order to protect VSi from the burden of responding to intrusive discovery that seeks information that is neither relevant nor likely to lead to admissible evidence, IBM's motion to compel should be denied.  Indeed, this is about as far from the "extraordinary circumstances" contemplated by the advisory committee as one can get.

### B.    The Information Sought By IBM is Protected By The Attorney-Client And Work Product Privileges, Which Have Not Been Waived

#### 1.    The Information Sought By IBM Is Protected By The Attorney-Client Privilege

"Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure."  *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).  It is the **disclosure** of the communications that is protected, not simply the communications themselves.  *Id.*  Accordingly, the 9th Circuit has held that "correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege."  *Id.*

IBM's discovery requests cannot be viewed as anything other than an inquiry into the "litigation strategy" and "the specific nature of the services provided" by VSi's counsel.  IBM has asked VSi to describe in detail (1) the identities of everyone who participated in the pre-filing

---

[3] As noted above, *Q-Pharma* expressly distinguished *View Engineering* and *Judin*.  360 F.3d at 1301-02.  *Q-Pharma* was decided on March 8, 2004, and thus supersedes the district court's opinion in *Network Caching Technology, LLC v. Novell*, No. C-01-2079-VRW, 2003 WL 21699799 (N.D. Cal. March 21, 2003), to the extent it suggests that pre-filing testing of the accused product is required.  *Graceway Pharmaceuticals* itself contradicts IBM's view of the law.  2010 WL 2521026, at *4 ("The touchstone of a pre-suit investigation would appear to be reasonable inquiry in the circumstances, not necessarily testing the actual alleged infringing product."  *Teknowledge Corp. v. Akamai Technologies* is readily distinguishable because (1) the defendants had served the plaintiff with a motion for Rule 11 sanctions asserting that the plaintiff did not conduct an adequate pre-filing investigation, and (2) the plaintiff did not object to the deposition questions on relevance grounds.  Defendants' Letter Brief at 2, *Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741-SI (N.D. Cal. June 18, 2004) (Docket No. 105) (Ex. B).  Thus, unlike the present case, plaintiff Teknowledge's pre-filing investigation was legitimately at issue.

investigation, (2) the identity of every IBM product purchased or obtained by VSi, whether or not the product was ultimately accused, (3) VSi's activities relating to the acquisition and testing of the accused products, both before and after the complaint was filed; (4) VSi's methodology in determining whether each IBM product infringed, whether or not the product was ultimately accused,[4] (5) "every instance where VSi applied the claim to an accused device," and (6) all "documents and things reviewed or relied upon in connection with the investigation." (IBM Br. Ex. B at Interrog. No. 13; Ex. C at Nos. 1-24.) Finally, and most inappropriately, IBM's discovery requests go so far as to demand a detailed description of "the results and/or conclusions of the investigation." (*Id.*)

IBM's assertion that it is simply seeking "facts" that fall outside the scope of the attorney client privilege is meritless. The portion of *Upjohn* cited by IBM discusses the inability of a party to immunize relevant facts from discovery simply by communicating them to an attorney. *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981). As subsequent cases demonstrate, activities that may in one sense be characterized as "facts" are protected from disclosure if they reveal the substance of privileged communications by disclosing, for example, the "motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided." *See, e.g.*, *Clarke*, 974 F.2d at 129 (bills, time records, and sources consulted during legal research); *United States v. Landon*, No. C 06-3734, 2006 WL 3377894, at *4 (N.D. Cal. Oct. 30, 2006) (number of meetings held). In the present case, the information sought by IBM would reveal the substance of pre-filing communications between VSi and its counsel concerning the specific nature and strategy relating to the investigation of IBM's infringement and is thus privileged.

---

[4] In point (iv) of IBM's description of Interrogatory No. 13, the text omitted by the second ellipses is "or any other IBM products and/or components." (IBM Br. at 7.) IBM's misleading summary of Interrogatory No. 13 is thus narrower in scope than the full text of the interrogatory set forth in the block quote on the same page. (*Id.*)

Finally, the *Teknowledge* opinion cited by IBM in fact supports VSi's refusal to disclose protected information. As mentioned previously, the defendants had served the plaintiff with a motion for sanctions and thus Rule 11 was legitimately at issue in the case. *Supra*, n.3. Even so, the questions relating to the pre-filing investigation that the court ordered the plaintiff to answer were general questions that "merely affirm that [the plaintiff] met his Rule 11 obligations." *Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741-SI, 2004 WL 2480707, at \*2 (N.D. Cal. Aug. 10, 2004). Specifically, the questions at issue in *Teknowledge* called for general and conclusory answers that did not seek disclosure of the plaintiff's specific activities or methodology:

> (1)  "At that time, did you believe that the bookmark feature infringed the '175 patent?"
> (2)  "Did Teknowledge believe at that time that the bookmark feature infringed '175 patent?"
> (3)  "[A]s part of the investigation, did you attempt to ascertain whether the functionality of Quote.com was the same as the functionality of AOL alerts?"
> (4)  "Did you attempt to ascertain, when you conducted your investigation of Quote.com, whether the functionality described by Quote.com was the same as the functionality that you saw when you investigated AOL alerts, yes or no?"

