1   Brooke A. M. Taylor, WSBA 33190 (Admitted PHV)
    btaylor@susmangodfrey.com
2   Daniel J. Walker, WSBA 38876 (Admitted PHV)
    dwalker@susmangodfrey.com
3   SUSMAN GODFREY L.L.P.
    1201 Third Avenue, Suite 3800
4   Seattle, Washington 98101-3000
    Telephone: (206) 516-3880
5   Facsimile: (206) 516-3883

6
    Stephen E. Morrissey, CA Bar 187865
7   smorrissey@susmangodfrey.com
    SUSMAN GODFREY L.L.P.
8   1901 Avenue of the Stars, Suite 950
    Los Angeles, California 90067-6029
9   Telephone: (310) 789-3100
    Facsimile: (310) 789-3150
10
    Attorneys for Plaintiff
11

12                      UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF CALIFORNIA
13                            SAN JOSE DIVISION

14  VASUDEVAN SOFTWARE, INC.,            Case No. 5:09-CV-05897 (RS-HRL)

15              Plaintiff,
                                         **VSI'S REPLY IN SUPPORT OF ITS**
16  vs.                                  **MOTION FOR LEAVE TO AMEND ITS**
                                         **INFRINGEMENT CONTENTIONS**
17  INTERNATIONAL BUSINESS MACHINES
    CORPORATION and ORACLE               Date: February 1, 2011
18  CORPORATION                          Time: 10:00 am
                                         Place: San Jose, Courtroom#2
19              Defendants.
                                         The Honorable Magistrate Judge Howard R.
20                                       Lloyd

21

22

23

24

25

26

27  VSI'S REPLY IN SUPPORT OF ITS MOTION                    Case No. 5:09-CV-05897 RS
    FOR LEAVE TO AMEND ITS                                          11361/1024.0010
28  INFRINGEMENT CONTENTIONS

1

TABLE OF CONTENTS

2

I.   VSI HAS BEEN DILIGENT ....................................................................... 2

    A.   VSi Carefully Reviewed IBM's Product Documentation, Which Turned Out
         To Be Misleading And Inaccurate. ......................................................... 2

    B.   Diligence Does Not Require VSi To Purchase and Test IBM's Prohibitively
         Expensive Software Or Software Not Currently Offered Prior To Filing Suit. ............. 4

    C.   VSi Relies on IBM's Non-Public Information ................................................ 5

    D.   VSi Acted Diligently After Discovering IBM's Non-Public Information ...................... 6

II.  IBM HAS NOT BEEN PREJUDICED .......................................................... 9

    A.   VSI's Amendments are Minor ............................................................... 9

    B.   VSI's Amendments Do Not Raise New Claim Construction or Validity Issues ............ 11

    C.   VSi's Amended Infringement Contentions Satisfy The Local Patent Rules ................. 12

    D.   IBM's Preparation And Analysis Is Not Wasted ......................................... 14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

TABLE OF AUTHORITIES

2

**Cases**

3

*Acer, Inc. v. Tech. Props. Ltd.*, 2010 WL 3618687 (N.D. Cal. Sept. 10, 2010) ............................ 7

4

5

*Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-CV-434, 2009 WL 166555 (E.D. Tex. Jan. 16, 2009) ...................................................................................................................... 15

6

*Berger v. Rossignol Ski Co., Inc.*, 2006 WL 1095914 (N.D. Cal. April 25 2006).......................... 1

7

*In re Acacia Media Tech. Corp.*, 2010 WL 2179875  (N.D. Cal. May 25, 2010) ........................ 12

8

*Intamin Ltd. v. Magnetar Tech., Corp.*, 483 F.3d 1328 (Fed. Cir. 2007) ...................................... 4

9

*Judin v. U.S.*, 110 F.3d 780 (Fed. Cir. 1997) ................................................................................ 4

10

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006)................. 3, 7

11

*Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003) ........................................ 12

12

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364 (Fed.Cir.2005) ...................................... 12

13

*Pressure Prods. Medical Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308 (Fed. Cir. 2010)....... 12

14

*Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295 (Fed. Cir. 2002) ...................................... 4

15

*Raytheon Co. v. Indigo Sys. Corp.*, 2008 WL 5378047 (E.D. Tex. Dec. 23, 2008) ..................... 15

16

*Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) ............... 15

17

*SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985)............................... 11

18

*Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317 (Fed. Cir. 2009) ...................................... 11

