**\*\* E-filed February 18, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VASUDEVAN SOFTWARE, INC.,<br><br>  Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION, et al.,<br><br>  Defendants.<br>_____/ | No. C09-05897 RS (HRL)<br><br>**ORDER (1) GRANTING VSI'S MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTENTIONS, (2) DENYING IBM'S MOTION TO COMPEL PRE-FILING INVESTIGATION DISCOVERY, AND (3) GRANTING IBM'S MOTION TO COMPEL VSI TO RESPOND TO ITS INTERROGATORY NO. 15**<br><br>[Re: Docket No. 181, 182, 183] |

**BACKGROUND**

This is a patent infringement case brought by Vasudevan Software, Inc. ("VSi") against Oracle Corp. ("Oracle") and International Business Machines Corp. ("IBM") (collectively, "Defendants").

In accord with Patent Local Rule 3-1, VSi served its infringement contentions alleging that IBM's software infringes 54 claims of the three patents-in-suit. VSi now moves for leave to amend its infringement contentions based on purportedly new information it acquired during discovery. Docket No. 181 ("Motion to Amend").

In addition, IBM brings two motions to compel. The first seeks an order requiring VSi to respond to IBM's Request for Admission ("RFA") Nos. 1-24 and Interrogatory No. 13, which

request information about VSi's pre-filing investigation of its asserted claims. Docket No. 182 ("MTC 1"). The second seeks an order requiring VSi to respond to Interrogatory No. 15, which requests that VSi provide pinpoint source code citations corresponding to each element listed in its infringement contentions. Docket No. 183 ("MTC 2").

The Court heard oral argument on the three motions on February 1, 2011. Each of motion is discussed in turn below.

## DISCUSSION

A. <u>VSi's Motion for Leave to Amend Its Infringement Contentions</u>

1. <u>Legal Standard</u>

A party may supplement its infringement contentions upon a timely showing of "good cause." Patent L.R. 3-6. In determining whether there is good cause, the court "considers first whether the moving part was diligent in amending its contentions and then whether the non-moving part would suffer prejudice if the motion to amend were granted." <u>Acer, Inc. v. Tec. Props. Ltd.</u>, Nos. 5:08-cv-00877, 00882, 05398, 2010 WL 3618687, at *4 (N.D. Cal. Sep. 10, 2010). "The party seeking to amend its contentions bears the burden of establishing diligence." <u>O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.</u>, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006) (citing <u>Genentech, Inc. v. Amgen, Inc.</u>, 289 F.3d 761, 774 (Fed. Cir. 2002)). A determination of whether good cause has been established is within the sound discretion of the trial court. See <u>MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.</u>, 420 F.3d 1369, 1380 n.5 (Fed. Cir. 2005).

2. <u>Analysis</u>

i. <u>VSi's Diligence</u>

VSi has the burden to establish that it was diligent in seeking to amend its infringement contentions. In attempting to meet its burden, VSi explains that since the filing of this action in April 2009, it has diligently pursued discovery of IBM's allegedly infringing products. Motion to Amend at 4. It has taken four depositions, reviewed thousands of lines of source code, run tests on the accused products, and reviewed millions of pages of documents. <u>Id</u>. And it was in the course of this discovery that "VSi discovered information about IBM's accused InfoSphere Warehouse

product that was not known to VSi prior to serving its Infringement Contentions and that provides clear evidence of IBM's infringement of the patent-in-suit." Id.

The particular infringement contentions that VSi wishes to amend concern IBM's InfoSphere Warehouse product, a suite of software (of which there are at least five different editions) that contains various programs. VSi seeks leave to amend the contentions that relate to the ability of IBM's Alphablox program (one of the programs included within the InfoSphere Warehouse software suite) to dynamically "write back" data to other data sources. Id. at 6.

Among the publicly-available information for the programs contained in the InfoSphere Warehouse product are voluminous and detailed technical manuals. VSi states that it "spent hundreds of man-hours" reviewing the manuals for the programs included in the InfoSphere Warehouse product (including the manual for the Alphablox program), as well as other publicly-available information, in preparing VSi's infringement contentions. Id. at 5. The Alphablox manual's subsection titled "Writing back to multidimensional data sources" states: "You can use Alphablox Java methods to modify a result set and update its underlying data source." Id. Based on this somewhat opaque statement in the Alphblox manual, VSi stated in its infringement contentions that IBM's InfoSphere Warehouse program infringed the claimed "write back" elements of the patents-in-suit.