*Teknowledge Corp. v. Akamai Techs., Inc.*, No. C 02-5741-SI (N.D. Cal. June 18, 2004) (Docket No. 105-2, at 48:21-23, 49:10-11, 162:20-23, 164:14-18) (Ex. C). In contrast, the court upheld the plaintiff's attorney-client privilege objections with respect to the more specific and open-ended questions including, for example, "[d]escribe for me the substance of the notes." *See, e.g.*, *id.* at 96:10. Thus, *Teknowledge* further demonstrates the lack of merit in IBM's attempt to obtain highly detailed information about VSi's pre-filing investigation.

### 2.   The Information Sought By IBM is Attorney Work Product

Much like its approach to attorney-client privilege law, IBM presents the Court with an incorrect and overly narrow interpretation of the attorney work product doctrine. "At its core, the

work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

As set forth in *Hickman v. Taylor*, work product may be either tangible or intangible and is not, as IBM asserts, limited to "documents and tangible things":

> Proper preparation of a client's case demands that [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . . This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, **mental impressions**, **personal beliefs**, and countless other tangible **and intangible** ways-aptly though roughly termed by the Circuit Court of Appeals in this case as the "Work product of the lawyer."

329 U.S. 495, 511 (1947) (emphasis added, citation omitted); *see also United States v. Deloitte LLP*, 610 F.3d 129, 136 (D.C. Cir. 2010) ("*Hickman* provides work-product protection for intangible work product independent of Rule 26(b)(3)."). Pursuant to *Hickman*, it is the **content** of the information sought, and not the particular form in which it is embodied (tangible or intangible), that determines whether work product protection is available.

Courts have regularly found that intangible, so-called "fact" information that reveals attorney mental impressions, such as litigation strategy, falls within the scope of work product protection. *See, e.g.*, *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, No. C01-20418, 2005 WL 1459555, at *4 (N.D. Cal. June 21, 2005) (identities of witnesses interviewed by counsel)[5]; *Ferruza v. MTI Tech.*, No. SACV 00-0745, 2002 WL 32344347, at *3 (C.D. Cal. June 13, 2002) (same); *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1328-29 (8th Cir. 1986) (identity of documents selected, compiled, and reviewed by an attorney); *Sporck v. Peil*,

---

[5] Some cases have held that the identities of witnesses are not protected work product. *See, e.g.*, *Miller v. Ventro Corp.*, No. C01-01287, 2004 WL 868202, at *2 (N.D. Cal. April 21, 2004). In *Plumbers & Pipefitters*, the court declined to follow *Ventro*, explaining that it "ignore[d] the possibility that a discussion of factual matters may reveal counsel's tactical or strategic thoughts." 2005 WL 1459555, at *4 (quotation marks omitted).

759 F.2d 312, 315 (3d Cir. 1985) (same); *United States v. District Council of N.Y. City*, No. 90 CIV. 5722, 1992 WL 208284, at *10 (S.D.N.Y. Aug. 18, 1992) ("How a party, its counsel and agents choose to prepare their case, the efforts they undertake, and the people they interview is not factual information to which an adversary is entitled.").

The information sought by IBM would without a doubt reveal the "mental impressions" of VSi's attorneys during the investigation of how IBM's accused products infringe.  For example, identifying whether and how VSi tested various IBM products (including products that were not accused of infringement), taken alone and in combination with descriptions of other documentary evidence relied upon by VSi, would provide IBM with insight into how VSi believed it would prove its infringement case.  Information about VSi's activities with respect to products that were investigated but not accused would signal VSi's view of the materiality of differences between product lines.  Identifying documents and references that were reviewed or consulted would at a very minimum indicate the areas of the case that VSi viewed as requiring relatively more or less scrutiny.  Finally, a "description of the results and/or conclusions of the investigation" is by its own terms the quintessential intrusion into the legal theories, strategy, mental impressions, and personal beliefs of VSi's attorneys.  *See Hickman*, 329 U.S. at 511.[6]

### 3.    VSi Has Not Waived Privilege Or Work Product Immunity

IBM argues that VSi waived the attorney client privilege and work product immunity by (1) placing the details of its pre-filing investigation at issue by filing its Motion for Leave to Amend Its Infringement Contentions, and (2) disclosing information within that motion.  Neither is correct.

---

[6] The narrow exception for "fact" work product described in Rule 26(b)(3)(A) is inapplicable in this case for two reasons.  First, the information sought by IBM reveals "opinion work product" and thus cannot be discovered via Rule 26(b)(3)(A).  *See In re Echostar*, 448 F.3d 1294, 1302 (Fed. Cir. 2006).  Second, IBM has not, and cannot, show that it has "substantial need" for the materials because it has VSi's detailed infringement contentions, which demonstrate the propriety of VSi's pre-filing investigation.