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IBM is obviously disappointed that VSi has confirmed infringement of InfoSphere Warehouse through its diligent discovery of IBM's non-public information. But that disappointment – which manifests itself in IBM repeatedly overreaching – does not defeat VSi's motion. Instead, the evidence shows that VSi meets the good cause standard for leave to amend under Patent Local Rule 3-6. One reason for VSi's amendment is recently discovered non-public information about InfoSphere Warehouse's "write-back" capabilities that VSi could not reasonably have been expected to ascertain prior to serving its Preliminary Infringement Contentions ("PICs"). A second reason is that IBM's publicly-available information regarding "write-back" is misleading and inaccurate. VSi now seeks to tweak its contentions to include the newly-discovered non-public information.

IBM misrepresents a relevant legal standard when it suggests that VSi was obligated to purchase and test IBM's software before filing suit. As is discussed below, VSi was not legally required to purchase IBM's incredibly expensive software and test it before filing suit, particularly given that VSi's PICs contain so much evidentiary support from other publicly-available information. Moreover, IBM's assertion that VSi's amendment amounts to a "do-over" and "fundamental change" is absurd. Of the 109 limitations among 54 claims in the three asserted patents, VSi proposes making small revisions to just three limitations in only four claims. By any truthful measure, these are minor adjustments, made necessary by the fact that IBM's product literature is misleading. The fact is that the only thing that has changed in this case is IBM has one less non-infringement position under the amendment.

Patent Local Rule 3-6 provides the Court great discretion in deciding whether VSi has demonstrated the "good cause" necessary to amend its PICs. *Berger v. Rossignol Ski Co., Inc.*, 2006 WL 1095914 at *2 (N.D. Cal. April 25 2006). VSi's showing of good cause falls squarely within one of the non-exhaustive examples specifically provided by the Rule (*i.e.*, example (c)

VSI'S REPLY IN SUPPORT OF ITS MOTION
FOR LEAVE TO AMEND ITS
INFRINGEMENT CONTENTIONS

Case No. 5:09-CV-05897 RS
11361/1024.0010

1

1  pertaining to recent discovery of nonpublic information).  Patent L.R. 3-6.  The early procedural

2  posture of the case also militates in favor of the amendment.   Additionally, IBM's feigned

3  prejudice can be easily cured, and in any event, pales in comparison to VSi's (and the Court's)

4  injury if VSi is forced to assert these infringement theories against IBM in a subsequent lawsuit.

5  **I.      VSI HAS BEEN DILIGENT**

6  **A.      VSi Carefully Reviewed IBM's Product Documentation, Which Turned Out
             To Be Misleading And Inaccurate.**

7

8          IBM argues that VSi did not carefully review the IBM documentation and thus was not

9  diligent.  IBM Br., at 6.  This argument is demonstrably false, as VSi's highly-detailed PICs

10 provide pinpoint citations to at least 60 different documents from amongst the voluminous

11 InfoSphere Product Library.  Exs. 2B-C, VSi's PICs [Dkt Nos. 188-3 to 188-5]; Enger Dec., ¶15.

12 But more importantly, none of those cited documents "specifically contradict" VSi's initial

13 theories, as IBM alleges.  IBM Br., at 6, 7-8.  For example, the AlphaBlox manual discussed in

14 both Parties' opening briefs never states that the write-back[1] methods **only** work with third-party

15 products or that they **do not** work with Cubing Services.  Ex. R, IBM Developing with Analytics

16 APIs at IBMVAS 3777254.  Instead, the IBM manual states "Writing back to multidimensional

17 data sources: You can use AlphaBlox Java methods to modify a result set and update its

18 underlying data source."  *Id.*  All parties agree that IBM's Cubing Services, which is a component

19 of InfoSphere Warehouse, is a "multidimensional data source."  The plain language of IBM's

20 documentation, therefore, supports VSi's original write-back theory for Cubing Services.

21         On the next page, the same AlphaBlox manual provides that "These writeback methods

22 are designed for applications that write data back to an Essbase or Microsoft Analysis Services

---

[1] For more technical detail on "write-back" functionality and VSi's invention in general, VSi refers the Court to VSi's DVD Tutorial submitted 10-12-10 (*see* Ex. S) and VSi's Opening *Markman* brief [Dkt. No. 162] at pp. 2-4.