According to VSi, it served its invalidity contentions on April 22, 2010, and on the very next day, requested from IBM "an executable version of each Accused Product in the same format and packaging as provided to [IBM's] customers." Id. at 6-7. After initially refusing to do so because the requested programs were for sale publicly, IBM produced these products (including the InfoSphere Warehouse software suite) to VSi in July 2010, and VSi began to install and review the software. Id. at 7-8. Around the same time, VSi also deposed John Poelman, a software developer at IBM, regarding the InfoSphere Warehouse product's "ability to 'write back' data to data sources." Id. During his deposition, Poelman testified that the Alphablox program could not "write back" to certain multi-dimensional data sources, including IBM's Cubing Services data source. Id.

After Poelman's July 16 deposition, VSi conducted an investigation to confirm his testimony. Id. at 8. VSi completed its investigation in early November 2010 and it confirmed that

3

1 Poelman was correct, meaning that VSi's "write back"-related infringement contentions were based
2 on its mistaken understanding of the Alphablox manual. Id. VSi also learned in the course of this
3 investigation that the InfoSphere product could dynamically write back to certain other data sources
4 without using IBM's Cubing Services, something VSi says contradicts IBM's publicly-available
5 documents, and which, according to VSi, also infringes the patents-in-suit. Id.

6 So, based on its investigation, VSi now requests leave to amend its infringement contentions
7 to replace its old theory based on Alphablox's now-debunked ability to "write back" to IBM's
8 Cubing Services data source with a new theory based on Alphablox's apparent ability to "write
9 back" to other certain data sources. Within days of confirming this discovery in early November,
10 VSi sent IBM a draft of its proposed amended infringement contentions and ultimately filed the
11 instant motion on December 17. Id. at 8-9.

12 IBM challenges VSi's diligence in several ways. For instance, it says that had VSi more
13 carefully read the publicly-available technical documents it would have been clear that Alphablox
14 does not "write back" to IBM's Cubing Services data source. Docket No. 185 ("Motion to Amend
15 Opp'n") at 6. It also says that VSi could have tested the InfoSphere Warehouse product before
16 filing this action and/or its infringement contentions (and, in fact, it believes VSi was required to do
17 so under Rule 11), but it chose not to. Id. at 5-6.[1] IBM also says that VSi's lack of diligence is
18 further shown by the fact that it took VSi almost four months after Poelman's deposition to notify
19 IBM that it wanted to amend its contentions. Motion to Amend Opp'n at 8.

---

[1] In support of this point, IBM contends that VSi was obligated to conduct a reasonable pre-filing investigation before both filing its complaint against IBM and serving its infringement contentions. Motion to Amend Opp'n at 4-7. In so stating, IBM cites to numerous cases in both the Federal Circuit and this District holding that Rule 11 sanctions were appropriate because the plaintiffs did not conduct reasonable pre-filing investigations, in part because the plaintiffs did not acquire the allegedly infringing products and compare the product to the asserted claims. Id. VSi responds that it is not "required" to acquire, install, and test an accused product prior to filing suit and filing infringement contentions and that it is "perfectly acceptable" to perform the pre-filing investigation by comparing the accused products literature to the claims. Motion Amend Reply at 4 (citing Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295 (Fed. Cir. 2002)). The problem with these cases, however, is that they explain the type of reasonable inquiry a plaintiff must undertake before filing a patent infringement complaint to satisfy Rule 11; they do not bear upon whether a plaintiff was diligent seeking leave to amend infringement contentions. Whether VSi conducted enough of a pre-filing investigation in this case to satisfy Rule 11 is, potentially, a question for another day.

While IBM makes reasonable arguments, after weighing the issues, the Court believes that VSi was sufficiently diligent in seeking to amend its infringement contentions. For example, VSi convincingly points out that the Alphablox manual is, in fact, unclear. It never says that the Alphablox "write back" methods <u>work only</u> with third party data sources and never specifically states that they <u>do not work</u> with IBM's Cubing Services data source. Docket No. 192 ("Motion to Amend Reply") at 2-3. And although IBM cites good authority for the point that carelessness or mere errors are insufficient to establish good cause, see <u>Berger v. Rossignol Ski Company, Inc.</u>, No. C 05-02523 CRB, 2006 WL 1095914, at *5 (N.D. Cal. Apr. 25, 2006), this was not quite simple carelessness or error. VSi also says that it was impossible for it to have purchased earlier, outdated versions of the software, and the current versions are prohibitively expensive (although there is some debate over just how expensive they are), so it was not reasonable for it to have tested the software prior to filing this suit. Motion to Amend Reply at 5. And in the context of this case, the Court is not persuaded that VSi's failure to move for leave to amend its infringement contentions until four months after Poelman's deposition shows that VSi was not acting diligently.