A "waiver by implication" of either the attorney-client privilege or work product immunity occurs when a party "put[s] the lawyer's performance at issue" by "asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003).  In the context of the present motion, IBM claims that VSi waived the attorney-client privilege and work product immunity with respect to its pre-filing investigation by filing the Motion for Leave to Amend Its Infringement Contentions.  (IBM Br. at 11-12.)  It is fatal to IBM's current position, however, that it has never contended that IBM needs the information sought by the present motion to compel to respond to VSi's Motion for Leave to Amend.  (*See* Docket No. 185.)  Instead, IBM simply asserted that VSi was not diligent because it "waited to [test the InfoSphere Warehouse software] until a year and a half after filing suit."  (*Id.* at 5); *see also* IBM Br. at 2 ("VSi did not perform its testing before the filing as the law requires"), 12 ("VSi now *concedes* that it neither acquired nor tested relevant Accused Products before filing either its complaint or serving its infringement contentions").  VSi has not disputed IBM's point that VSi did not acquire or test the accused software before the suit was filed.  Accordingly, VSi is not using the privilege as a "sword," IBM does not need the requested discovery in order to adequately oppose VSi's motion, and there has been no implied waiver of privilege.  *See Bittaker*, 331 F.3d at 720 ("[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.").

An "express waiver," on the other hand, "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public."  *Id.* at 719.  VSi has not expressly waived the attorney client privilege or work product immunity with respect to its pre-filing investigation because the supposedly privileged information cited by IBM is essentially apparent from the face of VSi's original and amended infringement contentions.  For example, IBM contends that VSi

waived privilege by disclosing that "VSi spent hundreds of man-hours reviewing [IBM] documentation, as well as other publicly-available information, in preparing VSi's Infringement Contentions."   IBM Br. at 12.   But given the voluminous cites to IBM's manuals and other technical information, VSi's original infringement contentions leave no doubt that VSi spent a significant amount of time reviewing IBM's documentation.   Similarly, the proposed amended infringement contentions, which include new screenshots demonstrating a slightly modified infringement theory for the write-back limitation, indicate that VSi used and tested the accused InfoSphere Warehouse software after it served its original infringement contentions.   In short, the three alleged disclosures cited by IBM do not provide significant, undisclosed information that would effect a waiver of the privilege, and such statements hardly justify the intrusive discovery sought by IBM, which seeks all of the details of VSi's pre-suit investigation, including the specific conclusions reached by VSi, its attorneys, and consultants.   Such an intrusion is unjustified.

## IV.   CONCLUSION

Because the information sought by IBM is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, in addition to being protected by the attorney client privilege and work product immunity, VSi respectfully requests that the Court deny IBM's motion to compel.   Alternatively, VSi requests that the Court not permit the requested discovery unless and until IBM prevails on the merits.

1    Dated:  January 11, 2011                    SUSMAN GODFREY LLP

2

3
                                               By: _/s/ Brooke A.M. Taylor (by permission EJE)_
4                                              Brooke A. M. Taylor
                                               Lead Attorney
5                                              WA State Bar No. 33190 (Admitted Pro Hac Vice)
                                               btaylor@susmangodfrey.com
6                                              Daniel J. Walker
                                               WA State Bar No. 38876 (Admitted Pro Hac Vice)
7                                              dwalker@susmangodfrey.com
8                                              SUSMAN GODFREY L.L.P.
                                               1201 Third Avenue, Suite 3800
9                                              Seattle, Washington 98101-3000
                                               (206) 516-3880
10                                             (206) 516-3883 (fax)

11                                             Stephen E. Morrissey
12                                             CA Bar 187865
                                               smorrissey@susmangodfrey.com
13                                             Susman Godfrey LLP
                                               1901 Avenue of the Stars, Ste. 950
14                                             Los Angeles, CA  90067-6029
15                                             (310) 789-3103
                                               (310) 789-3005 (fax)

16
                                               Michael F. Heim
17                                             TX State Bar No. 09380923
                                               mheim@hpclip.com
18                                             Leslie V. Payne
19                                             TX Bar No. 00784736
                                               lpayne@hpcllp.com
20                                             Eric J. Enger
                                               TX Bar No. 24045833
21                                             eenger@hpcllp.com
22                                             HEIM, PAYNE & CHORUSH, LLP
                                               600 Travis Street, Suite 6710
23                                             Houston, Texas 77002-2912
                                               (713) 221-2000
24                                             (713) 221-2021(fax)

25                                             ATTORNEYS FOR PLAINTIFF

26

27

28

VSI'S OPPOSITION TO IBM'S MOTION TO                          Case No. 5:09-CV-05897 RS
COMPEL DISCOVERY INTO VSI'S PRE-FILING
INVESTIGATION                        - 17                    11378-v1/1024.0010

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of January, 2011, a true and correct copy of the foregoing VSI'S OPPOSITION TO IBM'S MOTION TO COMPEL DISCOVERY INTO VSI'S PRE-FILING INVESTIGATION and accompanying exhibits and declaration was served on all counsel of record via the Court's ECF System.

/s/ *Eric J. Enger*
Eric J. Enger