2000 data source." *Id.*, p. 182.  Finding no other evidence to support its position, IBM's brief focuses solely on this sentence for the proposition that VSi should have known its original theories were in error.  But nowhere does that manual—nor any other publicly available IBM document—teach that the AlphaBlox write-back methods **only** work with Essbase or Microsoft Analysis Services (both of which are third-party software) and **not** IBM's Cubing Services.  *Id.*

It is improper for IBM (at p. 7-8) to focus on one sentence from one chapter in a 272 page manual (Ex. R).  Instead, when one considers the manual and chapter as a whole, the most logical reading of IBM's isolated sentence is that InfoSphere Warehouse write-back functionality works for certain third-party software (*e.g.*, Essbase or Microsoft Analysis Services) **in addition to IBM software**.  *Id.*  Nothing suggests the functionality is limited to that third-party software.  *Id.*  In fact, on the very next page in the write-back chapter, the manual states in a non-limiting way: "Enabling the write back feature to multidimensional databases: Using the server-side Java API's, you can create application pages that allow users to write data back to multidimensional databases." *Id.* at IBMVAS 3777256.  Again, this sentence supports VSi's original theory that InfoSphere Warehouse could write-back through any multidimensional database, including IBM's Cubing Services.  VSi's careful and detailed PICs reflect the IBM publicly-available information.  That the InfoSphere Warehouse manuals are misleading does not show a lack of diligence by VSi.  *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (reliance on misleading conduct by the opposing party can justify delay).

In addition to being misleading, IBM's public documentation is inaccurate.  With respect to VSi's amended infringement theory vis-à-vis writing back to relational databases (which are different than multidimensional databases), IBM's manual states: "Writing data back to a relational data source does not affect the user's view of the data, but before the user can see the effect of the changed data, the query must be re-executed."  Ex. R, at IBMVAS 3777257.  As

noted in VSi's motion, VSi discovered through its non-public testing that this statement is wrong – a point IBM has not contested.  VSi Br., at 8.  VSi's amended contentions provide irrefutable proof in the form of screenshots that InfoSphere Warehouse inputs data directly into the displayed OLAP cube; writing data back to a relational data source **does** affect the user's view of the data **without "re-executing" the query**.  *E.g.*, VSi Ex. A-1 [Dkt. No. 181-2], at p. 31.  IBM fails to address VSi's second piece of newly-discovered, non-public information (*i.e.*, that InfoSphere Warehouse can write back to relational data sources while still dynamically updating the OLAP cube).  IBM cannot hide behind its inaccurate literature to gain an advantage.

### B. Diligence Does Not Require VSi To Purchase and Test IBM's Prohibitively Expensive Software Or Software Not Currently Offered Prior To Filing Suit.

IBM argues that VSi was not diligent because VSi did not purchase and test the accused software prior to filing suit.  IBM Br., at 5.  But as discussed extensively in VSi's Opposition to IBM's Motion to Compel Discovery Into VSi's Prefiling Investigation [Dkt. No. 189 – incorporated by reference], there is no duty to acquire and install the accused product prior to filing suit or serving PICs.  It is perfectly acceptable to perform the pre-suit investigation by comparing the accused product's literature to the claims.  *E.g., Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2002) (no laboratory testing of accused body lotion required where alleged infringement could be determined from the product label).  The *Judin* case does not hold, as IBM improperly suggests, that patentees must "ordinarily" obtain a sample of the accused device and compare that device to the asserted claims before filing suit.  IBM Br., at p. 1.  Instead, the Federal Circuit held that the plaintiff in *Judin* violated Rule 11 because he did not compare the claims to either "the [physical] device **or a technical description of it.**"  *Judin v. U.S.*, 110 F.3d 780, 783 (Fed. Cir. 1997) (emphasis added); *accord Intamin Ltd. v. Magnetar Tech., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007) ("Judin did not create a blanket rule that a

patentee must obtain and thoroughly deconstruct a sample of a defendant's product to avoid violating Rule 11."). Moreover, *Q-Pharma* – not *Judin* – is the controlling law, as demonstrated in VSi's other briefing. [Dkt. No. 189 at pp. 5-8].