    ii.  <u>Prejudice to IBM</u>

IBM contends that, even if the Court believes that VSi was sufficiently diligent in seeking to amend its infringement contentions, it would suffer prejudice if VSi were allowed to amend. It says that VSi's delay is "particularly inexcusable given the events that occurred during that period of delay." Motion to Amend Opp'n at 9. While it is true that VSi did not move for leave to amend until after the parties filed their claim construction briefs and Judge Seeborg held the claim construction hearing, the Court is not convinced that VSi's proposed amendments will dramatically affect any of the claims that were construed, and Judge Seeborg can issue a supplemental claim construction order if he believes it to be necessary. See <u>Pressure Prods. Medical Supplies, Inc. v. Greatbatch Ltd.</u>, 599 F.3d 1308, 1315-16 (Fed. Cir. 2010) ("[D]istrict courts may engage in a rolling claim construction.") (citations omitted). IBM also says that VSi's proposed amendments would raise new validity issues, but VSi agrees not to object if IBM wishes to amend its invalidity contentions based on VSi's proposed amended infringement contentions. Motion to Amend Opp'n at 14-15; Motion to Amend Reply at 12. IBM also argues that it would have to "re-do" much of its

work in this case, but this worry is overstated, as the amendments affect only a small number of elements and discovery has not been completed. Motion to Amend Opp'n at 17. In sum, the Court does not believe that IBM will be unduly prejudiced by VSi's amendment of its infringement contentions.

\* \* \*

In conclusion, although IBM makes several reasonable arguments, the Court finds that VSi acted with sufficient diligence in seeking to amend its infringement contentions and that IBM would not be unduly prejudiced by allowing it to do so. Accordingly, the Court will grant VSi's motion. VSi shall serve amended infringement contentions within 10 days from the date of this order.

B. IBM's Motion to Compel Discovery into VSi's Pre-filing Investigation

1. Legal Standard

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

2. Analysis

As stated earlier, VSi served its infringement contentions on April 22, 2010, and some of those infringement contentions were based on VSi's mistaken interpretation of the publicly-available technical manuals for the InfoSphere Warehouse software suite. Realizing VSi's error, IBM became suspicious that VSi did not test any of the accused products prior to instituting this

action or even before it filed its invalidity contentions, and IBM believes that this conduct could show that VSi's did not meet its Rule 11 obligations with respect to its pre-filing investigation.[2]

Thus, IBM served VSi with 24 requests for admission asking VSi to admit that it did not acquire or operate any of the accused products either before filing its complaint or serving its infringement contentions. Docket No. 182-1 ("Galese MTC Decl."), Ex. A. In addition to the RFAs, IBM also served VSi with interrogatories, among them, Interrogatory No. 13, which requests, for each claim VSi identified in its infringement contentions, that VSi "describe in detail" its pre-filing investigation, "including without limitation":

(1) "an identification of every person or entity that supervised, assisted, participated in, or provided information concerning the investigation";

(2) "a description of all analyses of any products and/or components identified in VSi's infringement contentions";

(3) "an identification of all IBM products and/or components purchased or otherwise obtained by VSi";

(4) "a description of all tests performed on any of the products and/or components identified in VSi's infringement contentions or any other IBM products and/or components";

(5) "a description of every instance where VSi applied the claim to an accused device";

(6) "an identification of all documents and things reviewed or relied upon in connection with the investigation"; and

(7) "a description of the results and/or conclusions of the investigation."

Galese Decl., Ex. B.

VSi points out, though, that the advisory committee comments to Rule 11 caution that courts are discouraged from using Rule 11 as a basis for discovery. Docket No. 189 ("MTC 1 Opp'n") at 3-4. As the advisory committee explained in relation to Rule 11's overhaul in 1983:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the

---

[2] In its motion, IBM admits that it served RFA Nos. 1-24 and Interrogatory No. 13 to gain information about VSi's pre-filing investigation to determine if VSi failed to conduct a reasonable pre-filing investigation in violation of Rule 11. MTC 1 at 9 ("IBM's [RFA] Nos. 1-24, inquiring into whether VSi obtained or operated any of the Accused Products before pursuing its claims against IBM, are relevant to whether VSi complied with its pre-filing obligations. . . . [and] "IBM's Interrogatory No. 13, requesting a factual description of VSi's pre-filing investigation, seeks similar information — relevant as to whether VSi could have determined that it had a reasonable chance of proving infringement before asserting its claims against IBM.") (citing cases in the context of Rule 11).