Purchasing InfoWarehouse software is not as easy as IBM suggests. In fact, it is impossible for early versions no longer sold by IBM (*e.g.*, versions 9.5, 9.1 and 8.2). For current versions (*i.e.*, version 9.7), purchase would be prohibitively expensive. Contrary to IBM's assertions, VSi could not have determined that IBM's product literature was misleading and inaccurate by simply purchasing an "exemplar version" for about $3,000. *See* IBM Br., at 5. For about $3,000, VSi could purchase **only one of the five accused "editions"** of InfoSphere Warehouse 9.7 – the "Developer Edition." But the Developer Edition could not have been used to confirm infringement of even the current editions because it is used only for testing rather than in a production environment (and thus is not used by the vast majority of IBM's customers). Ex. T. Other accused editions that are used in production environments (*e.g.*, the "Enterprise Edition") cost as much as $65,000. Ex. U, IBM Shopping Cart. And purchasing each of the five accused editions for InfoSphere Warehouse 9.7 would cost more than $200,000. *Id.* These costs do not include the consultant fees to install and configure InfoSphere Warehouse, which are significant. *See* Ex. V, Data Warehouse in the Enterprise, p. 7. In sum, IBM mischaracterizes the law on pre-suit testing and the facts of what would be required to conduct such testing.

### C.    VSi Relies on IBM's Non-Public Information

Contrary to IBM's repeated assertion that VSi failed to cite any non-public information in its Amended Contentions (*see, e.g.*, IBM Br. at 7), VSi does cite to non-public information – both as the basis for its Amended Contentions and in the charts themselves. *E.g.*, VSi Ex. O [Dkt. No. 181-20]; VSi Ex. A-1 [Dkt. No. 181-2], at p. 31. First, VSi relies on Mr. Poelman's testimony, which includes information that was non-public prior to two weeks ago. VSi Ex. O. IBM

initially designated his transcript as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and then later (after VSi cited it) strategically made the cited portions public on December 8, 2010.  Ex. W, Heinz emails; Dkt. No. 178.  But IBM's gamesmanship does not somehow retroactively make the cited information public.  Tellingly, IBM points to no public document available prior to Mr. Poelman's deposition that contains the same information Mr. Poelman testified to (*i.e.*, that AlphaBlox cannot "write-back" through Cubing Services).

Second, VSi relies on its non-public testing of the accused software, which conclusively disproves the inaccuracies in IBM's product documentation.  *E.g.*, VSi Ex. A-1 [Dkt. No. 181-2], at pp. 31, 36 (AlphaBlox Screenshots showing: (1) the GUI used to accept a user update of specific data displayed from the dynamically assembled OLAP cube; and (2) the OLAP cube being updated with the specific data update).  Ignoring this fact, IBM asserts that its software (including any private testing thereon) cannot be "non-public information" because it is offered for sale.  *See* IBM Br., at p. 7.  But VSi's testing is clearly not "public" information, and the high-cost of IBM's software effectively makes it non-public.  Ex. U.  To hold otherwise would be to deny small companies without deep resources (such as VSi) the ability to amend their PICs regarding expensive software products based on discovery – even when the plaintiff produced detailed infringement contentions, and even when publicly available product documentation for those software products is misleading and inaccurate.  Such a rule would effectively insulate expensive products from infringement accusations.

### D.    VSi Acted Diligently After Discovering IBM's Non-Public Information

VSi learned about one piece of IBM's non-public information on July 16, 2010 during Mr. Poelman's deposition (that InfoSphere Warehouse could not "write back" through Cubing Services) and another piece of IBM's non-public information in the first week of November 2010 (that InfoSphere Warehouse could "write-back" directly to relational data sources while still

1  dynamically updating the OLAP cube).  As to the second piece of non-public information, IBM

2  cannot contend that VSi was not diligent, considering IBM received the Amended Infringement

3  Contentions a mere two weeks later (on November 16, 2010).  VSi Ex. Q [Dkt. No. 181-22].  Any

4  delay thereafter is a result of IBM's failure to promptly inform VSi that it opposed the present

5  motion.  Exs. X and Y, Enger 11/24/10 email; Heinz 11/29/10 letter.  And with respect to the first

6  piece of non-public information, VSi diligently installed, configured and tested InfoSphere

7  Warehouse during the three and half months following Mr. Poelman's deposition.

8  IBM downplays the difficulty in installing and configuring InfoSphere Warehouse by

9  suggesting that three and half months is *prima facie* evidence of VSi's delay.[2]  IBM Br., at p. 9.