7

>imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. <u>Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances</u>.

FED. R. CIV. P. 11 Advisory Committee Notes to the 1983 Amendment (emphasis added).  IBM, VSi notes, never sought leave of the Court to conduct discovery related to whether VSi met its Rule 11 obligations, and also argues that these are hardly "extraordinary circumstances" warranting such discovery.  MTC 1 Opp'n at 4-5.

VSi is correct: the weight of authority does indeed suggest that discovery in relation to Rule 11 motions is allowed only in extraordinary circumstances.  <u>See</u>, e.g., <u>Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc.</u>, Civil No. 08-158-P-H, 2009 WL 536917, at *2 (D. Me. Feb. 25, 2009) ("In the context of Rule 11 motions for sanctions, discovery is permitted only in 'extraordinary circumstances.'") (citing FED. R. CIV. P. 11 Advisory Committee Notes to the 1983 Amendment); <u>Hall v. Forest River Inc.</u>, No. 3:04-CV-259 RM, 2007 WL 2349620, at *1 (N.D. Ind. 2007) ("The advisory committee's notes to Federal Rule of Civil Procedure 11 specifically attempt to curb satellite litigation over sanctions by limiting 'the scope of sanction proceedings to the record' and allowing discovery 'only in extraordinary circumstances.'  Courts, therefore, rarely grant discovery requests relating to motions for sanctions."); <u>McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.</u>, 644 F.Supp. 589, 592 (E.D. Mich. 1986) (court denied party's *ex parte* request for further discovery to support its motion for sanctions in light of the Rule 11 Advisory Committee's caution against allowing sanctions proceedings to expand into full-blown litigation); <u>see also</u> WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, CAL. PRAC. GUIDE: FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 17:454 (The Rutter Group 2010) ("Discovery on issues raised by a sanctions motion will be permitted only in extraordinary circumstances.  Sanctions proceedings are generally limited to matters that appear of record so that additional discovery is not justified (and is to be avoided wherever possible).") (citing <u>Indianapolis Colts v. Mayor & City Council of Baltimore</u>, 775 F.2d 177, 183 (7th Cir. 1985)); 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE 3D § 1337.3 (2004) ("Federal judges, and implicitly members of the bar, are urged by the Advisory Committee Note to

the 1983 amendment of Rule 11 to 'limit the scope of sanction proceedings to the record' to the extent possible, allowing discovery only in extraordinary circumstances.").[3]

Such a limitation also makes sense in conjunction with the advisory committee's instruction that Rule 11 proceedings, to the extent possible, be limited to the record. FED. R. CIV. P. 11 Advisory Committee Notes to the 1983 Amendment. Here, as explained earlier, VSi already admitted in its motion for leave to amend its infringement contentions that it did not acquire, install, and test the InfoSphere Warehouse product prior to filing the instant action (the information sought by RFA Nos. 1-24). With this point already conceded, the Court does not see how further inquiry through discovery constitutes "extraordinary circumstances." And in the absence of such circumstances, IBM's motion to compel responses to its RFA Nos. 1-24 and Interrogatory No. 13, will be denied.

C. IBM's Motion to Compel VSi to Respond to Its Interrogatory No. 15

1. Legal Standard

Subject to the limitations imposed by subsection (b)(2)(C), under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id. However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

---

[3] IBM cites one district court case that suggests that a party must first conduct discovery before it can "positively assert" that a plaintiff failed to conduct an adequate pre-filing investigation, and so IBM is simply following this directive. See Graceway Pharmaceuticals, LLC v. Perrigo Co., Civil Action No. 2:10-cv-00937, 2010 WL 2521026, at *5 (D. N.J. Jun. 10, 2010) ("[Defendant] may only positively assert that there was no presuit investigation if it, [Defendant], had first made a discovery request (including admissions, documents, interrogatories, etc.) and on that basis determined that [Plaintiff] failed to comply with Rule 11."). This case, however, is an outlier to the general rule that that discovery in relation to Rule 11 motions is only allowed in extraordinary circumstances, and this Court declines to follow it.