10  However, IBM knows that InfoSphere Warehouse is extremely complex software (it includes 14

11  different components) and admits in its own documents that its software is notoriously difficult to

12  set-up and install.  Ex. AD, at IBMVAS007083243; *see also* VSi Ex. C [Dkt. No. 181-8], at p. 2.

13  A Microsoft document sums it up nicely: "[A] team of skilled administrators is imperative,

14  [which] can have a significant impact on deployment and maintenance costs.  Without this skilled

15  staff, the cost and complexity of deploying an IBM solution is daunting…."  *See* Ex. V, Data

16  Warehouse in the Enterprise, p. 7.

17  The figure reproduced below further demonstrates the "daunting" nature of installing and

18  testing InfoSphere Warehouse.  As shown, the software is typically installed on four computers,

19  each of which must be separately configured with appropriate software and properly networked:

---

[2] IBM's own cases belie this position.  In *O2 Micro*, the Court explicitly noted that plaintiffs need time to develop infringement theories after discovering non-public information and suggested that three months, if properly established, was not an unreasonable period of time to do so.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006).  *Acer* is very different factually because the plaintiff had all the information necessary to amend its PICs for at least 12 months (not 3 months as IBM suggests) before seeking leave to amend.  *Acer, Inc. v. Tech. Props. Ltd.*, 2010 WL 3618687 at *4 (N.D. Cal. Sept. 10, 2010).

Figure 1. Component groups of InfoSphere Warehouse on multiple computers

Ex. Z, InfoSphere Warehouse Installation Guide at IBMVAS 3779721.

Further the VSi claims recite "a plurality of disparate digital databases," which necessitates obtaining databases from different manufacturers and populating them with data. *E.g.*, '006 claim 2.  Those disparate databases must then be registered and defined in Federation Server (a component of InfoSphere Warehouse) to form a "federated database" in order to "retriev[e] with a computer requested data from such databases," as per the claims.  Ex. AA, IBM Federation Guide at IBMVAS 3771726-8, IBMVAS 3771766-73.  Then, the federated database must be dimensionally-modeled using Cubing Services in order to perform the claimed "assembling with a computer an OLAP cube of the retrieved data."  Ex. AB, IBM Cubing Services Guide at IBMVAS 3781838-48; *see also* IBMVAS 3781802-33.  This involves assigning "facts," "measures," "attributes," "levels," and "hierarchies," to the data in the federated database.  *Id*.  Next, the AlphaBlox GUI must be configured with the appropriate "blox" to "receiv[e] … a data retrieval request," "display[] the OLAP cube," "accept[] through the GUI a dynamic on demand user update," and "dynamically on demand update[e] the assembled OLAP cube with the specific data update," as recited by the claims.  Ex. R, at IBMVAS 3777077-81,

3777104-32.   Finally, the AlphaBlox GUI must be appropriately configured to update the relational data sources using the write-back feature in order to "dynamically update [an affected] database with the specific data of the user update."  *Id.*, at IBMVAS 3777257.  Each of those configuration steps is very time-consuming.

Furthermore, IBM ignores (1) that it is one of two defendants, (2) that InfoSphere Warehouse is simply one of three major products at issue, and (3) that VSi accused multiple versions and editions of each major product.  Diligence does not require single-minded devotion to only one issue (*e.g.*, installing and testing the most current version of InfoSphere Warehouse). VSi was actively engaged in numerous other case-related activities during the relevant time period.  This included: reviewing documents (IBM has now produced about 15 million pages – including more than 4.5 million in the past month);[3] taking and defending depositions (VSi has either taken or defended 9 depositions); answering interrogatories; reviewing Defendants' invalidity contentions (containing at least 50 references); installing and testing accused software; and claim construction briefing.  Further, VSi pursued parallel discovery on the other two major products at issue (*i.e.*, IBM's Cognos and Oracle's OBIEE) from August through November 2010.  To insinuate that VSi has been sitting idle during the past months is grossly inaccurate.

## II.    IBM HAS NOT BEEN PREJUDICED

### A.    VSI's Amendments are Minor

IBM mischaracterizes the scope of VSi's amendments.  Of the 109 limitations among 54 claims in the three asserted patents, VSi proposes making small revisions to just three limitations

---

[3] IBM mistakenly argues that VSi has not been diligent because it does not cite documents from IBM's production in its Amended Infringement Contentions.  IBM Br., at p. 10.  But this fact actually supports VSI because the paucity of relevant documents amongst IBM's voluminous production underscores VSi's difficulty in identifying the infringing configuration described in its Amended Infringement Contentions.