9

1  controversy, the parties' resources, the importance of the issues at stake in the action, and the
2  importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C).

3      2. <u>Analysis</u>

4  When VSi served its infringement contentions on April 22, it did not at that time cite to any
5  source code from IBM's accused software. This is because IBM had not yet made its source code
6  available to VSi. In recognition of this, several of VSi's contentions explicitly state that
7  "[a]dditional evidence that the Accused Software [practices this element] . . . will be found in the
8  source code for the Accused Software." <u>See</u> Enger Decl., Ex. H. IBM made its source code
9  available to VSi during the week of June 28, and one of VSi's retained consultants reviewed it.
10 MTC 2 at 6.

11 Almost three months later, IBM served its Interrogatory No. 15, which requests VSi to:

> For each Accused Instrumentality, separately identify the exact lines of source code that VSi contends meet (or that when compiled and executed meet) each limitation of each asserted claim of each Patent-in-Suit identified in VSi's infringement contentions, including any supplements thereto. The identification shall be provided separately on a limitation-by-limitation basis and shall identify only those lines of source code for each limitation that are necessary to allegedly meet each such limitation.

16 Docket No. 183-1 ("Galese Decl. 2"), Ex. A. IBM says that it needs these citations because it
17 "cannot meaningfully respond to VSi's infringement allegations unless it understands exactly what
18 VSi contends meets each and every claim limitation." MTC 2 at 7. So far, VSi has refused to
19 provide them.

20 "In general, courts have declined to compel pinpoint citations in infringement contentions
21 only when the plaintiff did not yet have the source code information." <u>Big Baboon Corp. v. Dell,</u>
22 <u>Inc.</u>, 723 F.Supp.2d 1224, 1227-28 (C.D. Cal. 2010) (citing <u>Network Caching, Network Caching</u>
23 <u>Tech., LLC v. Novell, Inc.</u>, No. C-01-2079-VRW, 2002 WL 32126128, at *5 (N.D. Cal. Aug. 13,
24 2002)). "Once source code has been provided to the plaintiffs, however, courts have required
25 plaintiffs to supplement their infringement charges with pinpoint citations." <u>Id</u>. at 1228 (citing
26 <u>Diagnostic Sys. Corp. v. Symantec Corp.</u>, Nos. SACV 06-1211 DOC (ANx), SACV 07-960 DOC
27 (ANx), 2009 WL 1607717, at *6 (C.D. Cal. Jun. 5, 2009)); <u>American Video Graphics, L.P. v. Elec.</u>
28 <u>Arts, Inc.</u>, 359 F.Supp. 558, 561 (E.D. Tex. 2005); <u>Connectel, LLC v. Cisco Systems, Inc.</u>, 391

1  F.Supp.2d 526, 528 (E.D. Tex. 2005)); see also Genentech, Inc. v. The Trs. of the Univ. of Pa., No.
2  C10-02037 LHK (PSG) (N.D. Cal. filed Dec. 13, 2010) ("When the Accused Instrumentality
3  includes computer software based upon source code made available to the patentee, patentees must
4  provide 'pinpoint citations' to the code identifying the location of each limitation") (citations
5  omitted).

6       In Big Baboon, for instance, the plaintiff had been in possession of the defendant's source
7  code for over four months. Id. The court found that the plaintiff had been provided a "reasonable
8  opportunity" to review the defendant's source code but it had not done so in a diligent manner, and
9  the Court granted the defendant's motion to compel the plaintiff to provide more detailed
10 infringement contentions that contained pinpoint citations to the defendant's source code. Id. at
11 1229-30. Similarly, in Diagnostic Systems, the plaintiff had had access to the defendant's source
12 code for more than 11 months, which, according to the court, was "more than a reasonable amount
13 of time." Diagnostic Systems Corp., 2009 WL 1607717, at *4. And since the plaintiff provided no
14 credible reason for not providing pinpoint citations to its infringement contentions within that time,
15 the court ordered the plaintiff to do so. Id. at *6. Despite VSi's attempt to distinguish these cases,
16 the authority is clear that a plaintiff should provide citations once a plaintiff has had a sufficient
17 opportunity to review the source code, at least with respect to contentions that are or may be based
18 upon it.