VSI'S REPLY IN SUPPORT OF ITS MOTION                                    Case No. 5:09-CV-05897 RS
FOR LEAVE TO AMEND ITS                                                        11361/1024.0010
INFRINGEMENT CONTENTIONS

in only four claims.  Additionally, nothing about VSi's amendments changes the set of accused products; the case against IBM has always involved IBM's InfoSphere Warehouse and Cognos products.  Further, the case against InfoSphere Warehouse has always involved the AlphaBlox, Cubing Services, and Federation Server components; nothing in VSi's amendments implicates different suite components.  No new claims are asserted.  The redline comparison illustrates just how minor VSi's amendments really are.  *See* VSi Ex. B [Dkt. No. 181-5 to 181-7].  Moreover, the changes in VSi's claim charts are largely redundant of one another.  *Compare* VSi Ex. B-1, pp. 30-37 *with* VSi Ex. B-2, pp. 23-30 *with* VSi. Ex. B-3, pp. 21-28.

The following diagram graphically illustrates the minor change in VSi's infringement theory for the write-back functionality:



As shown, the only substantive difference is that, under the amended theory, the AlphaBlox component bypasses the Cubing Services component when updating the disparate databases to reflect the new non-public information – *i.e.*, that AlphaBlox cannot write-back to Cubing Services but that AlphaBlox can write-back to relational data sources, such as IBM's Federation Server, which infringes VSi's patents-in-suit.  This slight change is hardly "an entire overhaul of VSi's write-back infringement theories," as IBM states.  IBM Br. at 2.

---

VSI'S REPLY IN SUPPORT OF ITS MOTION
FOR LEAVE TO AMEND ITS
INFRINGEMENT CONTENTIONS

Case No. 5:09-CV-05897 RS
11361/1024.0010

1

2

3

4

5

6

7

8

Finally, VSi's amended theory is consistent with the infringement theories against InfoSphere Warehouse versions 9.1 and 8.2. Exs. 2B-C, VSi's Initial Infringement Contentions [Dkt Nos. 188-3 to 188-5]. InfoSphere Warehouse versions 9.1 and 8.2 do not include Cubing Services, so the AlphaBlox component in those versions writes back directly to Federation Server – just like VSi's amended infringement contentions against InfoSphere Warehouse versions 9.7 and 9.5. Thus, IBM has either feigned prejudice, or has itself lacked diligence if it really failed to anticipate that VSi would eventually discover this infringement theory.

9

### B. VSI's Amendments Do Not Raise New Claim Construction or Validity Issues

10

11

IBM argues that VSi's amended theory raises new claim construction issues for the terms "dynamically" and "updating." IBM Br., at p. 14. This is legally and factually wrong.

12

13

14

15

16

17

18

First, claims are construed in a vacuum without regard to the accused devices. *SRI Int'l. v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device."); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1324 (Fed. Cir. 2009). Thus, VSI's infringement theories, either original or amended, cannot affect claim constructions.

19

20

21

22

23

24

25

26

27

Second, IBM ignores that "dynamically" (and variations thereof) and "updating" both appear in other limitations unaffected by VSi's amendment. Indeed, both "dynamically" and "updating" appear in the asserted claims of the '864 Patent, and thus IBM had reason to propose alternative constructions for those terms during claim construction briefing and did not do so. Instead, IBM **agreed** to a construction for the term "dynamically." Dkt. No. 154, p. 2. The fact that IBM agreed to this construction for admittedly unaffected "dynamic" claim limitations is fatal for IBM because, as a matter of law, like terms should be construed consistently across the board. *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003). Oracle and

28

1

2

3

4

VSi also agreed to this construction, underscoring that it is the correct construction regardless of VSi's infringement theories.  *Id.*  Further, the word "updating" has never been disputed because its plain and ordinary meaning is readily known to laypersons – it does not lose this meaning and require construction because VSi has made a minor infringement amendment.

5

6

7

8

Third, IBM's brief does not explain how it would now like to adjust its agreed construction of "dynamically" or construe "updating", and this is also fatal to IBM's argument. IBM's conclusory argument that claim construction is impacted is unsupported.