19      VSi also objected to Interrogatory No. 15 on other grounds, but these objections fail. First,
20 VSi's argument that IBM's request is "unduly burdensome" because it seeks an expert comparison
21 of each of VSi's 109 claim limitations with each of IBM's four accused products, totaling 436
22 comparisons, fails because VSi sued IBM and had control over the scope of this action. Second,
23 VSi's argument that IBM's request requires VSi to prematurely disclose the mental impressions,
24 conclusions, opinions, and legal theories of VSi's attorneys and its consulting experts —
25 information it says is protected by the attorney work product doctrine — fails because IBM is not
26 asking VSi to disclose this information. Rather, it is merely asking VSi to provide contentions that
27 specifically describe how IBM's source code infringes VSi's patents. See Diagnostic Systems
28 Corp., 2009 WL 1607717, at *5. Third, VSi's argument that any preliminary source code analysis

11

served prior to the expert report deadline is tantamount to a draft expert report fails because, as explained above, IBM is not asking VSi to disclose its expert's opinions.

The Court will grant IBM's motion, but VSi need not provide pinpoint citations for every one of its infringement contentions at this time. Instead, for the infringement contentions for which VSi stated that "[a]dditional evidence that the Accused Software [practices this element] . . . will be found in the source code for the Accused Software," VSi shall provide pinpoint citations to IBM's source code supporting this statement. VSi shall provide these citations within 30 days from the date of this order.

## CONCLUSION

Based on the foregoing:

1. VSi's motion for leave to amend its Infringement Contentions is GRANTED. VSi shall serve its Amended Infringement Contentions within 10 days from the date of this order.
2. IBM's motion to compel VSi to respond to IBM's RFA Nos. 1-24 and Interrogatory No. 13 is DENIED.
3. IBM's motion to compel VSi to respond to IBM's Interrogatory No. 15 is GRANTED. Within 30 days from the date of this order, VSi shall provide citations for its infringement contentions stating that "[a]dditional evidence that the Accused Software [practices this element] . . . will be found in the source code for the Accused Software."

**IT IS SO ORDERED.**

Dated: February 18, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C09-05897 RS (HRL) Notice will be electronically mailed to:**

| | |
|---|---|
| Andrew G Heinz | andrew.heinz@kirkland.com, aheinz@kirkand.com, jason.emden@kirkland.com |
| Brad Evan Rosen | bradrosen@quinnemanuel.com |
| Brooke Taylor | btaylor@susmangodfrey.com, bnealious@susmangodfrey.com |
| Brooke Ashley-May Taylor | btaylor@susmangodfrey.com |
| Daniel J Walker | dwalker@susmangodfrey.com, canderson@susmangodfrey.com |
| David A Nelson | davenelson@quinnemanuel.com |
| Ellen M Padilla | ellenpadilla@quinnemanuel.com |
| Eric James Enger | eenger@hpcllp.com, nbaudoin@hpcllp.com |
| Harper Siems Batts | harper.batts@kirkland.com, julie.bueno@kirkland.com, lesley.ahlberg@kirkland.com |
| Jennifer A Bauer | jenniferbauer@quinnemanuel.com |
| Jennifer Anne Bauer | jenniferbauer@quinnemanuel.com, lisagarner@quinnemanuel.com |
| John M. Desmarais | jdesmarais@desmaraisllp.com |
| Jon T Hohenthaner | jon.hohenthaner@kirkland.com |
| Joseph Allen Loy | joseph.loy@kirkland.com, jay.mafale@kirkland.com |
| Leslie V Payne | lpayne@hpcllp.com |
| Martin A Galese | martin.galese@kirkland.com |
| Matthew M Sarboraria | matthew.sarboraria@oracle.com |
| Meghan Elizabeth Bordonaro | meghanbordonaro@quinnemanuel.com |
| Michael F. Heim | mheim@hpcllp.com, abranum@hpcllp.com, awilson@hpcllp.com, canderson@hpcllp.com |
| Robert Alan Appleby | rappleby@kirkland.com, jemden@kirkland.com |
| Sean Sang-Chul Pak | seanpak@quinnemanuel.com, susanneglobig@quinnemanuel.com |
| Stephen Edward Morrissey | smorrissey@susmangodfrey.com, hdanielson@susmangodfrey.com |

**Please see General Order 45 Section IX C.2 and D; Notice has NOT been electronically mailed to:**

Nathan Hamstra
Quinn Emanuel Urquhart & Sullivan
500 W. Madison
Suite 2459
Chicago, Il 60661

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**