9

10

11

12

13

14

15

16

17

However, the Court has not yet issued its *Markman* ruling and any prejudice to IBM could be easily cured via supplemental claim construction briefing and/or a supplemental claim construction order.  *See Pressure Prods. Medical Supplies, Inc. v. Greatbatch Ltd.*, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010) ("district courts may engage in a rolling claim construction") (citing *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1377 (Fed.Cir.2005)); *In re Acacia Media Tech. Corp.*, 2010 WL 2179875 at *3 (N.D. Cal. May 25, 2010) (Court issued six *Markman* Orders).  While VSi does not believe any supplementation is necessary, it would require very little work for two terms, one of which has already been agreed to.

18

19

20

21

22

23

24

25

IBM similarly states without elaboration the amended contentions raise new validity issues.  IBM Br., at p. 14.  Again, IBM fails to provide **any** example of how IBM would amend its invalidity contentions to address VSi's amendment.  IBM's unsupported claims of prejudice should not defeat VSi's motion. VSi disagrees (1) that it has previously admitted that all the its claim elements except for the "write-back" elements are in the prior art and (2) that unnamed SQL update statements invalidate its claims.  But VSi will not object if IBM seeks leave to amend its invalidity contentions commensurate in scope with VSi's amendment.

26

**C.  VSi's Amended Infringement Contentions Satisfy The Local Patent Rules**

27

28

VSi's amended claim charts show **exactly** where each claim element is found within

1    InfoSphere Warehouse.  VSi Ex. A-1 [Dkt. No. 181-2].  As evidence that InfoSphere Warehouse

2    can "accept[] through the GUI a dynamic on demand user update of specific data displayed from

3    the assembled OLAP cube," VSi provides the following before-and-after screenshots that show a

4    user of the AlphaBlox GUI changing a value in the OLAP cube from "5.1" to "6.1":



12   *Id.*, p. 31.  VSi also cites to the chapter in the AlphaBlox manual dedicated to "inputting and

13   modifying data," which includes an entire section called "Enabling GridBlox components for data

14   writeback" explaining how to create screenshots such as these.  *Id.*, pp. 30-31.

15        With respect to the claimed "dynamically updating [an affected] database with the specific

16   data of the user update," VSi cites to the portion of the AlphaBlox manual on "updating relational

17   data sources" that teaches to "use Java methods to construct the appropriate SQL statement."  *Id.*,

18   pp. 31.  VSi's charts also cite the exact Java methods used to construct the appropriate SQL insert

19   statement – namely, "getChangedCellList," "getChangedCellValues," and "setQuery."   Ex. A-1,

20   p. 32.  VSi even provides screenshots at page 33 showing the results to the affected database

21   when the appropriate SQL statement is executed (*i.e.*, the cell values change from "5.1" to "6.1"):

Lastly, to demonstrate that InfoSphere "dynamically on demand updat[es] the assembled OLAP cube with the specific data update" as claimed, VSi provides screenshots that prove the online analytical processing view of data (*i.e.*, the "OLAP cube") is changed at run time in response to an ad hoc user query or request (*i.e.*, "dynamically on demand"). *Id.*, p. 36. Considering InfoSphere Warehouse is IBM's own product and that VSi's screenshots were produced after configuring InfoSphere Warehouse just as described in IBM's own literature, IBM cannot seriously continue to play dumb about VSi's Amended Infringement Contentions.

**D. IBM's Preparation And Analysis Is Not Wasted**

VSi's minor amendment does not require IBM to re-do any analysis. Indeed, IBM does not cite any evidence supporting its assertion that "work will be negated." IBM Br., at p. 17. But even assuming *arguendo* that VSi's changes are not mere tweaks, if VSi's original theory was really as off-base as IBM would have this Court believe, then IBM should not reasonably have spent much effort in defending itself and relatively little preparation and analysis could be wasted. The reality is that IBM's work is equally applicable to VSi's amended infringement theory. IBM is just upset because VSi has taken away IBM's non-infringement argument.

IBM's cases on this point are readily distinguishable because, in those cases, the proceedings were much further along than the present case. *Raytheon Co. v. Indigo Sys. Corp.*,

2008 WL 5378047, at *1 (E.D. Tex. Dec. 23, 2008) (fact and expert discovery had concluded months earlier and trial was less than a month away); *Realtime Data, LLC v. Packeteer, Inc.*, 2009 WL 2590101 (E.D. Tex. Aug. 18, 2009) (court had issued *Markman* ruling, fact and expert discovery had closed, dispositive motions had been filed, parties had identified trial witnesses, and pre-trial order was due in only two months – *see* Ex. AC, Docket Control Order).   Courts even allow amendment <u>after</u> the court has issued a *Markman* Order.   *See*, *e.g.*, *Arbitron, Inc. v. Int'l Demographics, Inc.*, No. 2:06-CV-434, 2009 WL 166555, at *2 (E.D. Tex. Jan. 16, 2009). In the present case, the Court has not issued its claim construction ruling nor has it even set a date for expert disclosures, the close of discovery, or trial.   Hence, IBM's argument for prejudice is much weaker than those articulated in IBM's cited cases.

Many of IBM's arguments are premised on the notion that granting VSi's Motion would require IBM to re-do work.   VSi disputes this idea, but should the Court deny VSi's Motion, VSi will be forced to pursue its amended infringement theories against IBM in a subsequent lawsuit. Thus, IBM will be forced to do the same work, whether in this lawsuit or the next.   Serial litigation is inefficient, and as the courts have recognized, piecemeal litigation should be avoided where possible.   *See Accuscan Inc. v. Xerox Corp.*, No. 96 Civ. 2579, 1998 WL 60991, at *1 n.1 (S.D.N.Y. Feb. 11, 1998) (amendment adding products in patent case "will provide a comprehensive resolution of the controversy, avoid piecemeal litigation and result in efficient use of judicial and party resources"); *Landis Plastics, Inc. v. Polytainers Inc.*, 1992 WL 225558, at *3 (N.D. Ill. Sept. 4 1992) ("Judicial economy and the desire to avoid duplicative litigation dictates that . . . the revised designs be included and resolved along with the other issues in this lawsuit.").

For these reasons, VSi asks the Court to use its inherent discretion to grant VSi's motion.

1    Dated:  January 18, 2011                    SUSMAN GODFREY LLP

2

3                                                By:  _/s/ Brooke A.M. Taylor (by permission EJE)_
                                                 Brooke A. M. Taylor
4                                                Lead Attorney
                                                 WA State Bar No. 33190 (Admitted Pro Hac Vice)
5                                                btaylor@susmangodfrey.com
                                                 Daniel J. Walker
6                                                WA State Bar No. 38876 (Admitted Pro Hac Vice)
                                                 dwalker@susmangodfrey.com
7                                                SUSMAN GODFREY L.L.P.
                                                 1201 Third Avenue, Suite 3800
8                                                Seattle, Washington 98101-3000
                                                 (206) 516-3880
9                                                (206) 516-3883 (fax)

10

11                                               Stephen E. Morrissey
                                                 CA Bar 187865
12                                               smorrissey@susmangodfrey.com
                                                 Susman Godfrey LLP
13                                               1901 Avenue of the Stars, Ste. 950
                                                 Los Angeles, CA  90067-6029
14                                               (310) 789-3103
                                                 (310) 789-3005 (fax)
15

16                                               Michael F. Heim
                                                 TX State Bar No. 09380923
17                                               mheim@hpclip.com
                                                 Leslie V. Payne
18                                               TX Bar No. 00784736
                                                 lpayne@hpcllp.com
19                                               Eric J. Enger
                                                 TX Bar No. 24045833
20                                               eenger@hpcllp.com
                                                 HEIM, PAYNE & CHORUSH, LLP
21                                               600 Travis Street, Suite 6710
                                                 Houston, Texas 77002-2912
22                                               (713) 221-2000
                                                 (713) 221-2021(fax)
23

24

25                                               ATTORNEYS FOR PLAINTIFF

26

27

28
     VSI'S REPLY IN SUPPORT OF ITS MOTION                      Case No. 5:09-CV-05897 RS
     FOR LEAVE TO AMEND ITS                                    11361/1024.0010
     INFRINGEMENT CONTENTIONS
                                        16

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on this 18th day of January, 2011, a true and correct copy of the

4    foregoing VSI'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS

5    INFRINGEMENT CONTENTIONS and accompanying exhibits and declaration was served on

6    all counsel of record via the Court's ECF System.

7                                         /s/ *Eric J. Enger*____
                                         Eric J. Enger
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VSI'S REPLY IN SUPPORT OF ITS MOTION            Case No. 5:09-CV-05897 RS
FOR LEAVE TO AMEND ITS                          11361/1024.0010
INFRINGEMENT CONTENTIONS